# Appendix

**ROBERT RUBIN, Plaintiff,**
v.
**AIR CHINA LIMITED and UNITED**
**AIRLINES INCORPORATED, Defendants.**

**Case No.: 5:10-CV-05110-LHK**

**UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF**
**CALIFORNIA SAN JOSE DIVISION**

**Dated: June 21, 2011**

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
JUDGMENT ON THE PLEADINGS

Defendants Air China Limited (Air China) and United Airlines, Incorporated
(United) (together, Defendants) have moved for judgment on the pleadings against
Plaintiff Robert Rubin (Plaintiff). After considering Defendants' motion, the Court finds
this matter suitable for decision without oral argument. See Civil Local Rule 7-1(b).
Accordingly, the hearing on this motion, set for June 23, 2011, is hereby VACATED. For
the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants'
motion for judgment on the pleadings.

## I. BACKGROUND

On September 30, 2010, Plaintiff Robert Rubin filed a claim against Defendants Air
China Limited and United Airlines, Inc. in the Small Claims Division of the Santa Clara
County Superior Court ("Small Claims Court"). In his state-court complaint, Plaintiff
alleges that he experienced pain and suffering and incurred monetary damages due to a
thirteen and one-half hour delay on Air China Flight 985 from Beijing, China, to San
Francisco, California.[1] United Airlines was the contracting carrier for the flight. Plaintiff
seeks $4,233 in damages under the "Passenger Compensation Rights for International
Flights" provision of the Montreal Convention of 1999.

Plaintiff served Air China and United Airlines on October 11, 2010, and the case
was set for trial in Small Claims Court on November 18, 2010. However, on November
10, 2010, Defendant Air China removed the case to federal court under 28 U.S.C. §
1441(d), which permits foreign sovereigns to remove any civil action to federal court,
and under 28 U.S.C. § 1441(a)-(b), which permits removal of actions arising under the
treaties of the United States. See Dkt. No. 1. Plaintiff moved to remand the action to state
court; as the removal statute granted Defendants the right to have a federal forum hear
Plaintiff's claims, this motion was denied. See Dkt. Nos. 4, 30.

Defendants Air China and United Airlines now move for judgment on the pleadings.
Specifically, Defendants seek a judgment limiting Plaintiff's claim to the out-of-pocket

expenses incurred or paid by Plaintiff as a result of the delay in the departure of Air China Flight 985 on November 1, 2009. Plaintiff opposes the motion.

## II. LEGAL STANDARD

This Court may grant judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which allows Defendants to challenge the sufficiency of Plaintiff's complaint. New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004). A 12(c) motion "is a vehicle for summary adjudication, but the standard is like that of a motion to dismiss." Id. Accordingly, a 12(c) motion may only be granted "when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Fajardo v. County of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999). In evaluating Defendants' motion, the Court must "construe the complaint, and resolve all doubts, in the light most favorable to the plaintiff," and may grant the motion only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief." New.Net, 356 F. Supp. 2d at 1115; see also Hal Roach Studios, Inc. v. Richard Feiner & Co, 896 F.2d 1542, 1550 (9th Cir. 1989). "Courts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment." Moran v. Peralta Community College Dist., 825 F. Supp. 891, 893 (N.D. Cal. 1993). As with a 12(b)(6) motion to dismiss, the Court should grant leave to amend unless it is clear that amendment would be futile. Pacific West Group, Inc. v. Real Time Solutions, Inc., 321 F. App'x 566, 569 (9th Cir. 2008) (mem.).

## III. ANALYSIS

In this case, Plaintiff alleges that the delay of his flight resulted in the following damages: (1) pain and suffering; (2) lost work;[2] (3) physical illness with attendant medical treatment costs; (4) "being trapped in a freezing Beijing airport that was worse than a prisoner would be treated"; (5) the cost of Plaintiff's round-trip ticket from San Francisco to Beijing; and (6) the cost of a late-night taxi from the San Francisco airport. Compl. The parties agree that Plaintiff's damages claims are governed by Article 19 of the Montreal Convention,[3] which reads,

The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003) (Montreal Convention), reprinted in S. Treaty Doc. No. 10645, 1999 WL 33292734 (2000), Sept. 23, 1971, 24 U.S.T. 565, T.I.A.S. No. 7570. On this motion, Defendants do not attempt to assert the defense that they took all measures that could reasonably be required to avoid the damages claimed by Plaintiff. Rather, Defendants seek a judgment limiting Plaintiff's recoverable damages to

his proven economic damages. More specifically, Defendants contend that the only recoverable economic damage claimed by Plaintiff is the cost of the taxi Plaintiff took from the San Francisco International Airport to his home on November 2, 2009. Defendants claim that all other damages asserted by Plaintiff are not recoverable under the Montreal Convention.

While Defendants are correct that "purely emotional damages " may not be recovered under the Montreal Convention, courts have allowed recovery for physical and financial injuries, and even inconvenience. Daniel v. Virgin Atl. Airways Ltd, 59 F. Supp. 2d 986, 992 (N.D. Cal. 1998) (denying recovery for emotional injuries, but permitting claims for physical injuries and economic damages, including inconvenience); Ikekpeazu v. Air France, No. 3:04cv00711 (RNC), 2004 U.S. Dist. LEXIS 24580 at *4 (D. Conn. Dec. 6, 2004) (recognizing financial injury as a cognizable claim, but not emotional injury). The Court will evaluate each of Plaintiff's claimed damages in turn.

## A. Pain and Suffering

In his Complaint, Plaintiff asserts that the flight delay "resulted in pain and suffering." Compl. Defendants assert that Article 19 excludes damages for frustration, anguish, physical or mental upset, and pain and suffering. Mot. at 5. Defendants are correct that damages for "purely emotional injuries" caused by delay are not available under the Convention. Daniel, 59 F. Supp. 2d at 992; see also, e.g., Elnajjar v. Northwest Airlines, Inc., Nos. H-04-680, H-04-681, 2005 U.S. Dist. LEXIS 36792, at *15 n.5 (S.D. Tex. Aug. 15, 2005) ("Because Plaintiffs do not allege that they suffered any economic loss or physical injury . . . they cannot meet the conditions for recovery under Article 19"); Ikekpeazu, 2004 U.S. Dist. LEXIS 24580 at *4-5 (dismissing plaintiff's claims for emotional injury under Article 19); Fields v. BWIA Int'l Airways Ltd, No. 99-CV-2493(JG), 2000 U.S. Dist. LEXIS 9397 at *19 (E.D.N.Y. July 7, 2000). Accordingly, to the extent that Plaintiff seeks to recover for "pain and suffering" independent of any physical injuries or illness, such damages are not recoverable.[4] For this reason, Defendants' motion for judgment on the pleadings is GRANTED as to this claim.

## B. Lost Work

While purely emotional damages are not recoverable, a plaintiff may recover damages for economic loss under the Montreal Convention. See, e.g., Ikekpeazu, 2004 U.S. Dist. LEXIS 24580 at *4; Lee v. Am. Airlines, Inc., No. 3:01-CV-1179-P, 2002 U.S. Dist. LEXIS 12029 at *13 (N.D. Tex. July 2, 2002), aff'd, 355 F.3d 386, 387 (5th Cir. Tex. 2004). Defendants argue that economic damages are only recoverable for out-of-pocket expenses, such as Plaintiff's late-night taxi fare, and contend that Plaintiff cannot recover for his lost days of work. The case law suggests, however, that if Plaintiff can prove that his lost days of work were occasioned by the delay and resulted in financial injury, Plaintiff can recover for this economic loss under the Montreal Convention.

In Ikekpeazu v. Air France, for instance, the plaintiff alleged financial injury resulting from the delay in his flight. Ikekpeazu, 2004 U.S. Dist. LEXIS 24580 at *4.

This financial injury did not consist of out-of-pocket costs. Rather, Ikekpeazu, a surgeon, alleged financial injury from having to cancel the various surgeries and procedures he had been scheduled to perform during the week-long delay. Id. at 2. The court held that while Ikekpeazu could not recover for his alleged emotional injuries, his "allegations of financial injury resulting from the delay in his return to practice provide[d] a basis for a claim" under Article 19. Id. Similarly, Daniel suggests that the economic damages recoverable under Article 19 include foreseeable, consequential damages, such as lost wages or profits, that are occasioned by the delay. See Daniel, 59 F. Supp. 2d at 993 (collecting cases and summarizing case law on damages available under Article 19).

Here, Plaintiff has asserted that he missed work as a result of the flight delay. Compl. As Plaintiff is presumably paid for his employment, he may be able to prove that he sustained pecuniary injuries from lost work as a result of the flight delay. For this reason, Defendants' motion for judgment on the pleadings is DENIED as to this claim.

## C. Physical Illness and Medical Expenses

In addition to lost work, Plaintiff alleges that he became ill as a result of the flight, and incurred medical expenses from that illness. Taking Plaintiff's allegations as true, the Court assumes for purposes of this motion that the sickness and attendant medical expenses were caused by the thirteen and one-half hours Plaintiff sat in Beijing Airport, waiting for his flight.

Defendants cite a number of cases supporting their assertion that Plaintiff could not recover for emotional damages. Mot. at 5-6. Many of these cases also suggest that plaintiffs may recover for physical injuries. See, e.g., Daniel, 59 F. Supp. at 992 (indicating that plaintiff would have standing to bring claims under Article 19 if they alleged economic or physical injuries); Elnajjar v. Northwest Airlines, Inc., 2005 U.S. Dist. LEXIS 36792 at *15 n.5 ("Because Plaintiffs do not allege that they suffered any economic loss or physical injury . . . they cannot meet the conditions for recovery under Article 19"); Fields v. BWIA Int'l Airways Ltd., 2000 U.S. Dist. LEXIS 9397 at *19 (finding no entitlement to recovery because plaintiff did "not allege that she suffered any physical injury or any pecuniary loss").

Plaintiff claims that the flight delay caused "one of the worst sicknesses of [his] life," which in turn resulted in lost work and medical expenses. Compl. In alleging that the delay caused him to become sick, Plaintiff claims physical harm caused by the delay. The case law suggests that this type of harm, if occasioned by the flight delay, is compensable under Article 19. Moreover, any medical expenses occasioned by the flight delay and Plaintiff's resulting illness are clearly economic damages, which are recoverable under Article 19, provided that causation can be established. Defendants cite no authority suggesting that damages for physical illness and medical expenses occasioned by a flight delay are excluded under Article 19. Accordingly, the Court DENIES Defendants' motion for judgment on the pleadings as to this claim.

## D. Time Spent "Trapped" in the Beijing Airport

Plaintiff's complaint also claims "[d]amages for being trapped in a freezing Beijing airport that was worse than a prisoner would be treated." Compl. The nature of this claim is not entirely clear. Based on Plaintiff's very brief state court complaint, Plaintiff appears to seek emotional damages for the pain and suffering associated with the experience of being "trapped" in a freezing airport in less-than-optimal conditions. If this is correct, Plaintiff cannot recover for being "trapped" in the Beijing airport, as damages for pain and suffering or other purely emotional injuries are not cognizable under Article 19, as discussed above.

The Court notes, however, that to the extent Plaintiff intends to allege damages due to the inconvenience of being trapped in the Beijing airport for 13.5 hours, he may be able to recover damages if he can show that the inconvenience he suffered has an economic component that is independent of his other economic damages claims. See Daniel, 59 F. Supp. at 993 (permitting a claim for inconvenience that "encompass[ed] economic damages "); see also Lee v. Am. Airlines, Inc., 2002 U.S. Dist. LEXIS 12029 at *14-15. While Defendants cited Daniel for the proposition that damages for inconvenience, pain and suffering, and emotional harm are not recoverable, the court actually held that " damages for inconvenience do not fall within the rubric of 'emotional distress.' Time is money, after all, and the Court finds that the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel." Daniel, 59 F. Supp. at 994. The Daniel court noted that the amount of compensation for inconvenience would "vary dramatically depending on what the passenger was prevented from doing as a result of the flight delay." Id. In addition, in order to be recoverable, such "inconvenience" damages must truly encompass economic damages, and cannot simply be based upon the "discomfort, annoyance, and irritation" Plaintiff experienced during the delay. Lee, 2002 U.S. Dist. LEXIS 12029 at *14-15

Because Plaintiff has not identified any damages arising from the inconvenience of being "trapped" in the Beijing airport that have an economic component separate from and not redundant to Plaintiff's other claimed economic injuries, the Court GRANTS Defendants' motion for judgment on the pleadings as to this claim. However, Plaintiff is granted leave to amend to further develop and clarify the basis for this claim, should he choose to do so.

### E. Cost of Flight

Although Defendants actually transported Plaintiff to Beijing and back to San Francisco, Plaintiff also seeks reimbursement of the cost of his round-trip ticket. The Court agrees with Defendants that Plaintiff is not entitled to reimbursement of the cost of his ticket, as Plaintiff actually used the ticket to complete his round-trip travels. See Fields v. BWIA Int'l Airways Ltd, 2000 U.S. Dist. LEXIS 9397 at *15 ("Fields actually flew to Barbados the following day. BWIA, therefore, performed its obligations under the contract (albeit one day late) and Fields cannot claim total non-performance."). As discussed above, carriers are liable under the Montreal Convention only for damages occasioned by a flight delay. Because Plaintiff received the benefits of his round-trip ticket, Plaintiff cannot claim the cost of his ticket as an economic loss occasioned by the

delay. Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings as to this claim.

### F. Taxi Fare

Finally, both parties agree that the cost of Plaintiff's transportation from the San Francisco International Airport to his home is an out-of-pocket expense that may be recoverable under the Montreal Convention.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part. Specifically, the Court limits Plaintiff's damages claims under Article 19 of the Montreal Convention as follows:

(1) Plaintiff cannot recover damages for pain and suffering independent of physical injury;
(2) Plaintiff cannot recover the cost of his plane ticket;
(3) Plaintiff cannot recover damages for pain and suffering, discomfort, annoyance, irritation, or other emotional injuries associated with "being trapped in a freezing Beijing airport." However, if the inconvenience of being trapped in the airport had an economic component independent of Plaintiff's other claimed economic injuries, Plaintiff may amend his Complaint to allege such damages.
(4) Plaintiff's claims of lost work, physical illness and medical expenses, and the cost of his taxi fare may form the basis for a claim under the Montreal Convention. Judgment on the pleadings is therefore denied as to these three damages claims.

The June 23, 2011 hearing on Defendants' motion is hereby VACATED. **If Plaintiff wishes to amend his Complaint, he must file a First Amended Complaint within 21 days of this Order, no later than July 12, 2011.** If Plaintiff needs assistance in filing an amended complaint, he is encouraged to contact the Federal Legal Assistance Self-Help Center. To make an appointment, either sign up at the Center, located on the 4th Floor of the Federal Courthouse in San Jose, Room 4093, or call (408) 297-1480. Plaintiff may find other resources for self-represented parties at http://www.cand.uscourts.gov/proselitigants.

**IT IS SO ORDERED.**

LUCY H. KOH
United States District Judge

--------

Notes:

[1.] Plaintiff's Complaint identifies the flight as Air China flight 983. See Notice of Removal, Ex. A, Dkt. No. 1. However, Plaintiff represents that this was a typographical error and states that the correct flight number is Air China flight 985. See Pl.'s Opp'n at 1, Dkt. No. 40.

[2.] Plaintiff's brief state court complaint states that he incurred "[m]onetary damages for lost work because this flight resulted in one of the worst sicknesses of my life." Compl. In his opposition brief, Plaintiff clarifies that he missed the day of work immediately following his flight because he had to sleep during that day due to the delayed flight. Pl.'s Opp'n at 2. Plaintiff also claims that he lost an additional four days of work due to the illness that resulted from the flight delay. Id.

[3.] As the Court explained in its prior order, the Montreal Convention supersedes the Warsaw Convention of 1929, which previously governed liability in international air transport. See Order Denying Mot. to Remand at 4-5. Although there are some differences between the two conventions, "most provisions of Montreal and Warsaw Conventions are substantially the same, and, as a result, the legal precedents developed under the Warsaw Convention still apply to the Montreal Convention." Smith v. American Airlines, Inc., No. C 09-02903 WHA, 2009 WL 3072449, at *2 (N.D. Cal. Sept. 22, 2009). Accordingly, the Court relies on cases interpreting the scope of damages available under Article 19 of both conventions in ruling on Defendants' motion.

[4.] The Court assumes that Plaintiff alleges "pain and suffering" independent of his physical illness. If Plaintiff is able to prove a physical injury or illness occasioned by the flight delay, he may be able to recover for the pain and suffering flowing from that physical harm. See Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 668 (N.D. Cal. 1994) (holding that Article 17 of the Warsaw Convention permits recovery for emotional distress flowing from a physical injury).

Daniel v. Virgin Atlantic Airways Ltd., 59 F.Supp.2d 986 (N.D. Cal., 1998)

**59 F.Supp.2d 986**
**Ben DANIEL, et. al., Plaintiffs,**
**v.**
**VIRGIN ATLANTIC AIRWAYS LIMITED, Defendant.**
**No. C-97-3659 WHO.**
**United States District Court, N.D. California.**
**February 23, 1998.**

Berndt Ingo Brauer, San Jose, CA, Walter Jay Pakter, Steven C. Dimick, Moore & Dimick, Castro Valley, CA, for plaintiffs.

Jennifer J. Johnston, William MacCary, Condon & Forsyth, Los Angeles, CA, for defendant.

OPINION AND ORDER

ORRICK, District Judge.

In this purported class action against defendant Virgin Atlantic Airways Limited ("Virgin") for damages caused by delay in international air travel, Virgin now moves for judgment on the pleadings or, in the alternative, to dismiss the complaint for failure to state a claim. For the reasons set forth hereinafter, the Court grants Virgin's motion in part and denies it in part.

I.

The following statement of facts is summarized from the complaint. No class has yet been certified.

Plaintiffs Ben Daniel, Rajesh K. Gupta, and Constance O. Schmidt were economy class passengers on Virgin Flight No. 19, departing London, England on September 29, 1996 at 11:00 a.m. and scheduled to arrive the same day in San Francisco at 1:00 p.m. scheduled to arrive the same day in San Francisco at 1:00 p.m. Following an alleged mechanical failure and shortage of fuel, the flight was diverted to Vancouver, British Columbia, where Virgin held all passengers involuntarily on the tarmac for one hour and fifteen minutes. Thereafter, the passengers were held in involuntary confinement in a transit lounge for one hour and ten minutes without access to telephones.

After releasing the passengers from the lounge, Virgin furnished all Upper Class and Premium Economy Class passengers with passage on other carriers departing for San Francisco the same day. Virgin denied plaintiffs and all other economy class passengers any assistance in finding alternate flights, however, requiring them to stay overnight in Vancouver at Virgin's expense. Virgin did fly them to San Francisco the next day, and plaintiffs arrived in San Francisco at 2:00 p.m., September 30, 1996, approximately

twenty-five hours after their scheduled arrival. Virgin offered plaintiffs no compensation for their delay other than out-of-pocket expenses.

Plaintiffs assert the following causes of action against Virgin:

1. Travel delay in violation of article 19 of the Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention " or the " Convention "), reprinted as an appendix to 49 U.S.C. § 40105;

2. Breach of contract in failing to provide plaintiffs with substitute transportation to the place of destination on the date stipulated in the contract of carriage;

3. Negligence *per se* in fueling, in violation of federal regulations governing the safe operation of aircraft;

4. Negligent operation and maintenance of equipment;

5. False imprisonment, for confining plaintiffs in Vancouver International Airport against their will without access to telephones;

6. Negligent performance of a contractual duty in failing to assist plaintiffs in arranging alternate transportation to complete their journey on September 19, 1996, although such transportation was available; and

7. Negligent failure to devise and implement an emergency plan to enable plaintiffs to complete their travel as scheduled in the event of a mechanical breakdown.

In addition to damages for delay, plaintiffs seek damages for "anxiety, exhaustion, frustration, humiliation, inconvenience, mental anguish, and physical discomfort," as well as attorneys' fees and costs. (Compl. ¶¶ 22-23, 54.)

Virgin now moves for judgment on the pleadings or, alternatively, to dismiss the entire action for failure to state a claim.

II.

Virgin's motion has two prongs: (1) all of plaintiffs' causes of action fall within the scope of the Warsaw Convention; and (2) because plaintiffs seek damages only for emotional distress, and the Warsaw Convention does not permit suits for emotional distress damages, the entire complaint must be dismissed. Plaintiffs dispute Virgin's characterization of their complaint, and Virgin's legal conclusions.

A.

The Warsaw Convention applies to all international transportation of passengers by aircraft for hire. Warsaw Convention, October. 12, 1929, art. 1(1), 49 U.S.C. § 40105.

"International transportation" is defined as any transportation where the place of departure and the place of destination, according to the contract made by the parties, are located within two signatory countries. *Id.* art. 1(2). Great Britain and the United States are both signatories to the Warsaw Convention.

Under the Warsaw Convention, an air carrier is liable in three situations:

1. "for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking." *Id.* art. 17;

2. "for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air." *Id.* art. 18(1); and

3. "for damage occasioned by delay in the transportation by air of passengers, baggage, or goods." *Id.* art. 19.

Of these three categories of damages, only Article 19 is at issue here. "In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention." *Id.* art. 24(1).

The Ninth Circuit has declined to reach the question of whether the Warsaw Convention creates the exclusive right of action for delays in international air transportation. *Lathigra v. British Airways PLC,* 41 F.3d 535, 538 n. 4 (9th Cir.1994). It has repeatedly stated in dicta, however, that state law claims are not preempted by the Convention, but merely are constrained by the limits on recovery set forth in the Convention. *See In re Aircrash in Bali, Indonesia on April 22, 1974,* 684 F.2d 1301, 1311 n. 8 (9th Cir.1982) ("the Convention has never been read to *limit* plaintiffs to a cause of action arising thereunder, but rather to limit the recovery in suits for injury"); *In re Mexico City Aircrash of October 31, 1979,* 708 F.2d 400, 414 n. 25 (9th Cir.1983) (noting that the Convention did not preclude claims based on state law, but although those claims could provide varying measures of damages or varying specifications of persons entitled to recover, they could not be used to circumvent the liability limits or limitations period of the Convention); *Johnson v. American Airlines, Inc.,* 834 F.2d 721, 723 (9th Cir.1987) ("State-law claims allowing damages for injuries to goods in international air transportation can only be maintained subject to the conditions and limits outlined in the Warsaw Convention.").

Since then, the Supreme Court has provided some guidance as to the law that applies to claims brought under Article 17, which appears to make moot the issue of whether the Convention provides an exclusive cause of action. *See Zicherman v. Korean Air Lines Co., Ltd.,* 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). Article 17 provides for liability "for damage sustained in the event of the death or wounding of a passenger." Warsaw Convention, art. 17. The Court found that the term "damage"—*dommage* in the

original French text — should be interpreted as "legally cognizable harm." *Id.* at 633. The same term appears in Article 19, which provides for liability for "damage occasioned by delay." Warsaw Convention, art. 19. Thus, as Article 17 provides for liability for legally cognizable harm sustained in the event of death or wounding, Article 19 provides for liability for legally cognizable harm occasioned by delay.

In *Zicherman,* the Supreme Court found that "Article 17 leaves it to adjudicating courts to specify what harm is cognizable." *Zicherman,* 116 S.Ct. at 633. The type of harm that is cognizable is to be determined under domestic law. *Id.* at 634. In coming to this conclusion, the Court relied on Article 24, however, which sets forth different standards for claims brought under Article 17 than for claims brought under Article 19. Article 24 provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, may only be brought subject to the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

Warsaw Convention, art. 24. The Court found that in an action brought under Article 17, "the law of the Convention does not affect the substantive questions of who may bring suit and what they may be compensated for." *Zicherman,* 116 S.Ct. at 634. Thus, "Articles 17 and 24(2) provide nothing more than a pass-through, authorizing us to apply the law that would govern in the absence of the Warsaw Convention" under the forum's choice of law rules.[1] *Id.* at 636, 637. The Court rejected the proposition that a uniform federal law of damages should apply to govern Warsaw Convention cases, finding that although the drafters of the Convention intended to foster uniformity in the law of international air travel, they did not find the imposition of uniformity as to the damages available under the Convention to be feasible. *Id.* at 636. "The Convention neither adopted any uniform rule of its own nor authorized national courts to pursue uniformity in derogation of otherwise applicable law." *Id.* Because *Zicherman* involved an airplane crash on the high seas, the Court found that the Death on the High Seas Act applied to define the cognizable harm for which damages could be awarded under Article 17. *Id* at 636. The Court did not purport to decide, in *Zicherman,* whether claims could be brought under both the Convention and state law, but its holding that the definition of legally cognizable damage under the Convention requires reference to domestic law appears to render the issue effectively moot. Whether or not the Convention provides an exclusive right of action, the Court still must refer to domestic law to determine the damage that is actionable.

The Court sees no reason why claims covered by Article 19 do not also require reference to domestic law to determine the damage that is actionable. As noted above, both articles contain the same French word *dommage,* which was interpreted in *Zicherman* to mean "legally cognizable damage." The Court does not find material the

differences in the language of Article 24 with respect to claims covered by Article 17, on the one hand, and Articles 18 and 19 on the other. Article 24, upon which *Zicherman* relied heavily, does distinguish claims covered by Articles 18 and 19 from claims covered by Article 17. Claims covered by Articles 18 and 19 "however founded, can only be brought subject to the conditions and limits set out in this convention." Warsaw Convention, art. 24(1). Article 24(1) also applies to claims covered by Article 17, but "without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights." *Id.* art. 24(2). The Ninth Circuit has held that the purpose of the "without prejudice" phrase in Article 24(2) was merely to make clear that local law was to determine who may bring a survival action based on the death of a passenger injured in international air travel. *In re Mexico City Aircrash,* 708 F.2d at 414. Article 24(1), which applies to claims covered by Articles 17, 18, and 19, was not intended to create an exclusive cause of action under the Convention, but was intended to allow local causes of action to provide varying measures of damages and to specify the persons who could bring suit, without negating the specific limitations set forth in the Convention. *Id.* at 414 n. 25.

No opinions discussing the law applicable to claims covered by Article 19 in light of *Zicherman* have been cited to the Court, nor has the Court located any cases. *Zicherman* is not inconsistent with the Ninth Circuit's previous assertions that state law claims for injuries falling within the scope of the Warsaw Convention are not barred by, but are merely limited by, the conditions and limitations of the Convention.[2] *But see Fishman v. Delta Air Lines, Inc.,* 132 F.3d 138 (2d Cir. 1998) (finding that all state law claims that fall within the scope of the Convention are preempted); *Jack v. Trans World Airlines,* 820 F.Supp. 1218 (N.D.Cal.1993) (finding that the Warsaw Convention provides the exclusive basis of recovery for damages arising from delay, lost or damaged goods, personal injury, and death during international flights). To the extent any of plaintiff's claims fall outside the scope of the Warsaw Convention, liability and remedies are determined by common law or statute. *See Lathigra,* 41 F.3d at 538-39; *Tseng v. El Al Israel Airlines, Ltd.,* 122 F.3d 99, 104 (2d Cir.1997); *but see Potter v. Delta Air Lines,* 98 F.3d 881, 885 (5th Cir.1996) (finding that the Convention preempts all state regulation of international air travel, even where the Convention does not provide a remedy).

B.

In *Lathigra,* the Ninth Circuit found that "[o]nce the passenger presents herself to the carrier or its agents as ready to begin the air journey, the Convention generally governs liability for delays in the carrier's performance, and its provisions apply until completion of disembarkation at the destination airport." 41 F.3d at 539. The court found that the case before it did not arise under the Convention because the plaintiffs sought damages for delay caused by the airline's negligent reconfirmation, days before departure, of a reservation for a nonexistent flight. *Id.* The Court found that the Convention applied only to actions for delay related to the performance of the international transportation. *Id.* at 538. Because the plaintiffs' damages in that case occurred as a result of negligence occurring prior to the commencement of the flight, their damages did not arise from a delay in the transportation by air for purposes of Article 19. *Id.* The court expressly left

open the question of "the Convention 's scope with respect to operational decisions (*e.g.,* maintenance and repair) or decisions (*e.g.,* changes in schedules and frequencies) necessarily occurring hours or days before departure." *Id.* at 539 (citations omitted).

Following *Lathigra,* it cannot be disputed that plaintiffs' claims for breach of contract for failure to provide plaintiffs with substitute transportation, and negligent performance of a contractual duty in failing to assist plaintiffs in arranging alternate transportation, fall within the scope of Article 19. The acts complained of occurred after plaintiffs presented themselves at the gate for the flight and before disembarkation at the destination airport, and caused plaintiffs' arrival at their destination to be delayed.[3]

Although *Lathigra* left the question open, the Court also finds that plaintiffs' claims for negligence in fueling, negligent operation and maintenance, and negligent failure to devise an emergency plan, also fall within the scope of Article 19. Assuming that these negligent acts occurred, they occurred at some point prior to the flight. *Lathigra* is distinguishable in that the negligence in that case caused plaintiffs to arrive for a completely nonexistent flight; because the flight did not exist, the preflight negligence did not delay the flight. Here, however, the alleged negligent fueling, operation, and maintenance of the airplane resulted in a delay of the flight's arrival at its destination. The alleged negligent failure to devise an emergency plan similarly resulted in a delay in plaintiffs' arrival at their destination, once the event occurred that required the flight to be diverted to Vancouver. No cause of action arose as a result of the alleged negligence until the flight was under way, problems occurred, and the flight's arrival was delayed. All three of these negligence claims are, in essence, claims for delayed arrival at plaintiffs' destination. Accordingly, the Court finds that these claims fall within the scope of Article 19.

The Court is left with plaintiffs' claim for false imprisonment. The acts alleged to constitute false imprisonment also occurred after the flight began and before plaintiffs arrived at their destination. In essence, plaintiffs contend that Virgin exacerbated the delay by detaining them on the tarmac and in a transit lounge in the Vancouver airport for a total of two hours and twenty-five minutes, without access to telephones, thus preventing plaintiffs from making other travel plans. This cause of action also arises entirely from the delay of the flight. The Court notes that unlike Article 17, which provides for liability only for *accidental* injuries to passengers, Article 19 holds the carrier liable for all damage occasioned by delay in the international air transportation of passengers, without limitation that the delay be accidental. The Court finds that plaintiffs' claim for false imprisonment falls within the scope of the Warsaw Convention. *Cf. Chendrimada v. Air-India,* 802 F.Supp. 1089 (S.D.N.Y.1992) (holding that claim for negligence resulting from being forced to remain on a grounded aircraft for over eleven hours was governed by the Convention).

Accordingly, the Court finds that all of plaintiffs' causes of action fall within the scope of Article 19 of the Convention. Thus, all of plaintiffs' claims are subject to the conditions and limitations set forth in the Convention. *See In re Aircrash in Bali,*

*Indonesia,* 684 F.2d at 1311 n. 8; *In re Mexico City Aircrash,* 708 F.2d at 414 n. 25; *Johnson v. American Airlines, Inc.,* 834 F.2d at 723.

C.

The most difficult issue is determining what constitutes legally cognizable harm for delay under domestic law. Virgin argues that all of plaintiff's claims must be dismissed, because plaintiffs seek only damages for emotional distress, which are not available under the Warsaw Convention. Virgin relies on *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). In that case, the passengers sued an airline for emotional distress suffered when all three engines failed during a flight over the Atlantic Ocean and the passengers were informed that the plane would make a crash landing in the ocean. After a period of rapid descent without power, an engine was restarted and the plane ultimately landed safely in Miami. The Supreme Court held that an air carrier cannot be held liable under Article 17[4] of the Warsaw Convention for mental distress that is unaccompanied by death, physical injury, or physical manifestation of injury. *Id.* at 552, 111 S.Ct. 1489. The Court expressed no opinion as to whether passengers can recover for mental injuries that are accompanied by physical injuries. *Id.* After examining the French text of the Warsaw Convention, the negotiating history of the treaty, and the unavailability of compensation for purely psychic injuries in many common and civil law countries at the time the treaty was drafted, the Court concluded that it was unlikely that the drafters intended for the Convention to provide for damages for purely mental or physical injuries unaccompanied by physical injury. *Id.* at 544-45, 111 S.Ct. 1489. In light of this holding by the Supreme Court, this Court cannot logically find that damages for purely emotional injuries caused by delayed arrival are available under the Convention, when damages for purely emotional injuries caused by a near-crash into the ocean are not available.

Plaintiffs allege that because their arrival in San Francisco was significantly delayed, they suffered "anxiety, exhaustion, frustration, humiliation, inconvenience, mental anguish and physical discomfort." (Compl. ¶ 23.) Of these, "inconvenience" could conceivably encompass economic damages, and "exhaustion" and "physical discomfort" might encompass bodily injury. The remainder clearly are forms of emotional distress. The Supreme Court has expressed "no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries." *Floyd,* 499 U.S. at 552, 111 S.Ct. 1489. None of the named plaintiffs, however, has alleged economic or physical injuries in the complaint. If none of the named plaintiffs has suffered economic loss or physical injury, they do not have standing to seek such relief on behalf of the purported class. *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2183, 135 L.Ed.2d 606 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). The Court grants plaintiffs leave to amend the complaint to allege such damages if they can. As plaintiffs have not alleged economic loss or physical injury, the Court takes no position at this time as to whether emotional distress damages can be recovered if accompanied by economic or physical injury.

Page 15 of 31

Plaintiffs argue that even without proof of economic loss or physical injury, "mere delay" constitutes legally cognizable harm.

Federal regulations provide for compensation for air passengers who are involuntarily prevented from boarding a flight due to overbooking, without a requirement that the passenger prove economic damages or physical injury. 14 C.F.R. §§ 250.4, 250.5, 250.6 (1998). In colloquial terms, this is frequently referred to as "bumping." The regulations provide for a maximum compensation of $400, which is halved if the carrier provides alternate transportation that is planned to arrive at the passenger's next destination within four hours (in the case of foreign flights) of the arrival time of the original flight from which the passenger was bumped. § 250.5(a). The "bumped" passenger has the right to decline the compensation provided for in the regulation and seek to recover damages in a court of law. § 250.9(b); *see West v. Northwest Airlines. Inc., 995 F.2d 148, 151-52 (9th Cir.1993)* (interpreting 14 § 250.9(b) to permit suits for compensatory damages, but not punitive damages). There is nothing in these regulations that suggests that similar compensation is required, however, when a passenger is permitted to board a flight, but the flight arrives late at its destination. Nonetheless, as plaintiff argues, it appears inequitable that damages are available only when the passenger is delayed by being denied boarding, but not when the passenger boards the flight and her arrival is delayed due to problems occurring during the flight. In either case, the passenger is delayed. Accordingly, the Court adopts these federal regulations by analogy as setting forth inconvenience itself as a legally cognizable harm for delay in international air travel.

The Court is still left with the problem of precisely what sort of damages are available in a suit for delay in international air travel. There are only a handful cases discussing the damages available for cases covered by Article 19. In *Harpalani v. Air India, Inc.,* 622 F.Supp. 69, 72-73 (N.D.Ill.1985), the plaintiffs were delayed six days in India when they were repeatedly bumped from their flight from Bombay to New York, and filed suit against the airline seeking damages for the delay, including inconvenience, costs of meals and lodging, telephone expenses, and lost wages. *Id.* at 71. In a later opinion in the same case, the court concluded that Article 19 "appears to permit only compensatory damages" and granted defendants' motion to strike plaintiff's claim for punitive damages. *Harpalani v. Air-India, Inc.,* 634 F.Supp. 797, 798-99 (N.D.Ill. 1986). In *Pakistan Arts & Entertainment Corp. v. Pakistan International Airlines Corp., 232 A.D.2d 29, 660 N.Y.S.2d 741 (N.Y.App.Div.1997),* the court looked to New York law to determine the legally cognizable damages for delay under Article 19, and cited general contract cases for the proposition that a delayed passenger can sue for all contemplated and foreseeable damages for the failure to timely transport the passenger. *Id.* at 32, 660 N.Y.S.2d 741 at 744. In *Saiyed v. Transmediterranean Airways,* 509 F.Supp. 1167 (W.D.Mich.1981), plaintiff sued under Article 19 for damages for delayed shipment of goods that arrived too late to be sold during the Christmas shopping season. The court found that the Convention trumped any limitations on liability contained in the airline's tariff, and found that the plaintiff could recover all consequential damages up to the limits provided in the Convention. *Id.* at 1169. In *Kupferman v. Pakistan International Airlines, 108 Misc.2d 485, 438 N.Y.S.2d 189 (Civ.Ct. 1981),* plaintiffs sued under state law when

an airline lost plaintiffs' luggage for fifteen days during a trip to China. The court found that Article 19 applied, and held that plaintiffs were entitled to "fair and just compensation for physical discomfort, inconvenience, humiliation, embarrassment and loss of a refreshing memorable vacation due to the total absence of their luggage including a movie camera for the duration of the China Tour, despite the fact that subject luggage was returned intact, 15-16 days later, just before their return flight." *Id.* at 489, 438 N.Y.S.2d at 192.

In addition, the Court has located a case involving a domestic flight not covered by the Warsaw Convention, where a district court found that a plaintiff who was bumped from a domestic flight was entitled to sue for compensatory damages under 14 C.F.R. § 250.9, including damages for inconvenience, loss of time, anxiety and frustration, noting that "inconvenience, delay and uncertainty are worth something even in the absence of out-of-pocket costs." *Lopez v. Eastern Airlines, Inc.,* 677 F.Supp. 181, 183 (S.D.N.Y.1988) (citations omitted).[5] Of course, after the Supreme Court's decision in *Floyd,* damages for anxiety and frustration are not compensable in Warsaw Convention cases. *Floyd,* 499 U.S. at 544-45, 111 S.Ct. 1489.

The Court finds, however, that damages for inconvenience do not fall within the rubric of "emotional distress." Time is money, after all, and the Court finds that the inconvenience of being trapped for hours in an unfamiliar airport is a compensable element of damages for delay in air travel under the Warsaw Convention and domestic law, even in the absence of economic loss or physical injury.[6] Because plaintiffs have alleged that they suffered inconvenience as a result of the delay of their international flight, and not just emotional distress, the Court denies Virgin's motion to dismiss the complaint.

III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Virgin's motion to dismiss plaintiffs' state law claims on the ground that the Warsaw Convention provides the exclusive cause of action for claims falling within the scope of the Convention is DENIED.

2. Virgin's motion to dismiss the complaint to the extent that plaintiffs seek damages for emotional distress is GRANTED.

3. Virgin's motion to dismiss the entire complaint on the ground that plaintiffs seek damages only for emotional distress is DENIED.

4. Plaintiffs shall file an amended complaint by March 4, 1998. Plaintiffs will clarify whether they are only seeking damages for mere delay, or whether any of the named

plaintiffs have suffered economic loss or physical injury as a result of their delayed arrival in San Francisco.

---------------

Notes:

1. As neither party argues that choice of law rules mandate the application of foreign law to this action, the Court will assume that domestic law applies.

2. For instance, the Convention provides that a carrier is not liable if it proves that it took all necessary measures to avoid the damage or that such measures were impossible. Warsaw Convention, art. 20. The Convention also contains provisions on contributory negligence, monetary limits on liability, willful misconduct, venue, and a statute of limitations. *See id.* arts. 21, 22, 25, 28, and 29.

3. In Virgin's supplemental briefing, it argues that plaintiffs' breach of contract claims are barred because Virgin's tariffs filed with the Civil Aeronautics Board do not guarantee arrival times. As this argument first appears in the supplemental briefing, the Court will not consider it at this time. Virgin may raise the argument in a separate motion.

   The Court notes, however, that Article 20 of the Convention provides that the carrier is liable unless it has taken all necessary measures to prevent the damage, or that such measures were impossible. Article 23 of the Convention provides that "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this convention shall be null and void[.]" Warsaw Convention, art. 23. Article 33 provides that the transportation contract may not contain terms that conflict with the Convention. Any motion raising the tariff provision as a bar to the contract action must also address the interplay between the tariff and Articles 20, 23 and 33 of the Convention. The parties must also address the extent to which Article 20 has been amended or abrogated by the Montreal Agreement of 1966 (*see* 31 Fed. Reg. 7302), and/or the 1996 agreements by the International Air Transport Association and the Air Transport Association of America relating to liability limitations of the Warsaw Convention (*see* 1996 WL 656334).

4. Article 17 provides for liability for the death, wounding or other bodily injury of a passenger, caused by an accident on board the aircraft or in course of embarking or disembarking.

5. *See also Smith v. Piedmont Aviation, Inc.,* 567 F.2d 290 (5th Cir.1978) (affirming an award of damages for inconvenience to a passenger who was bumped from a domestic flight and missed a wedding rehearsal and part of the rehearsal dinner).

6. The amount of compensation could vary dramatically depending on what the passenger was prevented from doing as a result of the flight delay.

Kupferman v. Pakistan Intern. Airlines, 438 N.Y.S.2d 189, 108 Misc.2d 485 (N.Y. City Civ.Ct., 1981)

**438 N.Y.S.2d 189**
**108 Misc.2d 485**
**Franklyn KUPFERMAN and Evelyn Kupferman, Plaintiffs,**
**v.**
**PAKISTAN INTERNATIONAL AIRLINES, Defendant.**
**Civil Court of the City of New York,**
**New York County.**
**March 27, 1981.**

Swetnick, Rosenblum & Zindler, New York City, for plaintiffs; Robert N. Swetnick, New York City, of counsel.

Cordon & Forsyth, New York City, for defendant; Timothy J. Pfister, New York City, of counsel.

NORMAN C. RYP, Judge:

By stipulation, between the parties in open court on January 28, 1981, the above entitled commercial non-jury action for $10,000 in damages for negligence and breach of contract was submitted to this court for decision based upon trial memoranda and pre-trial depositions ("Tr-page no.") by plaintiffs on February 27, 1980 in lieu of trial, on the issue of damages only.

FACTS :

The plaintiffs, Franklyn and Evelyn Kupferman, took a group tour of China from June 20, 1978 to July 8, 1978 operated by defendant Pakistan International Airlines ("PIA"). This tour per person included land ($881.00) and air ($1,152.00) accommodations at a total cost of $2,033 or $4,066.00 per couple with a PIA charter flight from JFK International to Peking, China, with a stopover at Karachi, Pakistan. Plaintiffs' luggage was mislaid after loading at JFK on June 20, 1978 and not returned to plaintiffs until July 5 or 6, 1978 just prior to their return to New York. This left plaintiffs without clothing, health aids, medication, movie camera, film and other necessary travel items which plaintiffs were unable to obtain for the duration of their stay in China. The absence of such articles restricted and at times prohibited their participation in tour activities because of lack of suitable clothing and toiletries to cope with the heat (98? - temperature TR-22), caused plaintiffs to expend money and precious travel time on long distance telephone calls attempting to recover their possessions and attempting without success to purchase replacements.

THE PARTIES' CONTENTIONS

Plaintiffs contend that defendant's negligence caused each physical discomfort and mental anguish, converting an anticipated Oriental holiday into an unpleasant, difficult experience and seek damages in the amount of $4,066, the total cost of subject tour. They contend PIA is liable for damages caused by delay in transportation of their luggage pursuant to Article 19 of the Convention for Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention ") 49 Stat. 3000; TS 876; is guilty of "willful misconduct", pursuant to Article 25 of the Warsaw Convention; and failed to comply with Article 4 of the Warsaw Convention so that the monetary limitations upon defendant's liability, pursuant to the Warsaw Convention, are inapplicable.

Defendant, PIA, admits liability but contends the monetary limitations of $400 per person of Article 22(2), (4) of the Warsaw Convention apply herein and disclaims any willful misconduct. The $400.00 person monetary limitation is base upon $20.00 per kilogram (or $9.07 per lb.) multiplied by the 20 kilogram (or 44 lbs.) maximum baggage allowance.

## APPLICABLE LAW

The Convention for Unification of Certain Rules relating to International Transportation by Air (Warsaw Convention), 49 Stat. 3000 TS 876 governs the rights and liabilities of the parties herein. See Article 1; Lisi v. Alitalia-Linee Aeree Italiane, 253 F.Supp. 237 (S.D.N.Y.1966) aff'd 370 F.2d 508 (2d Cir. 1966) aff'd 390 U.S. 455, 88 S.Ct. 1193, 20 L.Ed.2d 27 (1968); Hill v. Eastern Airlines, 103 Misc.2d 306, 425 N.Y.S.2d 715 (Civ.Ct.Kings Co.1980); Schedlmayer v. Trans International Airlines, 99 Misc.2d 478, 416 N.Y.S.2d 461 (Civ.Ct.N.Y.Co.1979); Kalish v. Trans World Airlines, 89 Misc.2d 153, 390 N.Y.S.2d 1007 (Civ.Ct.Queens Co.1977). Pursuant to Article 19: "The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods."

Article 4 of the Warsaw Convention governs baggage checks:

Article 4

(1) For the transportation of baggage, other than small personal objects of which the passenger takes charge himself, the carrier must deliver a baggage check.

(2) The baggage check shall be made out in duplicate, one part for the passenger and the other part for the carrier.

(3) The baggage check shall contain the following particulars:

(a) The place and date of issue;

(b) The place of departure and of destination;

(c) The name and address of the carrier or carriers;

(d) The number of the passenger ticket;

(e) A statement that delivery of the baggage will be made to the bearer of the baggage check;

(f) The number and weight of the packages;

(g) The amount of the value declared in accordance with article 22(2);

(h) A statement that the transportation is subject to the rules relating to liability established by this convention.

(4) The absence, irregularity, or loss of the baggage check shall not affect the existence of the validity of the contract of transportation which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at (d), (f), and (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability.

An examination of plaintiffs' passenger tickets and baggage checks DX 2-4 indicates non compliance with Article 4(3)(f). Clearly, PIA's liability is not subject to any monetary restriction pursuant to Article 22(2) of the Warsaw Convention. See Hill v. Eastern Airlines, Inc., 103 Misc.2d 306, 425 N.Y.S.2d 715 (Civ.Ct.Kings Co.1980); Schedlmayer v. Trans International Airlines, 99 Misc.2d 478, 416 N.Y.S.2d 461 (Civ.Ct.N.Y.Co.1979).

Plaintiff further contends willful misconduct by PIA in that defendant (1) incorrectly ticketed plaintiffs' luggage for Karachi instead of Peking (TR-9) (2), despite repeated requests by plaintiffs refused to correctly ticket the luggage (TR-21) (3) refused to verify that the luggage was on the plane with plaintiffs from Karachi to Peking (TR-16) (4) failed to retrieve luggage from Karachi for 15 days (TR-19) (5) gave self serving false assurances through its agents and employees that subject luggage would be returned the next day (TR-15). Willful misconduct is defined in Article 25(1).

Article 25

(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.

(2) Similarly the carrier shall not be entitled to avail himself of the said provisions, if the damage is caused under the same circumstances by any agent of the carrier acting within the scope of his employment.

This court finds fact that the above actions constitute "willful misconduct" under Article 25. Compania De Aviacion Faucett v. Mulford, 386 So.2d 300, 301 (3rd Dist.Ct. of Appeal Fla. 1980); Cohen v. Varig Airlines, 62 A.D.2d 324, 405 N.Y.S.2d 44 (1st Dept. 1978). Therefore any limitations on defendant PIA's liability pursuant to Warsaw Convention are nullified by defendant's conduct herein.

Compensable items of damage under the Warsaw Convention are to be determined pursuant to the law of the jurisdiction having the greatest or dominant interest in the matter. This court finds, in fact and law, that New York is the jurisdiction with the greatest interest in this matter; plaintiffs are New York residents, defendant PIA is a foreign corporation licensed to do business in New York, subject tour began and ended in New York; therefore the laws of New York govern the award of damages. Mertens v. Flying Tiger Line, 341 F.2d 851 (2d Cir. 1965) cert. den. 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64; Husserl v. Swiss Air Transp. Co., 351 F.Supp. 702 (S.D.N.Y.1972) aff'd. 485 F.2d 1240 (2d Cir. 1973); Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99 (1954).

Plaintiffs are entitled to fair and just compensation for physical discomfort, inconvenience, humiliation, embarrassment and loss of a refreshing, memorable vacation due to the total absence of their luggage including a movie camera for the duration of the China Tour, despite the fact that subject luggage was returned intact, 15-16 days later, just before their return flight.

"... (T)he law has evolved a liberal rule of damages where a passenger has been subjected to humiliating indifference and has been accorded treatment inferior to the class of treatment that he had bargained for." Owens v. Italia Societa Per Azione Navigazione Genova, 70 Misc.2d 719, 723, 334 N.Y.S.2d 789 (Civ.Ct.N.Y.Co.1972) aff'd. 75 Misc.2d 104, 347 N.Y.S.2d 431 (Sup.Ct.App.Tm. 1st Dept. 1973), wherein the court awarded damages in the amount of one-third ( 1/3) total cost of passage in compensation for an incomplete cruise, substandard accommodation and staff incompetence. Damages have been awarded for mental anguish, inconvenience and humiliation that resulted from inadequate accommodations: Odysseys Unlimited Inc. v. Astral Travel Service, 77 Misc.2d 502, 354 N.Y.S.2d 88 (Sup.Ct.Nassau Co.1974), plaintiffs awarded entire cost of trip; Bucholtz v. Sirotkin Travel Ltd., 74 Misc.2d 180, 343 N.Y.S.2d 438 (Dist.Ct.Nassau Co.1973) aff'd. 80 Misc.2d 333, 363 N.Y.S.2d 415 (App.Tm.2d Dept. 1974), plaintiffs awarded one third cost of trip.

This case is clearly distinguishable from Cohen v. Varig, 62 A.D.2d 324, 405 N.Y.S.2d 44 (1st Dept. 1978) wherein plaintiffs' luggage was never recovered. In Cohen, the court refused compensation for mental distress holding that plaintiffs were adequately compensated for their loss by recovery of the actual value of the lost luggage and contents. See also Hill v. Eastern Airlines, 103 Misc.2d 306, 425 N.Y.S.2d 715 (Civ.Ct.Kings Co.1980). Clearly, a different measure of damages must be applied when, as in the subject action, delay in transportation, not loss of luggage was the proximate cause of plaintiffs' injuries.

Accordingly, this court finds, in fact and law, that plaintiffs have by a fair preponderance of the credible evidence sustained their burden of proof and are hereby awarded damages in the amount of $677.67 each (which is one-third ( 1/3) of the total cost of the trip) or a total of $1,355.34, plus interest, costs and disbursements.

---

Stone v. Continental Airlines, 2005 NY Slip Op 25481 (NY 11/10/2005), 2005 NY Slip Op 25481 (NY, 2005)
**2005 NY Slip Op 25481**
**THATCHER A. STONE, Claimant,**
**v.**
**CONTINENTAL AIRLINES, Defendant.**
**2025/05.**
**Civil Court of the City of New York, New York County.**
**Decided November 10, 2005.**

Thatcher A. Stone, Esq., pro se, New York, New York, Claimant.

Continental Airlines, pro se as permitted by N.Y.C.C.A. § 1809 (2), by Marie Johnsen, Customer Care Representative, Houston, Texas, Defendant

DIANE A. LEBEDEFF, J.

This matter brings up a bread-and-butter airline issue the measure of damages governing the claims of passengers "bumped" from domestic airline flights an issue rarely explored in detail notwithstanding that more than 30,000 passengers a year could raise similar claims, as permitted by federal statute and regulations (49 U.S.C.S. § 41713, known as the "Airline Deregulation Act" or "ADA"; 14 C.F.R. part 250).

This case has simple facts. Claimant Thatcher A. Stone, a partner in a New York Law firm and a lecturer in aviation and airline industry law at the University of Virginia School of Law, made arrangements for a Colorado ski trip for himself and his 13-year old daughter for the 2004 Christmas season, to depart New York on December 25th and return from Telluride on January 1st. Their flights were booked with Continental Airlines ("Continental"). After their baggage was checked and when the father and daughter were at the airline gate, they were "bumped" from the flight. The Continental representative who testified at the trial stated that Continental records reveal claimant was offered an alternate flight two or more days later, but claimant only remembers clearly an offer of a flight departing one day before their scheduled return. Because the airline would not unload their baggage and could give no firm advice regarding how long the airline would take to return the baggage, which included cold-weather sportswear for both and the father's ski equipment, the father and daughter returned home and were unable to make any firm alternate ski or "getaway" plans. Continental refunded the price of the airline tickets while claimant was in the airline terminal.

Claimant seeks recovery for out-of-pocket losses and deprivation of the use of the contents of baggage, as well as damages under New York's consumer protection statutes and punitive damages. He testified that his loss included $1,360 for unrecoverable pre-paid ski lodge accommodations, lift tickets and his daughter's equipment rental, and that the entire experience involved inconveniences and stresses upon himself and his daughter because of the "bumping" and the scheduled holiday "that never was."

*"Bumping" Claims and Federal Limitations*

As any airline traveler knows, "bumping" of an unlucky passenger occurs when more passengers appear to take a flight than the number of seats available on a given flight, and it arises because tickets are sold above and beyond the airplane's seating capacity. The United States Supreme Court, addressing an instance in which consumer advocate Ralph Nader was "bumped" from a flight, described overbooking as "a common industry practice, designed to ensure that each flight leaves with as few empty seats as possible" (*Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 293 [1976]).

The claims of "bumped" passengers are governed by federal regulation which require an airline to offer compensation to "bumped" passengers (14 C.F.R. part 250, entitled *Oversales,* originally published at 41 Fed. Reg. 16,478, and entitled *Priority Rules, Denied-Boarding Compensation Tariffs and Reports of Unaccommodated Passengers* [Apr. 19, 1976]).[1] If a "bumped" passenger rejects an airline 's offer, the passenger is entitled to "seek to recover damages in a court of law or in some other manner" under 14 C.F.R. § 250.9 (b), which language is universally regarded as permitting a claim for contract damages which may exceed the amount of compensation offered by an airline.

All tickets for domestic flights embrace these same rights, for every airline 's Contract of Carriage must be consistent with federal rules (14 C.F.R. § 253.4). As described in a comprehensive law review article with an analysis of the economics of overbooking by Elliott Blanchard, *Terminal 250: Federal Regulation of Airline Overbooking,* 79 N.Y.U. L. Rev. 1799, 1807-1808 and fn. 3 (2004), since 1990, on average, almost 900,000 domestic passengers are "bumped" annually, and 2003 study data developed by the United States Department of Transportation indicates that 96 per cent of such passengers accept the compensation offered by airlines, leaving approximately 36,000 "bumped" passengers per year who refuse such offers and are entitled to raise damages claims.

Any other claim which a passenger asserts arises from "bumping" must be parsed out and separately assessed. The bulk of other claims are barred by reasons of law, including federal preemption (49 U.S.C.A. § 41713 [b][1], local jurisdictions "may not enact or enforce a law ... related to a price, route, or service of an air carrier"; *see,* Anne K. Wooster, Annotation, *Construction and Application of §105 Airline Deregulation Act [49 U.S.C.A. §41713], Pertaining to Preemption of Authority Over Prices, Routes, and Services,* 149 A.L.R. Fed. 299; *see also,* Jim Leslie, *Passenger Bumping,* 3-AUG Nev. Law. 10 [1994], review of available claims relating to carriage and luggage, including claims of discrimination). Under the federal law, an airline may not be sued for many general matters touching upon airline operation (*see, e.g., Smith v. Comair,* 134 F.3d 254 [4th Cir. 1998], and *Delta Air Lines, Inc. v. Black, supra*), but an airline may be sued for some contract issues apart from "bumping" claims (*see, American Airlines, Inc. v. Wolens,* 513 U.S. 219 [1995], frequent flyer program contractually adopted by airline). Following such a judicial review of the claims asserted in this case, the court is satisfied that New York State's consumer protection statutes cannot serve as the proper basis for

claims against the airline.[2] Additionally, a punitive damage claim against an airline is barred by federal preemption, even for a "bumped" passenger.[3] Accordingly, the court severs and dismisses the consumer protection and punitive damages claims, which leaves only the contract damages claim before the court.

*Contract Damages for a "Bumped" Passenger*

A "bumped" passenger is entitled to contract damages upon no greater proof than facts establishing (1) ticket purchase, (2) involuntary denial of boarding within the meaning of the federal regulations, (3) non-acceptance of an airline 's offer of compensation, and (4) damages.

Such a claim for contract damages is measured under state law.

As the items to be embraced within contract damages for a passenger "bumped" from a domestic flight, only a handful of cases on point nationwide have granted relief on this issue (*see, Smith v. Piedmont Aviation, Inc., 567 F.2d 290*, 292 [5th Cir. 1978], reciting as a factor in damages, inconvenience and a need to make alternate arrangements, including rental of a car to reach destination, $1,051.80 awarded; *Lopez v. Eastern Airlines, Inc., supra*, 677 F.Supp. at 183, "inconvenience, delay and uncertainty are worth something even in the absence of out-of-pocket costs" for passenger arriving at midnight instead of at a mid-evening hour, $450 awarded; *Goranson v. Trans World Airlines, 121 Misc 2d 68*, 78 and 80 [City Ct. White Plains, 1983], "courts have held that damages may consist of a wide variety of elements, including expenses for substitute or alternate transportation, meals, compensation for humiliation, outrage and inconvenience" and damages held to include cost of unused pre-paid arrangements where replacement flight delayed departure for two days, $1,500 awarded; *Levy v. Eastern Airlines, 113 Misc 2d 847* [Civ. Ct. NY Co. 1982, Hentel, J.], accepting as *prima facie* measure of damages twice face value of tickets, $1,074 awarded).[4]

In addition to case law, two sets of federal regulations give some guidance as to the dollar amount of damages which an airline should reasonably foresee in a "bumping" situation. The first regulation is the "bumping" regulation and airlines must contemplate that an impacted passenger would assert a claim exceeding the $400 per ticket lodestar compensation figure adopted in 1978 by the federal regulations, as well the fact that the $400 figure would be adjusted to its current economic value. Taking judicial notice of inflation (29 Am.Jur.2d Evidence § 68, *Current financial data; interest, discount, and exchange rates,* "the effect that inflation has already had on the value of money over a specific period of time is judicially noticeable"), the inflation-adjusted equivalent to the 1978 figure of $400 is equal to $1,219.63 in 2005 dollars for each passenger, according to a U.S. Bureau of Labor Statistics inflation calculator.[5]

And, still along general lines, it can be observed that the airline could also expect a somewhat increased claim where the "bumped" passenger has (1) a round trip scheduled with (2) a return flight date showing an appreciable layover period. The formula set forth in 14 C.F.R.§ 250.5 ignores round-trip passengers, for it refers only to the ticket price to

"the Passenger's next Stopover, or if none, to the Passenger's final destination ...." It would appear that Continental does not distinguish flyers on a return or one-way ticket from passengers on the first portion of a round-trip a distinction which an airline could add to its priority "bumping" rules, which each airline establishes independently under C.F.R. § 250.3 notwithstanding that such a distinction might reduce costs and inconvenience flowing from disruption of ground arrangements for a round-trip customer.

A second element is that a "bumped" passenger is also often exposed to the problem of lost or delayed luggage, which typically is checked before a passenger is denied boarding privileges. Under 14 C.F.R. § 254.4, an airline may be liable for "provable direct or consequential damages" for lost, destroyed, or delayed baggage up to the amount of $2,800 per passenger for domestic flights (*see,* discussing applicable law for claim when amount was $1,250 per passenger, *Finestone v. Continental Airlines, Inc.,* 195 Misc 2d 795 [App. Term 2d Dept. 2003]).

Accordingly, taking together both regulations regarding the loss of the flight boarding privileges and the deprivation of baggage and totaling the dollar figures, a working current economic figure of roughly $4,019 would appear to be within the expectation of an airline per "bumped" passenger, subject to proof of higher or lower damages. Plaintiff's claim of $ 4,000 in damages clearly is inside this recognizable ballpark.

Against this background, the court can turn to a New York definition of cognizable damages. A starting point is the basic consideration that contract damages can be "general, thus requiring only that plaintiff prove that they flowed naturally from the breach, or ... special ... which, to be compensable, must have been foreseeable and within the contemplation of the parties at the time the contract was made" (*American List Corp. v. U.S. News and World Report, Inc.,* 75 NY2d 38, 41 [1989]; *accord, Pakistan Arts & Entertainment Corp. v. Pakistan International Airlines Corp.,* 232 AD2d 29 [2d Dept. 1997]). There are three identifiable ingredients of such damages.

First, as to out-of-pocket expenses flowing from the loss of passage, claimant testified that he was unable to recoup $ 1,360 of pre-paid expenses. This item falls within the class of traditionally recognized damages for "bumped" passengers. Had claimant arranged a substitute trip, other supplemental calculations might be required (*Wells v. Holiday Inns, Inc.,* 522 F.Supp. 1023, 1025 [D.C.Mo. 1981], involving "overbooking" at a hotel, offsetting savings against increased costs, as well as recognizing an allowance for typical expenses involved in a change of travel plans, such as telephone calls to family members).

Second, it is well settled that an award for inconvenience, delay and uncertainty is cognizable under New York law. Here, a father and teenage daughter were bumped on the outward leg of a week-long round trip during the holiday season to a resort location, leaving the claimant father subject to the immediate upset of being denied boarding in a public setting, and with resulting inconvenience continuing for some period of time

thereafter. Inconvenience damages represent compensation for normal reactions and are clearly distinguishable from, and definitively not a disguised award for, severe emotional distress as often pleaded in tort cases.[6]

Although the basis for inconvenience damages was not explored closely in the cases which awarded them to New York passengers, this type of award stems from a well settled exception to the "general rule [that] mental suffering resulting from a breach of contract is not a subject of compensation * * * * [which] does not obtain, however, as between a common carrier or an innkeeper and an insulted and abused passenger or guest, or the proprietor of a public resort and a patron publicly ejected" (*Boyce v. Greeley Sq. Hotel Co.,* 228 NY 106, 111 [1920], *see, Johnson v. Jamaica Hosp.,* 62 NY2d 523, 528 [1984], recognizing continued viability of exception on proper facts; *Lumauig v. Philippine Airlines,* 624 F.Supp. 238 [S.D.NY 1985], considering exception but finding emotional distress claim went beyond its scope; *see also, Pollock v. Holsa Corp.,* 98 AD2d 265, 266-267 [1st Dept. 1984], plaintiff's hotel room given to another, resulting in long drive at night to another location, court observing, "The 'physical discomfort' experienced by plaintiff as a result of this inconvenience is an item of damage that was within the contemplation of the parties"). This principle is appropriately applied when a license to use a public accommodation is withdrawn in the presence of others (*Aaron v. Ward,* 203 NY 351, 354 [1911], involving a bathhouse, exception applies where "[t]he action is for a breach of the defendant's contract, and not for a tortious expulsion"; *Morningstar v. Lafyette Hotel Co.,* 211 NY 465, 467 [1914], café expelled customer perceived to be "a chronic faultfinder"). On the record presented and the law, inconvenience damages of $1,000 are awarded.

Third, regarding the deprivation of use of the contents of checked baggage, this factor was also present and claimant testified that, had their baggage been made available, he would have arranged for a local substitute ski trip. This portion of the claim was unopposed in that the claimant testified, without protest or objection, that the baggage should have been removed from the flight (*see,* both cases awarding some damages for failure to remove baggage from a flight, *Cohen v. Varig Airlines [S.A. Empresa de Viacao Aerea Grandense], supra,* and *Kupferman v. Pakistan International Airlines,* 108 Misc 2d 485 [Civ. Ct. NY Co. 1981]).[7] Further, given that the father and daughter were scheduled for a week-long trip and that their baggage had already been taken from them, the airline was on notice at the time of "bumping" that special damages could arise (17 NY Jur. 2d Carriers § 367, *Special damages,* "special damages for loss of use of a piece of equipment ... are not recoverable absent evidence that the carrier knew or should have known that the owner would likely suffer the loss of use if equipment was not delivered as scheduled" or as would have been proper).

An allowance for the deprivation of use of the contents of the baggage is warranted, bearing in mind that "[m]oney damages are substitutional relief designed in theory 'to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract'" (*Freund v. Washington Square Press, Inc.,* 34 NY2d 379, 382 [1974], quoting 5 Corbin, Contracts, § 1002, pp.

31-32). As to valuation, as set forth in *Lake v. Dye,* 232 NY 209, 214 (1921), "the amount of the recovery ought not to be restricted by the price which could be realized by a sale in the market" but should consider the owner's "actual money loss, all the circumstances and conditions considered, resulting from his being deprived of the property, not including ... any sentimental or fanciful value he may ... place upon [the property]." The owner of the personal property may give testimony as to such value (N.Y.Jur.2d Damages § 87, *Personal articles; wearing apparel* [2005], "The owner of clothing or other personal item who is familiar with its quality and condition is credited with having some knowledge of its value and may give an estimate of its value without having to qualify as an expert"), and clearly may also testify regarding the anticipated use of the items checked.

Recognizing that 14 C.F.R. § 254.4 sets a limit of $2,800 per passenger on claims for lost, destroyed, or delayed baggage, the court awards $750 as rough compensation, giving consideration of a replacement rental value of the father's ski equipment and the replacement cost of purchase of winter sports wear at a non-luxurious quality for temporary use. Such an amount would have placed claimant in a position that he could have arranged a substitute local ski trip or day-trips for himself and his daughter, as he stated he would have done had he not already been subject to an out-of pocket loss over $1,000 by reason of defendant's conduct. Given that no such trips were arranged, the court will not attempt to fix a figure for the cost of anything more than adequate compensation for the deprivation of use of the checked materials.

As to the damages testimony, this court had its opportunity to "view the witnesses, hear the testimony and observe demeanor" (*People v. Bleakley,* 69 NY2d 490, 495 [1987]; see also, *Northern Westchester Professional Park Assocs. v. Town of Bedford,* 60 NY2d 492, 499 [1983], and *Hoover v. Durkee,* 212 AD2d 839, 841 [3rd Dept. 1995]). To the extent that there was a dispute as to the facts, the court found claimant credible and credits his version of the facts as true or that, given the explanation he received under pressing circumstances, he was left under the impression were true. It does appear that claimant was not given an offer of compensation in writing, as required by the federal regulations (14 C.F.R. § 250.9), and that the airline also failed to post the required information regarding its "bumping" policies (14 C.F.R. § 250.11).

Based on the foregoing, judgment shall enter for the total amount of $3,110.00, comprised of the three items as to which damages have been granted above, with interest from December 25, 2004, the date of the "bumping." The court determines that such award achieves substantial justice in this Small Claims matter (N.Y.C.C.A. § 1805 [a]). It is noted that plaintiff did not assert a claim on behalf of the minor daughter.

This decision constitutes the order of the court.

--------------

Notes:

1. Under 14 C.F.R.§ 250.5, a "bumped" passenger is entitled to compensation of $400 per passenger or a lower amount computed "at the rate of 200% of the sum of the value of the passenger's remaining flight

coupons up the Passenger's next Stopover, or if none, to the Passenger's final destination"; an identical text appears in the Continental Contract of Carriage as paragraph (4)(a). This compensation rule applies only if a passenger is actually "bumped" from the flight because of overbooking (24 C.F.R.§ 250.6; *see, Delta Air Lines, Inc. v. Black,* 116 S.W.3d 745, 46 Tex.Sup.Ct.J. 1147 [Sup. Ct. Tex. 2003], *cert. denied* 540 U.S. 1181 [2004], passenger not "bumped" who declined coach seat when first class seat not available, and *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 [5 Cir. 1989], *cert. denied sub nom. O'Carroll v. Chaparral Airlines, Inc.,* 490 U.S. 1106 [1989], intoxicated passengers removed from airplane not "bumped").

2. Claimant has raised claims under G.B.L. §§ 349 and 350. As to G.B.L. § 349, a claim for deceptive consumer practices is prohibited by statute where the airline has complied with federal requirements (G.B.L. § 349 [d], "In any such action it shall be a complete defense that the act or practice ... complies with the rules and regulations of, and the statutes administered by ... any official department, division, commission or agency of the United States"; *accord, Mendelson v. Trans World Airlines, Inc,* 120 Misc 2d 423, 424 [Sup. Ct. Queens Co. 1983]). As to G.B.L. § 350, which bars false advertising, this statute has been held inapplicable to airlines (*People by Abrams v. Trans World Airlines, Inc.,* 171 AD2d 76 [1st Dept. 1991]; *see also, Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 [1992], Texas consumer protection statute preempted by federal law). Even absent federal preemption, it has been observed that overbooking is such a well-known airline practice that it logically cannot serve as a basis for a claim of consumer fraud (*Lopez v. Eastern Airlines, Inc.,* 677 F.Supp. 181 [S.D.NY 1988, Sweet, J.]).

3. Preemption precludes punitive damage claims by "bumped" passengers (*West v. Northwest Airlines, Inc.,* 995 F.2d 148, 151 [9th Cir.1993], *cert. denied* 510 U.S. 1111 [1994]). Further, where, as here, the defendant's actions are permitted by statute and regulation, the airline has taken no action violating a "public right," which showing is necessary to support punitive damages liability (*Rocanova v. Eq. Life Assurance Soc. of the U.S.,* 83 NY2d 603, 613 [1994], punitive damages are awarded "not to remedy private wrongs but to vindicate public rights"; *see also, New York University v. Continental Ins. Co.,* 87 NY2d 308 [1995]).

4. There are a few additional opinions which can only be used to illustrate types of actual or potential damages which could be claimed, for they do not award damages under domestic departure provisions. Some deny relief on independent substantive grounds (*Delta Air Lines, Inc. v. Black, supra,* 116 S.W.3d at 748, Dallas husband and wife requested cost of chartering "private jet to and from Las Vegas at a cost of $13,150, which included the aircrew's expenses in Las Vegas for two days"; *Alam v. P.I.A.,* 1995 WL 17201349, * 1 [S.D.NY 1995, Lee, Magis.], *report adopted* 1995 WL 489709 [S.D.NY 1995], passenger sought cost of an alternate ticket, "'lodging, travel, loss of earnings, and sundry expenses' while his family was delayed"; *Sassouni v. Olympic Airways,* 769 F.Supp. 537 [S.D.NY 1991], emotional distress claimed because alternate international passage offered involved travel on a religious holiday). Two did not set forth the legal basis of liability (*Cenci v. Mall Airways, Inc.,* 140 Misc 2d 907 [City Ct. Albany 1988], partial refund of ticket price directed; *Musso v. Tourlite Intern., Inc.,* 131 Misc 2d 575 [Civ. Ct. NY Co. Small Claims 1986], damages awarded based upon cost of substitute airline tickets and rental car used for local transportation during delay period). Older "bumping" cases arising prior to the adoption of the current federal regulations such as *Karp v. North Central Air Lines, Inc.,* 583 F.2d 364 (7th Cir. 1978), and *Wills v. Trans World Airlines, Inc.,* 200 F.Supp. 360 (S.D.Cal.1961) are not considered here because of differences in both the available causes of action and the rules governing cognizable damages.

5. The inflation calculator appears on the Internet at http://data.bls.gov/cgi-bin/cpicalc.pl, (accessed Nov. 9, 2005), and is based upon adjustments to the Consumer Price Index ("CPI"), with the current year including CPI data for the most recent available month. The appropriateness of an inflation adjustment was noted by Elliott Blanchard, *Terminal 250: Federal Regulation of Airline Overbooking, supra,* 79 N.Y.U. L. Rev. at 1826.

6. A full-blown claim for emotional distress is not permitted for a contract-based claim (*Cohen v. Varig Airlines [S.A. Empresa de Viacao Aerea Grandense],* 62 AD2d 324 [1st Dept. 1978]; *Wehringer v. Standard Sec. Life Ins. Co. of New York,* 57 NY2d 757, 758 [1982], "absent a duty upon which liability can

be based, there is no right of recovery for mental distress resulting from the breach of a contract-related duty"; *Fleming v. Allstate Ins. Co.,* 106 AD2d 426 [2d Dept. 1984], *affd* 66 NY2d 838 [1985], *cert. denied* 475 U.S. 1096 [1986]; *accord, Crowley v. S. S. Arcadia,* 244 F.Supp. 597, 598 [D.C.Cal. 1964], involving claim by "bumped" cruise ship passenger, "contention that [passengers] are entitled to damages for mental suffering, in this action for breach of contract, is contrary to the great weight of authority" and citing *Southern Express Co. v. Byers,* 240 U.S. 612 [1916]; see *generally,* Gregory G. Sarno, Annotation, *Recoverability of Compensatory Damages for Mental Anguish or Emotional Distress for Breach of Service Contract,* 54 A.L.R.4th 901). Inconvenience damages, as available under state law, are not barred by the federal statute, regulations, or decisions (*see, Atherton v. F.D.I.C.,* 519 U.S. 213, 226-227 [1997], for a discussion of applying federal standards to a state law question). Such damages may be available for passengers of international flights (Shannon Clark Kief, Annotation, *Recovery for Emotional and Mental Injury under Warsaw Convention,* 196 A.L.R. Fed. 221, collecting decisions).


7. In this case, the airline did not argue that any contractual limitation of liability or principle of law limited or barred consideration of this claim. For a general reference as to this area of "baggage" law, see Stephen C. Fulton, *Airline Baggage Claims: A Tour Through the Legal Minefield,* 5 Fla. Int'l L.J. 349 (1990).