UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LILIJA PUMPUTIENA, on behalf of her minor child | ) | |
| NERINGA PUMPUTYTE, on behalf of themselves and all | ) | |
| others similarly situated, | ) | 16 C 4868 |
| | ) | |
| Plaintiffs, | ) | Judge Gary Feinerman |
| | ) | |
| vs. | ) | |
| | ) | |
| DEUTSCHE LUFTHANSA, AG, a foreign corporation, | ) | |
| and UNITED AIRLINES, INC., a domestic corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

Lilija Pumputiena brought this suit on behalf of herself, her minor child Neringa

Pumputyte, and four putative classes against Deutsche Lufthansa, AG and United Airlines, Inc.,

alleging breach of contract and violation of the Convention for the Unification of Certain Rules

for International Carriage by Air ("Montreal Convention") in connection with a June 2015 flight

from Chicago, Illinois to Brussels, Belgium, and ensuing travel from Brussels to Vilnius,

Lithuania. Doc. 7. Lufthansa moves to dismiss all claims against it, Doc. 15, while United

moves to dismiss or strike some of the claims against it, Doc. 8. Lufthansa's motion is granted,

and United's motion is granted in part and denied in part.

## Background

In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the

court assumes the truth of the operative complaint's well-pleaded factual allegations, though not

its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir.

2016). The court must also consider "documents attached to the complaint, documents that are

critical to the complaint and referred to in it, and information that is subject to proper judicial

notice," along with additional facts set forth in Pumputiena's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Pumputiena as those materials allow. *See Pierce v. Zoetis*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

On or about June 7, 2015, Pumputyte (as noted, Pumputiena's minor child) held tickets on United flight UA 8804 from Chicago to Brussels and then on a flight from Brussels to Vilnius. Doc. 7 at ¶ 2. The Chicago-to-Brussels flight was delayed, causing Pumputyte to arrive late in Brussels. *Id.* at ¶¶ 3-4. Although the Brussels-to-Vilnius flight had also been delayed, making it possible for Pumputyte to make that flight despite arriving late in Brussels, she was not allowed to board due to United's amending her travel itinerary. *Id.* at ¶ 5. She instead was scheduled on a different itinerary to Vilnius, consisting of Lufthansa flights from Brussels to Frankfurt and then from Frankfurt to Vilnius. *Id.* at ¶ 6. The Brussels-to-Frankfurt flight was Lufthansa flight LH 1015, which was cancelled. *Id.* at ¶ 9. Pumputyte was rescheduled again, and she landed in Vilnius ten hours after her originally scheduled arrival time. *Id.* at ¶ 10. During the delay, she spent approximately €200 on necessities. *Id.* at ¶ 12.

Pumputiena later served "Notices of Claims" on United and Lufthansa for damages allegedly caused by the delay. *Id.* at ¶ 13. After the notices did not result in payment, she filed this suit. *Id.* at ¶¶ 14-18. The complaint brings a claim against Lufthansa under Article 19 of the Montreal Convention (Count I); a claim against United under Article 19 (Count II); a claim against United "Pursuant to Article 19 of the Montreal Convention as Self-Imposed Voluntarily Assumed Contractual Duty" (Count III); a claim against United under Regulation No. 261/2004

("EU 261") of the European Parliament and European Counsel (Count IV); and a breach of

contract claim against United (Count V). *Id*. at ¶¶ 198-298. The EU 261 claim was dismissed

without prejudice by stipulation. Doc. 26.

     In addition, the complaint seeks to certify these four classes:

     1. All persons residing in the United States who: (1) had a confirmed
reservation on flight No. LH 1015 operated by Lufthansa on June 8, 2015
from Brussels to Frankfurt; (2) had a confirmed reservation on any
international flights between countries – signatories to the Montreal
Convention as operated by Lufthansa since June of 2015; (3) had such flight
delayed or cancelled for a reason other than extraordinary circumstances; (4)
were not adequately informed by Lufthansa of the delay or cancellation less
than seven days before the scheduled time of departure and were not offered
meaningful re-routing, allowing them to depart no more than one hour before
the scheduled time of departure and to reach their final destination less than
two hours after the scheduled time of arrival; (5) were affected by said delay
or cancellation for at least three hours; (6) had not received advance notice of
cancellation of Lufthansa flight No. 1015 as scheduled to depart from Brussels
to Vilnius on June 8, 2015; (7) had not received advance notice of cancellation
of any and all international flights operated by Lufthansa since June 8, 2015.
("The 1015 Class").

     2. All persons residing in the United States who: (1) had a confirmed
reservation on flight No. UA 8804 operated by United on June 7, 2015 from
Chicago to Brussels; (2) had a confirmed reservation on any international
flights between countries – signatories to the Montreal Convention as operated
by United since August of 2014; (3) had such flight delayed or cancelled for a
reason other than extraordinary circumstances; (4) were not adequately
informed by United of the delay or cancellation less than seven days before
the scheduled time of departure and were not offered meaningful re-routing,
allowing them to depart no more than one hour before the scheduled time of
departure and to reach their final destination less than two hours after the
scheduled time of arrival; (5) were affected by said delay or cancellation for at
least three hours; (6) did not received advance notice of cancellation of United
flight No. 8804 as scheduled to depart from Chicago, Illinois to Brussels on
June 7, 2015; (7) did not received advance notice of cancellation of any and
all international flights operated by United since August 24, 2014. ("The 8804
Class").

     3. All persons residing in the United States who: (1) had a confirmed
reservation on any international flight operated by Lufthansa to and from the
United States since June 8, 2015; (2) had such flight delayed or cancelled for a
reason other than extraordinary circumstances; (3) were affected by said delay

or cancellation for at least three hours; (4) were not provided by Lufthansa the compensation mandated by Articles 19 and 22(2) of Montreal Convention; and (5) were not provided by Lufthansa with compensation mandated by Articles 5, 9 and 14 of EU 261/2004. ("The General Lufthansa Class").

4. All persons residing in the United States who: (1) had a confirmed reservation on any international flight operated by United to and from the United States since June 7, 2015; (2) had such flight delayed or cancelled for a reason other than extraordinary circumstances; (3) were affected by said delay or cancellation for at least three hours; (4) were not provided by United with compensation of economic damages mandated by Articles 19 and 22(2) of Montreal Convention; and (5) were not provided by United with compensation mandated by Articles 5, 6, 9 and 14 of EU 261/2004. ("The General United Class").

*Id.* at ¶¶ 173-174 (slightly edited by the court).

## Discussion

## I.        Claim Against Lufthansa (Count I)

As noted, Pumputiena's sole claim against Lufthansa lies under Article 19 of the Montreal Convention.

### A.        Whether the Complaint Violates Rule 8(a)(2)

Lufthansa seeks dismissal under Civil Rule 8(a)(2), which requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief …." According to Lufthansa, Pumputiena's 75-page complaint is "incomprehensible" and "repeatedly quotes and references European case law, international law, and other items in a disjointed fashion, such that it is impossible to determine their legal significance." Doc. 16 at 7. In Lufthansa's view, the complaint is so poorly written that it "fails to give [Lufthansa] fair notice of what [Pumputiena's] claim is and the grounds upon which it rests." *Id.* at 8 (internal quotation marks omitted).

Although "[f]at in a complaint can be ignored," *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998), where excessive length "make[s] a complaint unintelligible, by scattering and

concealing in a morass of irrelevancies the few allegations that matter," dismissal is appropriate. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *see also Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (where "neither the adverse party nor the court can make out the essence of the claims dismissal of a complaint on the ground that it is unintelligible is unexceptionable"); *Srivastava v. Daniels*, 409 F. App'x 953, 955 (7th Cir. 2011) (affirming dismissal under Rule 8(a) where the "complaint's length and disjointed nature made it impossible for the district court to identify the specific allegations against each defendant and therefore impossible to determine whether any claims had potential merit"); *Griffin v. Milwaukee Cnty.*, 369 F. App'x 741, 743 (7th Cir. 2010) (same). That said, "a district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter." *Cincinnati Life Ins. Co.*, 722 F.3d at 946 (alteration omitted).

Here, Pumputiena's complaint is way too long, riddled with typographical and other errors, laced with irrelevant material, and poorly organized. However, it is sufficient to give notice of the contours of her claims, as demonstrated by Lufthansa's ability to identify those claims and make arguments in support of dismissal on the merits. A Rule 8(a) dismissal therefore is unjustified.

**B. Whether Lufthansa Is Liable Under Article 19 for the Cancellation of LH 1015**

On the merits, Lufthansa seeks dismissal on the ground that Pumputyte's delayed arrival in Vilnius was not caused by anything having to do with the cancellation of LH 1015. Doc. 16 at 5-6. In support, Lufthansa offers the declaration of Lawrence Mullins, its General Counsel, who avers that a Passenger Name Record ("PNR") shows that after the LH 1015 Brussels-to-Frankfurt flight was cancelled, Pumputyte was rebooked on LH 1017, which departed one hour later and arrived one hour and thirty-five minutes before the scheduled Frankfurt-to-Vilnius

flight was to depart.  Doc. 16-1 at ¶¶ 5, 9-12.  Mullins further avers that Pumputyte in fact made

the scheduled Frankfurt-to-Vilnius flight, and thus arrived in Vilnius precisely when her original

Lufthansa itinerary scheduled her to arrive.  *Id*. at 12.  In Lufthansa's view, it caused no delay in

Pumputyte's arrival in Vilnius; rather, the only consequence of cancelling LH 1015 was that

Pumputyte spent one extra hour in Brussels and one fewer hour in Frankfurt.

Pumputiena argues that the court may not consider the PNR and the Mullins declaration

because they fall outside the pleadings.  Doc. 29 at 9.  Lufthansa replies that the court may take

judicial notice of the PNR and the facts in the Mullins declaration.  Doc. 31 at 4-5.

Civil Rule 12(d) states: "If, on a motion under Rule 12(b)(6) … matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present

all the material that is pertinent to the motion."  There is a "narrow exception" to this rule for

facts subject to judicial notice.  *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008).

"Judicial notice merits the traditional caution it is given, and courts should strictly adhere to the

criteria [established] by the Federal Rules of Evidence before taking judicial notice of pertinent

facts."  *Ibid*. (internal quotation marks omitted).  Federal Rule of Evidence 201(b) allows a court

to take judicial notice of a fact that "is not subject to reasonable dispute because it: (1) is

generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

readily determined from sources whose accuracy cannot reasonably be questioned."

The PNR and the facts in the Mullins declaration do not meet these requirements.  The

facts set forth in those materials are not "generally known within" this court's jurisdiction.  And

although there may be little reason to doubt the PNR on its face, the court would be hard-pressed

to say that its accuracy "cannot reasonably be questioned."  It is possible that there were errors in

generating the PNR, or that for some other reason it does not accurately reflect Pumputyte's actual itinerary. So, because the court may not take judicial notice of the PNR and the facts in the Mullins declaration, it has two options: ignore those materials, or convert Lufthansa's motion to one for summary judgment. Because dismissal under Rule 12(b)(6) is warranted even putting aside those materials, the court will disregard them.

The complaint alleges that the United Chicago-to-Brussels flight (UA 8804) was delayed and that, as a result, Pumputyte arrived late in Brussels. The complaint further alleges that Lufthansa cancelled the Brussels-to-Frankfurt flight (LH 1015) on which Pumputyte was initially rebooked. Finally, the complaint alleges that Pumputyte arrived in Vilnius ten hours after her originally scheduled arrival time. The complaint does *not* allege, however, that the cancellation of LH 1015 actually caused her late arrival in Vilnius.

That omission is significant. Although the court can reasonably infer that the UA 8804 delay caused Pumputyte to arrive ten hours late in Vilnius, given that this delay led to her inability to take her originally scheduled Brussels-to-Vilnius flight, the same cannot be said of the LH 1015 cancellation. The complaint is silent as to what happened after LH 1015 was cancelled. Was Pumputyte rebooked on another flight and, if so, was it a direct flight to Vilnius or a connection via Frankfurt? If it was a direct flight to Vilnius, did it arrive more than ten hours after her originally scheduled arrival time, and if it was a connection via Frankfurt, did it cause her to miss the flight from Frankfurt to Vilnius? If LH 1015 had not been cancelled, would Pumputyte still have arrived "10 hours late of her pre-bargained and pre-planned arrival time"? The complaint sheds no light on these questions, so to find that it alleges an injury caused by Lufthansa's cancellation of LH 1015, the court would have to assume facts that the complaint does not allege.

The complaint's failure to allege that the cancellation of LH 1015 caused Pumputyte to suffer any injury beyond that already caused by the UA 8804 delay has consequences. Recall that Pumputiena's sole claim against Lufthansa arises under Article 19 of the Montreal Convention, which states:

> The carrier is liable for damage *occasioned by delay* in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures. (Emphasis added).

Given the facts alleged, and assuming that a cancellation (as opposed to a delay) is actionable under Article 19, *see Hebert v. Am. Airlines, Inc.*, 2016 WL 3517795, at *3 (E.D. La. June 27, 2016), the complaint does not state a viable Article 19 claim as to the LH 1015 cancellation.

As noted, the complaint does not allege facts allowing for a reasonable inference that the cancellation of LH 1015 caused Pumputyte to suffer any harm beyond that already caused by the UA 8804 delay. The complaint therefore does not plausibly allege, in the words of Article 19, that any damages incurred by Pumputyte were "occasioned by delay in the carriage by air of passengers, baggage or cargo" in connection with the LH 1015 cancellation. It follows that Pumputiena has no viable Article 19 claim against Lufthansa due to that cancellation. *See Mizyed v. Delta Airlines, Inc.*, 2012 WL 1672810 (E.D. La. May 14, 2012) (dismissing an Article 19 claim where the delay was caused not by the defendant airline, but by the plaintiff's refusal to pay a baggage fee, which ultimately resulted in his being refused boarding).

### C. Whether Lufthansa Is Liable for the Delay of UA 8804

As to whether Lufthansa may be held liable for the delay of UA 8804, Pumputiena contends that Lufthansa and United are "jointly and severally liable" under Article 40 of the Montreal Convention. Doc. 29 at 8-9. Article 40 states:

Case: 1:15-cv-04386 Document #: 38 Filed: 05/06/17 Page 9 of 21 PageID #:485

> If an actual carrier performs the whole or part of carriage which, according to the contract referred to in Article 39, is governed by this Convention, both the contracting carrier and the actual carrier shall, except as otherwise provided in this Chapter, be subject to the rules of this Convention, the former for the whole of the carriage contemplated in the contract, *the latter solely for the carriage which it performs*. (Emphasis added).

Article 39, in turn, provides that a "contracting carrier" is "a person [who] … as a principal makes a contract of carriage governed by this Convention with a passenger," which is then performed by "another person … referred to as 'the actual carrier ….'" Article 40 makes both the contracting carrier and actual carrier liable for delays; however, as the emphasized text makes clear, the actual carrier is liable only for the carriage that it performed.

The complaint does not allege that United and Lufthansa had the contractual relationship contemplated by Article 39. Given that her original itinerary consisted of two United flights, the strongest and perhaps only reasonable inference is that United was the contracting carrier and that, after UA 8804 was delayed, United enlisted Lufthansa as the actual carrier to take Pumputyte from Brussels to Vilnius. In any event, Pumputiena does not allege that Lufthansa was the contracting carrier. Under Article 40, then, Lufthansa could be held liable only for the cancellation of LH 1015, for that is the only carriage it performed, and not for the delay of UA 8804, which only United performed.

Lufthansa would not be liable for the UA 8804 delay even if it were characterized as a "successive" carrier under Article 36. Article 36 covers "carriage to be performed by various successive carriers," and states that "the passenger … can take action only against the carrier which performed the carriage during which the accident or the delay occurred, save in the case where, *by express agreement*, the first carrier has assumed liability for the whole journey" (emphasis added). The complaint does not allege an "express agreement" between United and Lufthansa. Even if it did, that allegation, if true, only would make United (the first carrier) liable

for any damage caused by the cancellation of LH 1015; it would not make Lufthansa (the successor carrier) liable for the delay of UA 8804.

### D. Putative Class Claims Against Lufthansa

Pumputiena seeks to certify two classes against Lufthansa: the 1015 Class, and the General Lufthansa Class. Because Pumputiena has no claim against Lufthansa, she cannot serve as a class representative, and because no class has been certified, dismissing the class claims against Lufthansa is appropriate. *See Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 538 (7th Cir. 2011) ("It takes a representative with a live claim to carry on with a class action."); *Shipp v. Memphis Area Office, Tenn. Dept. of Employment Sec.*, 581 F.2d 1167, 1172-73 (6th Cir. 1978) ("This complaint must be dismissed as to the purported class … because the named plaintiff is not an appropriate class representative within the meaning of Rule 23(a), his individual claim having been dismissed form this action prior to any certification.").

## II. Claims Against United (Counts II-V)

United moves to dismiss the Article 19 voluntary assumption claim (Count III) as duplicative of Pumputiena's straight-up Article 19 claim (Count II), moves to strike any damage claim seeking reimbursement of the cost of airfare, and moves to strike the putative class claims. (Although United moves to "dismiss" that damage claim and the putative class claims, because it does not move to dismiss all of Pumputiena's claims against it, the court construes that part of the motion as a motion to strike under Civil Rule 12(f).)

### A. Whether Count III Is Duplicative of Count II

Duplicative claims are subject to dismissal. *See Lansing v. Carroll*, 2012 WL 4759241, *1 (N.D. Ill. Oct. 5, 2012); *Van Vliet v. Cole Taylor Bank*, 2011 WL 148059, *2 (N.D. Ill. Jan. 18, 2011). Although dismissing a duplicative claim has no substantive impact—after all, a

plaintiff generally can recover only once for any particular injury, no matter how many claims or counts concerning that injury are alleged—the complaint here is so verbose that eliminating duplication would have some benefit.

Count II is styled as "Class Action Claim for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19 of the Montreal Convention." Doc. 7 at 51. Count III is styled as "Class Action Claim for Damages Caused by Delay or Cancellation of International Airfare Pursuant to Article 19 of the Montreal Convention as Self-Imposed Voluntarily Assumed Contractual Duty Incorporated into par. 14 of Defendant's 'General Conditions of Carriage' Dated May 2014." *Id.* at 57. The theory behind Count III is that United, in addition to being liable under Article 19, has, by virtue of its contract of carriage with Pumputyte, voluntarily imposed on itself an additional layer of liability. That theory is meritless.

Count III alleges that United's liability comes "pursuant to its voluntarily assumed and self-imposed contractual duty to compensate passengers in for damages *in accordance with Articles 19 and 22 of the Montreal Convention* …." *Id.* at ¶ 244 (emphasis added). Neither the complaint nor Pumputiena's brief explain how the duty to provide compensation for delays under the Montreal Convention is a "voluntary" or "self-imposed" obligation. The obligation, rather, stems from a treaty, which is "the supreme law of the land …." U.S. Const. art. VI. By operating in jurisdictions where that treaty is law, United is bound by it regardless of any contractual provisions. Alleging that United has "voluntarily" agreed to liability under the Convention and that such liability is "self-imposed" is to say that an individual can "voluntarily" agree to impose governing laws upon herself, and that, as a result, she can be liable both for breaking the law *and* for breaking his voluntary agreement to impose it upon herself. That would be nonsensical in any other context, and it is nonsensical here.

11

Another reason to find Count III duplicative of Count II derives from the contract of carriage itself. As the complaint notes, the contract expressly states that it is subject to the Montreal Convention, and that "[a]ny provision of [the contract] that [is] inconsistent with any provision of the applicable Convention shall, to that extent, but only to that extent, be inapplicable to International Carriage." Doc. 7 at ¶ 250. The complaint goes on to quote those additional sections of the contract:

> C) The Carrier shall be liable for damage occasioned by delay in the carriage of passengers by air, as provided in the following paragraphs:
>
> 1) The Carrier shall not be liable if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage, or that it was impossible for it or them to take such measures.
>
> 2) Damages occasioned by delay are subject to the terms, limitations and defenses set forth in the Warsaw Convention and the Montreal Convention, whichever may apply, in addition to any limitation or defense recognized by a court with proper jurisdiction over a claim.

*Id*. at ¶ 251. This contractual language is identical to that of Article 19. By mirroring the language of Article 19 and expressly adopting its terms, limitations, and defenses, the contract ensures that United's contractual liability, if any, is coextensive with that imposed by the Montreal Convention, thus rendering the counts duplicative.

Pumputiena next argues that "Count Three is asserting the cause of action for breach of contractual duty to compensate arising from defendant's failure to resolve this matter via pre-suit settlement which was conducted prior to filing of this action pursuant to Article 22(6) of the Montreal Convention." Doc. 27 at 18. This argument is meritless. Neither the complaint nor Pumputiena's brief identify any part of the contract that creates a freestanding right to have these kinds of disputes resolved through pre-suit settlement. Thus, Lufthansa's failure to enter into a pre-suit settlement did not breach the contract. To the extent that Pumputiena believes that Article 22(6) creates such a right, she is mistaken. Article 22(6) reads:

> The limits prescribed in Article 21 and in this Article shall not prevent the
> court from awarding, in accordance with its own law, in addition, the whole or
> part of the court costs and of the other expenses of the litigation incurred by
> the plaintiff, including interest. The foregoing provision shall not apply if the
> amount of the damages awarded, excluding court costs and other expenses of
> the litigation, does not exceed the sum which the carrier has offered in writing
> to the plaintiff within a period of six months from the date of the occurrence
> causing the damage, or before the commencement of the action, if that is later.

This provision is designed to *encourage* settlement by exempting litigation-related attorney fees and expenses allowed under domestic law from the Montreal Convention's damage ceilings, except where the airline's offer of judgment exceeds the plaintiff's ultimate recovery, but it does not *require* the airline to offer a settlement or even to negotiate in good faith. Thus, while United's failure to make a settlement offer could possibly expose it to liability for Pumputiena's attorney fees and costs in the event domestic law allows their recovery, it does not by itself constitute a breach of contract.

In sum, because Count III is duplicative of Count II, it is dismissed.

**B.  Claims to Recover the Cost of Airfare**

United also moves to strike Pumputiena's damages request to the extent it seeks to recover the cost of airfare. Doc. 8 at 7. Pumputiena's response is this: "Finally, United is arguing that plaintiffs are not entitled to cost of their airfare. This argument is misleading because the plaintiffs are not claiming refund for costs of their airfare per s[e]. The plaintiffs are only suggesting that cost of airfare which is similar to all passengers can form the basis for class action certification. … [T]his issue is premature on defendant's Rule 12(b)(6) motion." Doc. 27 at 19. Because Pumputiena disclaims seeking her airfare, the complaint's request for such damages is stricken. If and when Pumputiena seeks to certify a class, the court will consider whether the fact that all putative class members paid for their airfare bears on class certification.

### C.     Putative Class Claims Against United

United argues that Pumputiena's class claims against it are facially inappropriate and therefore that they should be stricken.  Doc. 8 at 4-6.  United is correct as to the General United Class, but wrong as to the 8804 Class.

Pumputiena incorrectly argues that a motion to strike class allegations is premature on the pleadings.  Civil Rule 23(c)(1)(A) states: "At an early practicable time after a person sues … as a class representative, the court must determine by order whether to certify the action as a class action."  The Rule's text plainly indicates that the court may reject a plaintiff's attempt to represent a class as soon as it becomes obvious that she will be unable to satisfy Rule 23.  Most often it will not be "practicable" for the court to do that at the pleading stage, but sometimes the complaint will make it clear that class certification is inappropriate.  The Supreme Court has recognized as much, holding that "[s]ometimes the issues are plain enough from the pleadings" to determine threshold questions of certifiability.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  As the Sixth Circuit explained:

> The plaintiffs' other objection to the district court's class-action ruling goes to the timing, not the substance, of it.  Given more time and more discovery, they say, they would have been able to poke holes in the court's class-certification analysis.  We think not.

> That the motion to strike came before the plaintiffs had filed a motion to certify the class does not by itself make the court's decision reversibly premature.  Rule 23(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time" in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs.  As a result, "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."  7AA Charles [Alan] Wright et al., *Federal Practice and Procedure* § 1785; *see also*, *e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941-44 (9th Cir. 2009); *Cook County College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 884-85 (7th Cir. 1972).

*Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (first two alterations in original).

The Seventh Circuit case cited by *Pilgrim*, *Cook County College Teachers Union, Local 1600 v. Byrd*, *supra*, held that "[o]ne opposing a class action may move for an order determining that the action may not be maintained as a class suit." 456 F.2d at 885. More recently, in *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557 (7th Cir. 2011), the Seventh Circuit cited Rule 23(c)(1)(A) for the proposition that "a court may deny class certification even before the plaintiff files a motion requesting certification" and "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination." *Id.* at 563. Given this, and given that the court would find *Pilgrim* persuasive even absent *Cook County College Teachers Union* and *Kasalo*, a ruling on class certification is appropriate at the pleading stage where the pleadings make clear that Rule 23 cannot be satisfied. *See Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 830 (N.D. Ill. 2013); Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3:4 (2012) ("[M]otions to strike should not be the norm, but are appropriate when the unsuitability of class treatment is evident on the face of the complaint ….").

Pumputiena seeks to certify two classes against United. The 8804 Class consists of passengers booked on UA 8804 (the delayed Chicago-to-Brussels flight on which Pumputyte flew). The General United Class consists of passengers on *any* international United flight since June 8, 2015, who suffered delays under certain conditions. The principal issues here concern Rule 23(a)(2) commonality and Rule 23(b)(3) predominance.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotation marks omitted), and that their "claims 'depend upon a common contention … of such a

nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke.'" *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550 (7th Cir. 2016) (quoting *Dukes*,

564 U.S. at 350); *see also Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d

426, 434 (7th Cir. 2015) (same). "[F]or purposes of Rule 23(a)(2) even a single common

question will do." *Dukes*, 564 U.S. at 359 (alterations and internal quotation marks omitted); *see*

*also Phillips*, 828 F.3d at 550 (same). However, because "any competently crafted class

complaint literally raises common questions," the true test of commonality is not the mere

existence of such a question, but "rather the capacity of a classwide proceeding to generate

common *answers* apt to drive the resolution of the litigation." *Dukes*, 546 U.S. at 349-50

(internal quotation marks omitted).

    A class satisfies the predominance requirement of Rule 23(b)(3) if "the questions of law

or fact common to class members predominate over any questions affecting only individual

members …." Fed. R. Civ. P. 23(b)(3). "Analysis of predominance under Rule 23(b)(3) 'begins

… with the elements of the underlying cause of action.'" *Messner v. Northshore Univ. Health*

*Sys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563

U.S. 804, 809 (2011)). As Justice Ginsburg explained:

> To gain class-action certification under Rule 23(b)(3), the named plaintiff
> must demonstrate, and the District Court must find, that the questions of law
> or fact common to class members predominate over any questions affecting
> only individual members. This predominance requirement is meant to test
> whether proposed classes are sufficiently cohesive to warrant adjudication by
> representation, but it scarcely demands commonality as to all questions. In
> particular, when adjudication of questions of liability common to the class will
> achieve economies of time and expense, the predominance standard is
> generally satisfied even if damages are not provable in the aggregate.

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1436-37 (2013) (Ginsburg, J, dissenting)

(alterations, citations, and internal quotation marks omitted).

While similar to commonality, predominance is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Predominance is not satisfied where liability determinations are individual and fact-intensive, *see Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011), and "[m]ere assertion by class counsel that common issues predominate is not enough." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (emphasis omitted). Predominance fails where "affirmative defenses will require a person-by-person evaluation of conduct to determine whether [a defense] precludes individual recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd*, 256 F. App'x 818 (7th Cir. 2007); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not necessarily defeat class certification, it is equally well established that courts must consider potential defenses in assessing the predominance requirement.") (emphasis and citations omitted). Additionally, while common questions "need not be dispositive of the litigation," *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995), the issues that form the basis of a predominance finding as a general rule should be "central." *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778, at 123 (3d ed. 2005).

United argues that class claims under the Montreal Convention are inappropriate because "the liability determination for each passenger under the Montreal Convention is fraught with individualized issues." Doc. 8 at 4. Specifically, United points to the portion of Article 19 providing that "the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures." Citing this language,

*Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222 (S.D.N.Y. July 27, 2015), held that

Article 19 requires "a passenger-specific inquiry into the reasonableness of [an airline's]

accommodations in light of each passenger's individual circumstances and needs." *Id.* at *6.

That may be true in most instances, but perhaps not all. With respect to a single flight, the

reasonableness of an airline's efforts to avoid damage from a delay could *possibly* be the same as

to all passengers on that flight—for example, if all passengers were connecting to the same flight

and all rebooked on the same alternative flight. That said, it is impossible to imagine that the

reasonableness of an airline's efforts could be the same for the hundreds or thousands of delayed

flights that occur in any given year. That all passengers on those flights suffered delay is

insufficient, because as Article 19's text makes clear, liability turns not on the fact of a delay, but

on the reasonableness of the airlines attempts to mitigate damage caused by that delay.

The complaint alleges the following common questions as to both proposed classes:

a) Whether United … is required to pay compensation for economic damages
to the members of both Classes pursuant to [A]rt[icle] 19 of the Montreal
Convention;

b) Whether United … is continually engaged in sabotaging of remedies
available to members of both Classes in accordance with Article 19 of the
Montreal Convention;

c) Whether United … is required to pay compensation to the members of both
Classes pursuant to Article[s] 5, 9 and 14 of … EU 261 as self imposed and
self assumed contractual duties;

d) Whether United … is continually engaged in sabotaging of remedies
available to members of both Classes in accordance with Article[s] 5, 9 and 14
of … EU 261 as self imposed and self assumed contractual duties;

e) Whether the "extraordinary circumstances" exception only applies in
certain circumstances where the airline can prove that the cancellation or
delay was caused by (i) political instability, (ii) meteorological conditions
incompatible with the operation of the flight concerned, (ii[i]) security risks,
(i[v]) technical or mechanical problems where it was "revealed by the
manufacturer of the aircraft compromising the fleet of the air carrier
concerned, or by competent authority, that those aircraft, although already in

service, are affected by a hidden manufacturing defect which impinges on the flight safety" or where there was "damage to aircraft caused by acts of sabotage" or (v) strikes that affect the operation of an operating aircraft;

f) Whether United … failed to compensate members of both Classes by erroneously raising defenses of extraordinary circumstances";

g) Whether [the] defense of extraordinary circumstances is a valid defense in an action for breach of contract of voluntary undertaking;

h) Whether United … failed to compensate the Class Members in the amounts specified in Article[s] 5, 9 and 14 of … EU 261 as self imposed and self assumed contractual duty.

Doc. 7 at ¶¶ 185. Questions (c), (d), and (h) are no longer relevant, as the EU 261 claims have been dismissed. Doc. 26. The same holds for questions (e)-(g), as "extraordinary circumstances" is an affirmative defense for delay claims under EU 261, *see* EU 261/2004 Art. 5 ¶ 3, but not under the Montreal Convention.

That leaves questions (a) and (b). Question (a) asks whether "economic damages" are available under Article 19, while question (b) asks whether United "is continually engaged in sabotaging of remedies available to members of both Classes in accordance with Article 19 of the Montreal Convention." Even assuming that those question could yield common answers under Rule 23(a)(2), the issue remains whether they, together with any other common questions, could possibly predominate over individual issues under Rule 23(b)(3).

The answer is yes as to the 8804 Class and no as to the General United Class. The question that is "apt to drive the resolution of the litigation," *Dukes*, 564 U.S. at 350, is whether United, as Article 19 states, "took all measures that could reasonably be required to avoid the damage or that it was impossible for it … to take such measures." If so, then United is not liable under Article 19, and if not, then United likely is liable under Article 19. As discussed above, that question might *possibly* be answered on a flight-by-flight basis, but not across the hundreds or thousands of delayed flights since June 2015. It follows that the General United Class could

not possibly be certified, meaning that it is appropriate to strike those class allegations at the pleading stage. *See Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) ("If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations."); *Pilgrim*, 660 F.3d at 949 (affirming the grant of a motion to strike class allegations filed at the pleading stage). It is not possible at this point to determine whether the 8804 Class, limited as it is to the passengers on a single flight, could be certified, so the motion to strike is denied as to that putative class.

The class claims are stricken not only as to the Montreal Convention claim in Count II, but as to the contract claim in Count V. It is difficult to tell whether Count V alleges anything more than Count III; it refers to "voluntarily assumed" contractual duties while acknowledging that the contract of carriage is subject to and consistent with the Montreal Convention. Doc. 7 at ¶¶ 282, 284-87. That said, United did not move to dismiss Count V as duplicative or on any other ground, so the court will not dismiss it.

However, the terms of the contract itself render class treatment inappropriate. As the complaint notes, the contract states that "[t]he Carrier shall not be liable if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage, or that it was impossible for them to take such measures." *Id*. at ¶ 285. This language mirrors that of Article 19, and creates the same predominance problem that led the court to strike the General United Class claims as to Article 19. Thus, even assuming that Count V alleges a contract claim distinct from the Article 19 claim in Count II, that claim is not amenable to class treatment for purposes of the putative General United Class.

## Conclusion

Lufthansa's motion to dismiss Count I is granted. The dismissal of Count I is without prejudice to Pumputiena filing an amended complaint stating a viable claim against Lufthansa. Pumputiena has until January 27, 2017 to file an amended complaint; if she does not do so, the dismissal of Lufthansa will convert automatically to a dismissal with prejudice. United's motion to dismiss Count III is granted. Count III is dismissed, and the dismissal is with prejudice because its flaw (being duplicative of Count II) cannot be cured by amendment. United's motion to strike Pumputiena's damage claim insofar as it seeks to recover the cost of airfare is granted. The striking of that aspect of the damage claim is with prejudice because Pumputiena has disclaimed seeking her airfare as an aspect of damages. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007); *Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, *6 (N.D. Ill. July 31, 2012). United's motion to strike class allegations is granted as to the General United Class and denied as to the 8804 Class. Because the flaws with the General United Class cannot be cured with repleading, the striking is with prejudice.

If Pumputiena files an amended complaint by January 27, 2017, Defendants shall answer the portions of the amended complaint that survived dismissal and answer or otherwise plead to the new or amended portions by February 17, 2017. If Pumputiena does not file an amended complaint, United shall answer the surviving portions of the complaint by February 3, 2017.

January 6, 2017

_____
United States District Judge