**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILYA and RIMMA TARKOV, | ) | |
| | ) | Case No.: 1:15-cv-03430 |
| Plaintiffs, | ) | |
| | ) | Honorable John J. Tharp, Jr. |
| v. | ) | |
| | ) | Honorable Young B. Kim |
| FRONTIER AIRLINES, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT FRONTIER AIRLINES, INC.'S LOCAL RULE 56.1 STATEMENT OF
FACTS IN SUPPORT OF ITS MOTION  FOR SUMMARY JUDGMENT**

Defendant Frontier Airlines, Inc. ("Frontier"), for its Statement of Facts in Support of its

Motion for Summary Judgment, pursuant to Local Rule 56.1, states as follows:

**NATURE OF THE CASE**

1.      On January 12, 2016, Plaintiffs Ilya and Rimma Tarkov ("Plaintiffs") and Olena,

Leonid and Nicole Adler ("Adler Plaintiffs") filed a fourth amended complaint against Frontier

pursuant to Article 19 of the Montreal Convention. (Doc. 21)  On February 22, 2016, Frontier

filed a motion to dismiss, asserting that (1) all non-economic damages claims should be

dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted, and (2) the Adler Plaintiffs' claims should be dismissed or severed

pursuant to Federal Rule of Civil Procedure 21. (Doc. 24)

2.      On May 19, 2017, the Court dismissed with prejudice all non-economic damages

claims, and severed the Adler Plaintiffs' claims. (Doc. 51)  On July 5, 2017, Plaintiffs filed a

fifth amended complaint ("Complaint") against Frontier pursuant to Article 19 of the Montreal

Convention. Counts I and II of the Complaint include individual and putative class action claims. (*See* Complaint at ¶¶ 102-157, attached as Ex. A; Doc. 69)

3. In Count I of the Complaint, pursuant to Article 19 of the Montreal Convention, Plaintiffs seek delay damages on their own behalf, and also on behalf of a putative class of plaintiffs, relating to the cancellation of Frontier flight 41, Punta Cana to Chicago on March 28, 2015 (hereinafter "Punta Cana-Chicago Flight"). (Complaint at ¶¶ 102-129)

4. In Count II of the Complaint, pursuant to Article 19 of the Montreal Convention, Plaintiffs seek delay damages on their own behalf, and also on behalf of a putative class of plaintiffs, relating to an alleged cancellation of Frontier flight 40, O'Hare International Airport, Chicago, Illinois ("O'Hare") to Punta Cana Airport, Punta Cana, Dominican Republic ("Punta Cana") on March 21, 2015 (hereinafter "Chicago-Punta Cana Flight"). *Id.* at ¶¶130-157. In the Complaint, Plaintiffs allege that their flight was canceled, and they had to wait 24 hours before departing to Punta Cana. *Id.* at ¶¶ 136-141.

## PARTIES

5. Frontier is a corporation organized and existing under the laws of the State of Colorado, with a principal place of business located in Denver, Illinois. *Id.* at ¶ 48.

6. Plaintiffs are residents of the State of Illinois residing in Deerfield, Illinois. *Id.* at ¶ 47.

## FACTS

7. On March 21, 2015, Plaintiffs were scheduled passengers on Frontier flight 40, Chicago (O'Hare) to Punta Cana (hereinafter "Chicago-Punta Cana Flight"). (See Frontier Affidavit ("Frontier Aff") at ¶ 5, attached as Ex. B)

8.    On March 21, 2015, the Chicago-Punta Cana Flight was scheduled to depart from O'Hare at 10:00 a.m. local time for Punta Cana, where it was scheduled to arrive at 3:30 p.m. local time. *Id.* at ¶ 6.

9.    The Chicago-Punta Cana Flight departed from O'Hare on March 21, 2015 at 10:01 a.m. The Chicago-Punta Cana Flight successfully arrived in Punta Cana on March 21, 2015 at 3:12 p.m., eighteen (18) minutes ahead of schedule. *Id* at ¶ 7.

10.    On March 28, 2015, Plaintiffs were scheduled passengers on Frontier flight 41, Punta Cana to Chicago (hereinafter "Punta Cana-Chicago Flight"). *Id.* at ¶ 8.

11.    On March 28, 2015, the Punta Cana-Chicago Flight was scheduled to depart from Punta Cana at 4:25 p.m. local time for Chicago, where it was scheduled to arrive at 8:36 p.m. local time. *Id.* at ¶ 9.

12.    The Punta Cana-Chicago Flight was cancelled on March 28, 2015 due to a radar outage at the Punta Cana Airport. The cancellation was categorized as an "uncontrollable" event. *Id.* at ¶ 10*; see* Frontier's Answer to Interrogatories at ¶ 1, attached as Ex. C.

13.    Radar is essential for the safe control of air traffic into and out of Punta Cana. (Frontier Aff at ¶¶ 11, 13, 15)

14.    Because of the radar outage at the Punta Cana Airport, it was impossible for Frontier to operate the Punta Cana-Chicago Flight on March 28, 2015.  Frontier was required by law to cancel the Punta Cana-Chicago Flight on March 28, 2015.  No other carriers could fly in or out of Punta Cana Airport on March 28, 2015. *Id.*

15.    Operation of the radar system at the Punta Cana Airport was not within the control of Frontier.  *Id.* at ¶ 14.

16.     Because the Punta Cana-Chicago Flight on March 28, 2015 could not operate without the Punta Cana Airport's radar system being operational, it was impossible for Frontier to avoid the cancellation of the Punta Cana-Chicago Flight. *Id.* at ¶¶ 11, 13, 15.

17.     After Frontier was forced to cancel the Punta Cana-Chicago Flight on March 28, 2015, Frontier booked Plaintiffs on the next available flight to Chicago. *Id.* at ¶¶ 12, 13.

18.     Passengers scheduled on the Punta Cana-Chicago Flight, including Plaintiffs, were booked on a replacement flight – Frontier flight 2041 – scheduled to depart Punta Cana the following day - March 29, 2015. *Id.* at ¶ 12.

19.     On March 29, 2015, the replacement flight departed as soon as the radar system was operational.  Frontier took all reasonable measures to ensure that the replacement flight promptly departed as soon as ATC gave it permission to depart. *Id.* at ¶ 16.

20.     In their Complaint, Plaintiffs allege they suffered "delay damages" consisting of expenses for the purchase of meals, telecommunication services, medication, taxi services, hotel accommodation, and the symphony. (See Complaint at ¶¶ 12, 13) They also claim that Plaintiff Rimma Tarkov suffered lost earnings as a result of the cancellation of the Punta Cana-Chicago Flight on March 28, 2015. *Id*. In their answers to interrogatories, Plaintiffs stated that they incurred the following expenses: $**1,115** for "per diem, food, refreshments, medication, transportation, and telecommunication services;" **$20** for a taxi expense on March 29, 2015 in Punta Cana, and **$80** for a taxi from O'Hare to their residence on March 29, 2015; and "**$600** for lost pre-paid symphony tickets for theatrical performance scheduled for the evening of March 29, 2015."  They also claim **$400** in lost earnings and **$400** in lost overtime. Plaintiffs answered that they have no documents to support their damages. *Id.* at p. 4. Plaintiffs' Answers to Frontier's Interrogatories ("Plaintiff's Rog Answers") at p. 3, attached as Ex. D)

4

21.     Plaintiff Ilya Tarkov testified that they arrived in Punta Cana on March 21, 2015. He did not remember at what time they arrived in Punta Cana. (Plaintiff Ilya Tarkov's Deposition at 57:24-59:24, attached as Ex. E)

22.     Plaintiff Ilya Tarkov testified that they did not incur any expenses relating to the March 21, 2015 flight, except for the purchase of food on the flight and a taxi when they arrived in Punta Cana. *Id.* at 67:9-68:15. He did not remember how much the food or taxi cost. *Id.* He testified that he had no receipts or other documents to show how much he paid for these expenses. *Id.*

23.     Plaintiff Ilya testified that he missed his bus when he arrived in Punta Cana. *Id.* at 58:14-18.

24.     Plaintiff Ilya Tarkov testified that they stayed with his daughter during their stay in Punta Cana, who had rented a house. *Id.* at 58:14-59:4.

25.     Plaintiff Ilya Tarkov testified that as a result of the March 28th cancellation of their flight, they incurred expenses for one night at a hotel, a few meals, medication, snacks, water, and taxi fare in Punta Cana. *Id.* at 22:14-30:3; 42:19-44:13; 45:20-23; 62:22-64:3. He did not remember how much they spent on these items. *Id.* He said that "we go in the restaurant ..., and then we go for lunch and then we go for dinner. We buy water, we bought snacks. I don't know. Maybe $200, $250. I don't know. This is very hard to tell. It's a long time ago. *Id.* at 62:22-64:3.

26.     Plaintiff Ilya Tarkov testified that meals were included in the cost of the hotel. *Id.* at 63:5-11.

27.     Plaintiff Ilya Tarkov testified that he made calls but does not remember what the cost was for those calls. *Id.* at 38:2-39:13.

28.     Plaintiff Ilya Tarkov testified that all expenses paid in cash came from his Chase savings or checking accounts. *Id.* at 14:13-16:7; 43:23-45:13. Plaintiff testified that during the delay, he paid for some items with his Chase credit card. *Id.* at 15:15-16:7; 27:14-19.

29.     Plaintiff Ilya Tarkov testified that he had no receipts or other documents to show how much he paid for their expenses relating to the March 28, 2015 cancelation. *Id.* at 25:7-27:11; 34:8-41:8.

30.     Plaintiff Ilya Tarkov testified that he made all the purchases relating to the March 28, 2015 cancelation. His wife, Rimma Tarkov, never paid for anything. *Id.* at 48:1-11.

31.     Plaintiff Rimma Tarkov testified that they arrived in Punta Cana on March 21, 2015. She did not remember at what time they arrived in Punta Cana. (Plaintiff Rimma Tarkov's Deposition at 52:5-23, attached as Ex. F)

32.     Plaintiff Rimma Tarkov testified that she could not recall if they incurred expenses relating to the March 21, 2015 flight. *Id.* She testified that he had no receipts or other documents to show they incurred expenses. *Id.*

33.     Plaintiff Rimma Tarkov testified that her daughter sent a car to pick them up at the Punta Cana Airport on March 21, 2015. *Id.*

34.     Plaintiff Rimma Tarkov testified that as a result of the March 28th cancellation of their flight, Apple Vacations set them up in a hotel. *Id.* at 16:4-15.

35.     Plaintiff Rimma Tarkov testified that as a result of the March 28th cancellation of their flight, they paid $115 per person ($230 total) for one night at a hotel. They also paid $70 total for two taxi rides – one to the hotel and one to the airport. *Id.* at 33:1-6.

6

36.     Plaintiff Rimma Tarkov testified that she cannot remember what purchases were made regarding food after the March 28th cancelation, and she had no idea what the cost was for any such purchases. *Id.* at 22:21-23:9; 36:8-10; 51:15-22.

37.     Plaintiff Rimma Tarkov testified that she cannot remember what expenses they had other than hotel, taxi, food, beverages and medication. *Id.* at 23:10-24:1; 31:17-32:5; 51:15-22.   As for these expenses, she did not recall any specific costs for these items. *Id.*

38.     Plaintiff Rimma Tarkov testified that they texted her daughter after the March 28th cancelation. She did not know if there was a cost involved. 34:19-36:7.

39.     Plaintiff Rimma Tarkov testified that he had no receipts or other documents to show how much her husband paid for their expenses relating to the March 28, 2015 cancelation. *Id.* at 20:1-24:20; 34:19-37:24.

40.     Plaintiff Rimma Tarkov testified that she did not know that Frontier had asked that Plaintiffs produce receipts or other documents relating to the expenses they allegedly incurred as a result of the March 28, 2015 cancelation. *Id.* at 20:1-21:4.

41.     Plaintiff Rimma Tarkov testified that her husband, Ilya Tarkov, made all the purchases relating to the March 28, 2015 cancelation.  She never paid for anything, and she did not remember what anything cost. *Id.* at 16:19-23.

42.     Plaintiffs were reimbursed by AIG Travel Insurance in the amount of $235 relating to the March 28, 2015 cancellation. (*See* Maye Affidavit ("Maye Aff") at ¶ 2, attached as Ex. G)

43.     Plaintiffs were reimbursed by Apple Vacations in the amount of $150 relating to the March 28, 2015 cancellation. (Maye Affidavit at ¶ 3; Plaintiff Ilya Tarkov Deposition at

51:11-17) Plaintiffs have used the vouchers issued to them. (Plaintiff Ilya Tarkov Deposition at 51:11-17)

44.     Plaintiff Rimma Tarkov testified that she did not review her interrogatory answers before signing the verification. *Id.* at 24:21-25:14.

45.     Plaintiff Rimma Tarkov testified that she did not recall missing any work relating to the March 28, 2015 cancelation. *Id.* at 46:23-51:1.

46.     On July 10, 2017, the Court granted Frontier's motion to compel and ordered Plaintiffs' counsel to produce cell phone statements, bank account statements, and employment records. The Court also ordered Plaintiffs' counsel to provide signed authorizations for cell phone records, bank records, and employment records. (Maye Affidavit at ¶ 4)

47.     To date, Plaintiffs have not produced any cell phone, bank, credit card or employment records, or authorizations for such records, all of which were court ordered. *Id.* at 5.

48.     On July 17, 2017, the Court ordered Plaintiffs to pay $1,040 by August 15, 2017 as a sanction pursuant to Rule 37(a)(5) relating to Frontier's motion to compel. *Id.* at 6.

49.     To date, Plaintiffs have not made payment of $1,040 to Frontier. *Id.* at 7.

50.     To date, Plaintiffs have not provided a computation of damages pursuant to Rule 26. *Id.* at 8.

51.     To date, Plaintiffs have not provided any receipts or documents to support their alleged expenses. *Id.* at 9.

52.     Plaintiffs responded in their answers to interrogatories that documents to support their damages do not exist, and they will support their damages claims entirely through their testimony. (*See* Plaintiffs' Answers to Interrogatories at ¶ 14)

53.     When Plaintiffs were asked at their depositions to explain the damages figures pleaded in their Complaint, they were at a total loss. Both simply stated that they could not provide any explanation or basis for the alleged damages figures. (Deposition of Ilya Tarkov at 34:8-40:13; Deposition of Rimma Tarkov at 46:19-49:4)

Dated: December 8, 2017                    Respectfully submitted,

                                           /s/ Brian T. Maye

                                           Brian T. Maye
                                           Adler Murphy & McQuillen LLP
                                           20 S. Clark Street, Suite 2500
                                           Chicago, Illinois 60603
                                           Telephone: (312) 422-5713
                                           bmaye@amm-law.com

                                           Attorneys for Defendant Frontier Airlines, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on December 8, 2017, he served the foregoing document by electronically filing the same with the Clerk of the U.S. District Court for the Northern District of Illinois by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/ Brian T. Maye
_____