**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ILYA and RIMMA TARKOV, | ) | |
| | ) | Case No.: 1:15-cv-03430 |
| Plaintiffs, | ) | |
| | ) | Honorable John J. Tharp, Jr. |
| v. | ) | |
| | ) | Honorable Young B. Kim |
| FRONTIER AIRLINES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF BRIAN T. MAYE IN SUPPORT OF DEFENDANT FRONTIER
AIRLINE'S MOTION FOR SUMMARY JUDGMENT**

I, BRIAN T. MAYE, declare and state:

1.    I am an attorney duly licensed to practice before this Court and I am a Partner of the law firm of Adler Murphy & McQuillen LLP, counsel for Frontier Airlines, Inc. ("Frontier"). I submit this declaration in support of Frontier's Motion for Summary Judgment.

2.    Plaintiffs were reimbursed by AIG Travel Insurance in the amount of $235 relating to the March 28, 2015 cancellation. (*See* AIG Documents, attached as Ex. 1)

3.    Apple Vacations issued vouchers in the amount of $150 to Plaintiffs relating to the March 28, 2015 cancellation. (*See* Apple Vacation Documents, attached as Ex. 2)

4.    On July 10, 2017, the Court granted Frontier's motion to compel and ordered Plaintiffs to produce cell phone statements, bank statements, credit card statements and employment records. The Court also ordered Plaintiffs to provide signed authorizations for the release of cell phone records, bank records, credit card records and employment records. (*See* Court Order, attached as Ex. 3; Doc. No. 71)

5.    To date, Plaintiffs have <u>not</u> produced any cell phone, bank, credit card or employment records, or authorizations for such records, all of which were court ordered.

6.    On July 17, 2017, the Court ordered Plaintiffs to pay $1,040 as a sanction pursuant to Rule 37(a)(5). (*See* Docs. 72 and 92)

7.    To date, Plaintiffs have <u>not</u> made payment of $1,040 to Frontier.

8.    To date, Plaintiffs have <u>not</u> provided a computation of damages.

9.    To date, Plaintiffs have <u>not</u> provided any receipts or documents to support their alleged expenses.

EXHIBIT G

**I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.**

Dated:  December 7, 2017

_____

 **AIG**®

Claims Department
P.O. Box 47
Stevens Point, WI 54481-0047
Fax: 715.295.1113 or 715.345.1141
www.travelguard.com

AIG Claims Inc. is a wholly owned subsidiary of AIG® and provides claims administration for Travel Guard® travel insurance products.

August 16, 2017

Adler Murphy & McQuillen LLP
Attn: Katelyn B. Macholan
20 South Clark Street, Suite 2500
Chicago, IL  60603-1804

RE: Subpoena for Records  AM&M File: 15AZF282 –

Dear Ms. Macholan,

Enclosed please find a list of the requested documentation including:

- Copy of the Certificate of Insurance
- Copy of the Policy Summary
- Copy of documentation received from Rima Tarkov
- Copy of Claim Memo Report
- Copy of the Cancelled Check, issued to Rima Tarkov on 5/1/2015 for reimbursement for her Travel Delay Expenses, Claim #1897779.

Sincerely,

Brian Mecom
Claims Administrative Director
Clerical Support Unit
AIG
Claims Department
AIG Travel | AIG Property Casualty
800-826-1300 Option 3

3300 Business Park Drive, Stevens Point, WI 54482
PO Box 47, Stevens Point, WI 54481

EXHIBIT G (1)



# Adler Murphy & McQuillen LLP

RECEIVED
AUG 1 4 2017
CLAIMS DEPT.

20 South Clark Street, Suite 2500, Chicago, Illinois 60603-1804
Telephone: 312.345.0700  Facsimile: 312.345.9860
www.amm-law.com

August 10, 2017

***VIA CERTIFIED MAIL***
***RETURN RECEIPT REQUESTED***
**AIG Travel Guard**
3300 Business Park Drive
Stevens Point, WI 54482

Re:     **Subpoena for Records**
          AM&M File:  15AZF282

Dear Records Custodian:

**The enclosed subpoena is for records only**.  You do not need to appear for deposition. Please provide any and all responsive documents to the attention of the undersigned.

We are willing to reimburse you for all reasonable charges incurred in responding to this request.  However, should the cost exceed $250.00, please contact the undersigned at 312-422-5784 for approval.  I greatly appreciate your assistance in this matter.

Very truly yours,

ADLER MURPHY & McQUILLEN LLP

Katelyn B. Macholan
Paralegal

KBM
Enclosures
Cc: Vladimir M. Gorokhovsky (via email)

AIG 000002

CASE 0:13-cv-03430 Document #: 113-7 Filed: 12/09/14 Page 5 of 48 PageID #:1656

# Silver

## SCHEDULE OF BENEFITS

| All coverages are per person. | MAXIMUM LIMIT |
|---|---|
| Trip Cancellation | 100% of insured Trip Cost up to a maximum of $100,000 |
| Trip Interruption | up to 100% of Trip Cost up to a maximum of $100,000 |
| Trip Interruption-Return Air Only | $500 |
| Trip Delay *(Maximum of $100 per day)* | $500 |
| Baggage & Personal Effects | $750 |
| *(Deductible $50)* | |
| Baggage Delay | $200 |
| Accident Sickness Medical Expense | $15,000* |
| *(Deductible $50)* | |
| Dental | $500 |
| Emergency Evacuation & Repatriation of Remains | $150,000* |
| Escort Maximum | $25,000 |

### Extra Coverage
*(when the insurance plan is purchased within 15 days of Initial Trip Payment)*

• Pre-Existing Medical Condition Exclusion Waiver
• Trip Cancellation/Interruption due to Financial Default
• $25,000 in Flight Guard Coverage

### Optional Coverage
*The following will be included if elected and appropriate costs have been paid.*

**Emergency Evacuation Upgrade:**

| Emergency Evacuation | Additional $150,000* |
|---|---|
| **Flight Guard®** | Amount Selected Up to a Maximum of $500,000 |
| Car Rental Collision Coverage | $35,000 |
| *($250 Deductible)* | |

\* Trip must be overnight and Destination must be at least 100 miles from the Insured's Primary Residence.

### *The following non-insurance services are provided by Travel Guard.*
• Travel Medical Assistance • Worldwide Travel Assistance
• LiveTravel® Emergency Assistance • Concierge Services

T30337NUFIC-0611   1   PI8838 P1 06/11

AIG-000003

---

## PLEASE READ THIS DOCUMENT CAREFULLY!

Insurance coverage is underwritten by National Union Fire Insurance Company of Pittsburgh, Pa., a Pennsylvania Insurance Company, NAIC No. 19445 with its principal place of business at 175 Water Street, 18th Floor, New York, NY 10038 and currently authorized to transact business in all states and the District of Columbia.

The Policy will contain reductions, limitations, exclusions and termination provisions. Full details of coverage are contained in the Policy. If there are any conflicts between the contents of this document and the Policy (form series T30337NUFIC), the Policy will govern in all cases.

**FIFTEEN DAY LOOK:** You may cancel this insurance by giving the Company or the agent written notice within the first to occur of the following: (a) 15 days from the Effective Date of your insurance; or (b) your Scheduled Departure Date. If you do this, the Company will refund your premium paid provided no insured has filed a claim under this Certificate.

Coverage only available to Illinois residents.

The President and Secretary of the National Union Fire Insurance Company of Pittsburgh, Pa. witness the Policy.

President          Secretary

---

### IMPORTANT
This coverage is valid only if the appropriate plan cost has been paid. Please keep this document as Your record of coverage under the plan.

---

Any payments under the policy will only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). Therefore, any expenses incurred or claims made involving travel that is in violation of such sanctions, laws and regulations will not be covered under the policy. For more information, you may consult the OFAC internet website at www.treas.gov/offices/enforcements/ofac/ or a Travel Guard representative.

2

---

**For questions or information contact:**
Insurance Claims/Information or phone Travel Guard 1.800.826.1300
National Union Fire Insurance Company of Pittsburgh, Pa. (an AIG Company) 1.800.679.5016

### TABLE OF CONTENTS

| | |
|---|---|
| SECTION I | EFFECTIVE AND TERMINATION DATES |
| SECTION II | BENEFITS |
| SECTION III | DEFINITIONS |
| SECTION IV | EXCLUSIONS AND LIMITATIONS |
| SECTION V | PAYMENT OF CLAIMS |
| SECTION VI | GENERAL PROVISIONS |

## Section I
## EFFECTIVE AND TERMINATION DATES

**Effective Date:** Trip Cancellation coverage will be effective at 12:01 a.m. Standard Time on the date following payment to the Company of any required plan cost.

Car Rental Collision Coverage will take effect when the Insured signs the rental agreement and takes possession of the rental vehicle provided the required plan cost has been paid on or before the date the rental agreement has been signed.

All other coverages will begin on the later of:
(a) 12:01 a.m. Standard Time on the scheduled Departure Date shown on the travel documents; or
(b) the date and time the Insured starts his/her Trip.

**Termination Date:** Trip Cancellation coverage ends on the earlier of:
(a) the cancellation of the Insured's Trip; or
(b) the date and time the Insured starts on his/her Trip.

The Car Rental Collision Coverage will end when the car is returned on or before the Rental Return Date, or at 11:59 p.m. on the Rental Return Date if the car is not returned as specified on the rental agreement and the rental period has not been extended by the Insured.

All other coverages end on the earliest of:
(a) the date the Trip is completed;
(b) the scheduled Return Date; or
(c) the Insured's arrival at the Return Destination on a round Trip, or the Destination on a one-way Trip.

**Extension of Coverage:** All coverages, except Trip Cancellation, will be extended, if:

3

(a) the Insured's entire Trip is covered by the plan;
(b) the Insured's return is delayed by one of the Unforeseen events specified under Trip Cancellation and Interruption or Trip Delay.

This extension of coverage will end on the earlier of:
(a) the date the Insured reaches his/her Return Destination; or
(b) 7 days after the date the Trip was scheduled to be completed.

**Baggage Extension of Coverage:** If an Insured's Baggage, passports and visas are in the charge of a Common Carrier and delivery is delayed, coverage for Baggage and Personal Effects will be extended until the Common Carrier delivers the property to the Insured. This Extension does not include loss caused by the delay.

## Section II - Benefits
### TRIP CANCELLATION AND INTERRUPTION

The Company will reimburse the Insured a benefit, up to the Maximum Limit shown in the Schedule or Declarations Page if an Insured cancels his/her Trip or is unable to continue on his/her Trip due to any of the following Unforeseen events:
(a) Sickness, Injury or death of an Insured, Family Member, Traveling Companion or Business Partner;
(1) Sickness or Injury of an Insured, Traveling Companion or Family Member traveling with the Insured must be so disabling as to reasonably cause a Trip to be canceled or interrupted or which results in medically imposed restrictions as certified by a Physician at the time of Loss preventing continued participation in the Trip;
(2) Sickness or Injury of a Family Member not traveling with the Insured must be because their condition is life-threatening as certified by a Physician, or they require the Insured's immediate care. Such disability must be so disabling as to reasonably cause a Trip to be canceled or interrupted and must be certified by a Physician;
(3) Sickness or Injury of the Business Partner must be so disabling as to reasonably cause the Insured to cancel or interrupt the Trip to assume daily management of the business. Such disability must be certified by a Physician;
(b) Financial Default of an airline, Cruise line or tour operator provided the Financial Default occurs more than 14 days following an Insured's effective date for the Trip Cancellation or Trip Interruption Benefits.

There is no coverage for the Financial Default of any person, organization, agency, or firm from whom the Insured purchased travel arrangements supplied by others. This coverage applies only if insurance was purchased within 15 days of Initial Trip Payment;
(c) Inclement Weather causing delay or cancellation of travel for at least 24 consecutive hours;
(d) Strike causing complete cessation of travel services at the point of departure or Destination;
(e) the Insured's Primary Residence being made Uninhabitable or Inaccessible by Natural Disaster, vandalism or burglary;
(f) the Insured's Destination being made Uninhabitable or Inaccessible by flood, tornado, earthquake, volcanic eruption, fire, wildfire or blizzard that is due to natural causes;
(g) the Insured or Traveling Companion is hijacked, quarantined, subpoenaed or required to serve on a jury;
(h) the Insured or Traveling Companion is called to active military service or military leave is revoked or reassigned;
(i) a Terrorist Incident in a City listed on the Insured's itinerary within 30 days of the Insured's scheduled arrival;
(j) the Insured or Traveling Companion is involuntarily terminated or laid off through no fault of his or her own provided that he or she has been an active employee for the same employer for at least 1 year. Termination must occur following the effective date of coverage. This provision is not applicable to temporary employment, seasonal employment, independent contractors or self-employed persons;
(k) a named hurricane causing cancellation or interruption of travel to the Insured's Destination that is Inaccessible or Uninhabitable. Claims are not payable if a hurricane is foreseeable prior to the Insured's effective date. A hurricane is foreseeable on the date it becomes a named storm. The Company will only pay the benefits for Losses occurring within 30 days after the named hurricane makes the Insured's Destination Uninhabitable or Inaccessible.

### SPECIAL NOTIFICATION OF CLAIM
The Insured must notify Travel Guard as soon as reasonably possible in the event of a Trip Cancellation or Interruption claim. If the Insured is unable to provide cancellation notice within the required timeframe, the Insured must provide proof of the circumstance that prevented timely notification.

**Trip Cancellation Benefits:** The Company will reimburse the Insured for Forfeited, prepaid Trip Cost up to the Maximum Limit shown in the Schedule or Declarations Page for Trips that are canceled prior to the scheduled Departure due to any of the Unforeseen events shown above.

**Trip Interruption Benefits:** The Company will reimburse the Insured up to the Maximum Limit shown in the Schedule or Declarations Page for Trips that are interrupted due to the Unforeseen events above for:
(a) Unused portion of nonrefundable, prepaid insured Trip Cost, and
(b) additional transportation expenses incurred by the Insured, either
(1) to the Return Destination; or
(2) from the place that the Insured left the Trip to the place that the Insured may rejoin the Trip; or
(c) additional transportation expenses incurred by the Insured to reach the original Trip Destination if the Insured is delayed and leaves after the Departure Date.
However, the benefit payable under (b) and (c) above will not exceed the cost of economy airfare or the same class as the Insured's original ticket, less any refunds paid or payable, by the most direct route.

**Trip Interruption – Return Air Only:** The Company will reimburse the Insured for the additional transportation expenses incurred to reach the Return Destination due to one of the Unforeseen events listed in the Trip Cancellation/Trip Interruption section. However, the benefit payable will not exceed the cost of economy airfare (or the same class as the Insured's original ticket) less any refunds paid or payable and taken by the most direct route.

### SINGLE OCCUPANCY BENEFIT
The Company will reimburse the Insured, up to the Trip Cancellation and Trip Interruption Maximum Limits shown in the Schedule or Declarations Page, for the additional cost incurred during the Trip as a result of a change in the per person occupancy rate for prepaid, nonrefundable travel arrangements if a person booked to share accommodations with the Insured has his/her Trip canceled or interrupted due to any of the Unforeseen events shown in the Trip Cancellation and Trip Interruption section and the Insured does not cancel.

### TRIP DELAY
The Company will reimburse the Insured up to the Maximum Limit shown in the Schedule or Declarations

Page for Reasonable Additional Expenses until travel becomes possible to the originally scheduled Destination if the Insured's Trip is delayed 12 or more consecutive hours and prevents the Insured from reaching the intended Destination as a result of a cancellation or delay of his/her Trip for one of the Unforeseen events listed below:
(a) the Insured being involved in or delayed due to a traffic accident while en route to a departure as substantiated by a police report;
(b) Common Carrier delay;
(c) the Insured's or Traveling Companion's lost or stolen passports, travel documents or money;
(d) the Insured or Traveling Companion is quarantined;
(e) Strike;
(f) Inclement Weather which prohibits Insured's departure;
(g) Natural Disaster.

Incurred expenses must be accompanied by receipts.

This benefit is payable for only one delay per Insured, per Trip.

If the Insured incurs more than one delay in the same Trip the Company will reimburse the Insured for the delay with the largest benefit up to the Maximum Limit shown in the Schedule or Declarations Page.

The Insured Must: Contact Travel Guard as soon as he/she knows his/her Trip is going to be delayed more than 12 hours.

## BAGGAGE AND PERSONAL EFFECTS
The Company will reimburse the Insured, up to the Maximum Limit shown in the Schedule or Declarations Page subject to the special limitations shown below, for Loss, theft or damage to the Insured's Baggage, personal effects, passports, travel documents and visas during the Insured's Trip after satisfaction of the Deductible shown in the Schedule or Declarations Page.

**Special Limitations:**
The Company will reimburse the Insured up to:
- $500 for the first item and thereafter
- $250 per each additional item
- $500 aggregate on all Losses to: jewelry, watches, furs, cameras and camera equipment, camcorders, computers, electronic devices, including but not limited to: lap top computers, cell phones, electronic organizers and portable CD players.

Items over $150 must be accompanied by original receipts.
(a) the cash value (original cash value less depreciation) as determined by the Company or
(b) the cost of replacement.

The Company may take all or part of the damaged Baggage at the appraised or agreed value. In the event of a Loss to a pair or set of items, the Company may at its option:
(a) repair or replace any part to restore the pair or set to its value before the Loss; or
(b) pay the difference between the cash value of the Baggage before and after the Loss.

## BAGGAGE DELAY
If the Insured's Baggage is delayed or misdirected by the Common Carrier for more than 24 hours while on a Trip, the Company will reimburse the Insured up to the Maximum Limit shown in the Schedule or Declarations Page for the purchase of Necessary Personal Effects. Necessary Personal Effects do not include jewelry, perfume and alcohol. Incurred expenses must be accompanied by receipts. This benefit does not apply if Baggage is delayed after the Insured has reached his/her Return Destination.

## CAR RENTAL COLLISION COVERAGE
If an Insured's rented vehicle is damaged while on a Trip due to collision, vandalism, windstorm, fire, hail or flood, while in his/her possession, the Company will pay the lesser of:
(a) the cost of repairs and rental charges imposed by the rental company while the vehicle is being repaired; or
(b) the Actual Cash Value of the vehicle.

The Company will pay this benefit up to the Maximum Limit and subject to the Deductible shown in the Schedule.

Coverage is provided to the Insured and Traveling Companion, if the Insured and Traveling Companion are licensed drivers and are listed on the rental agreement.
Coverage does not apply in countries or states where the sale of this insurance is prohibited by law.
This coverage is Primary to other forms of insurance or indemnity.
The Insured must contact Travel Guard before renting to confirm if the vehicle is covered.

## ACCIDENT SICKNESS MEDICAL EXPENSE BENEFIT
If, while on a Trip, an Insured suffers an Injury or Sickness that requires him or her to be treated by a Physician, the Company will pay a benefit for Reasonable and Customary Charges, up to the Maximum Limit and after satisfaction of the Deductible shown in the Schedule or Declarations Page. The Company will reimburse the Insured for Medically Necessary Covered Expenses incurred to treat such Injury or Sickness during the course of the Trip provided the initial documented treatment was received from a Physician during the Trip. The Injury must first occur or the Sickness must first begin while on an overnight Trip with a Destination of at least 100 miles from the Insured's Primary Residence, while covered under the Policy.
**Covered Expenses:**
The Company will reimburse the Insured for:
- services of a Physician or registered nurse (R.N.);
- Hospital charges;
- X-rays;
- local ambulance services to or from a Hospital;
- artificial limbs, artificial eyes, artificial teeth or other prosthetic devices;
- the cost of emergency dental treatment only during a Trip limited to the Maximum Limit shown in the Schedule or Declarations Page. Coverage for emergency dental treatment does not apply if treatment or expenses are incurred after the Insured has reached his/her Return Destination, regardless of the reason. The treatment must be given by a Physician or dentist.
**Advance Payment:** If an Insured requires admission to a Hospital, Travel Guard will arrange advance payment, if required. Hospital confinement must be certified as Medically Necessary by the onsite attending Physician.

## EMERGENCY EVACUATION AND REPATRIATION OF REMAINS
The Company will pay for Covered Emergency Evacuation Expenses incurred due to an Insured's Injury or Sickness that occurs while he or she is on a Trip. Benefits payable are subject to the Maximum Limit shown in the Schedule or Declarations Page for all Emergency Evacuations due to all Injuries from the same accident or all Sicknesses from the same or related causes during an overnight Trip with a Destination of at least 100 miles from the Insured's Primary Residence.

**Covered Emergency Evacuation Expenses** are the Reasonable and Customary Charges for necessary

Transportation, related medical services and medical supplies incurred in connection with the Emergency Evacuation of the Insured. All Transportation arrangements made for evacuating the Insured must be by the most direct and economical route possible and required by the standard regulations of the conveyance transporting the Insured.

Expenses for Transportation must be:
(a) ordered by the onsite attending Physician who must certify that the severity of the Insured's Injury or Sickness warrants his or her Emergency Evacuation and adequate medical treatment is not locally available; and
(b) authorized in advance by Travel Guard. In the event the Insured's Injury or Sickness prevents prior authorization of the Emergency Evacuation, Travel Guard must be notified as soon as reasonably possible.

The Company will also pay a benefit for reasonable and customary expenses incurred for an escort's transportation and accommodations subject to the Escort Maximum Limit shown in the Schedule if an onsite attending Physician recommends in writing that an escort accompany the Insured.

**Special Limitation:** In the event Travel Guard could not be contacted to arrange for Emergency Evacuation, benefits are limited to the amount the Company would have paid had the Company or its authorized representative been contacted.

**Emergency Evacuation means:**
(a) Transportation from the place where the Insured is Injured or sick to the nearest adequate licensed medical facility where appropriate medical treatment can be obtained; or
(b) Transportation from a local medical facility to the nearest adequate licensed medical facility to obtain appropriate medical treatment if the onsite attending Physician certifies that additional Medically Necessary treatment is needed but not locally available; and the Insured is medically able to travel; and/or
(c) Transportation to the adequate licensed medical facility nearest the Insured's home to obtain further medical treatment or to recover, after being treated at a local licensed medical facility, and the onsite attending Physician determines that the Insured is medically able to be transported.

Advanced authorization by Travel Guard is needed for (a), (b) and (c) above.

**ADDITIONAL BENEFIT**
In addition to the above covered expenses, if the Company has previously evacuated an Insured to a medical facility, the Company will reimburse the Insured his/her airfare costs, less refunds from the Insured's Unused transportation tickets, from that facility to the Insured's Return Destination or home, within one year from the Insured's original Return Date. Airfare costs will be based on medical necessity or same class as the Insured's original tickets.

**REPATRIATION OF REMAINS**
The Company will pay Repatriation Covered Expenses up to the Maximum Limit shown in the Schedule or Declarations Page to return the Insured's body to the City of burial if he/she dies during the Trip.

**Repatriation Covered Expenses** include, but are not limited to, the reasonable and customary expenses for:
(a) embalming;
(b) cremation;
(c) the most economical coffins or receptacles adequate for transportation of the remains; and
(d) transportation of the remains, by the most direct and economical conveyance and route possible.
Travel Guard must make all arrangements and authorize all expenses in advance for this benefit to be payable.

**Special Limitation:** In the event the Company or the Company's authorized representative could not be contacted to arrange for Repatriation Covered Expenses, benefits are limited to the amount the Company would have paid had the Company or its authorized representative been contacted.

**FLIGHT GUARD®**
The Company will reimburse the Insured for this benefit for one of the Losses shown in the Table of Losses below if the Insured is Injured while on a Trip while riding as a passenger in or boarding or alighting from or being struck or run down by a certified passenger aircraft provided by a regularly scheduled airline or charter and operated by a properly certified pilot. The Loss must occur within 365 days of the date of the accident which caused Injury. The Company will pay the percentage shown below of the Maximum Limit shown in the Schedule. The accident must

occur while the Insured is on the Trip and is covered under the Policy.
If more than one Loss is sustained by an Insured as a result of the same accident, only one amount, the largest applicable to the Losses incurred, will be paid. The Company will not pay more than 100% of the Maximum Limit for all Losses due to the same accident.

Table of Losses

| Loss of | % of Maximum Limit |
|---|---|
| Life | 100% |
| Both Hands or Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| Either Hand or Foot and Sight of One Eye | 100% |
| Either Hand or Foot | 50% |
| Sight of One Eye | 50% |

**"Loss"** with regard to:
(a) hand or foot means actual severance through or above the wrist or ankle joints;
(b) eye means entire and irrecoverable Loss of sight in that eye.

**EXPOSURE**
The Company will pay a benefit for covered Losses as specified above which result from an Insured being unavoidably exposed to the elements due to an accidental Injury during the Trip. The Loss must occur within 365 days after the event which caused the exposure.

**DISAPPEARANCE**
The Company will pay a benefit for Loss of life as specified above if the Insured's body cannot be located one year after a disappearance due to an accident during the Trip.

## Section III
## DEFINITIONS
**(Capitalized terms within this Certificate of Insurance are defined herein)**
*"Actual Cash Value"* means purchase price less depreciation.
*"Baggage"* means luggage, travel documents, and personal possessions; whether owned, borrowed or rented, taken by the Insured on the Trip.
*"Business Partner"* means a person who: (1) is involved with the Insured or the Insured's Traveling Companion in a legal partnership; and (2) is actively involved in the daily management of the business.

Case 1:15-cv-03430 Document 1-7 Filed: 12/08/13 Page 9 of 48 PageID #:1660

*"Caregiver"* means an individual employed for the purpose of providing assistance with activities of daily living to the Insured or to the Insured's Family Member who has a physical or mental impairment. The Caregiver must be employed by the Insured or the Insured's Family Member. A Caregiver is not a babysitter; childcare service, facility or provider; or persons employed by any service, provider or facility to supply assisted living.

*"Children"* or *"Child"* means with respect to Emergency Evacuation and Accident Sickness Medical Expense Benefit and as shown on the enrollment form unmarried children or grandchildren of the Insured, including natural children from the moment of birth, children from a civil union, step, and adopted or foster children from the moment of application for adoption or foster care, under age 25 and primarily dependent on the Insured for support and maintenance. However, the age limit does not apply to a child who: (1) otherwise meets the definition of children; and (2) is incapable of self-sustaining employment by reason of mental or physical incapacity. As otherwise used in this plan it means the Insured's natural, step, foster, adopted children or grandchildren of any age.

*"City"* means an incorporated municipality having defined borders and does not include the high seas, uninhabited areas or airspace.

*"Common Carrier"* means an air, land or sea conveyance operated under a license for the transportation of passengers for hire and for which the Insured's ticket was purchased through the Travel Supplier.

*"Company"* means National Union Fire Insurance Company of Pittsburgh, Pa.

*"Complications of Pregnancy"* means conditions whose diagnoses are distinct from pregnancy but are adversely affected by pregnancy or are caused by pregnancy. These conditions include acute nephritis, nephrosis, cardiac decompensation, missed abortion and similar medical and surgical conditions of comparable severity. Complications of pregnancy also include nonelective cesarean section, ectopic pregnancy which is terminated and spontaneous termination of pregnancy, which occurs during a period of gestation in which a viable birth is not possible.
Complications of pregnancy do not include false labor, occasional spotting, Physician-prescribed rest during the period of pregnancy, morning sickness, hyperemesis gravidarum, preeclampsia and similar conditions associated with the management of a difficult pregnancy not constituting a nosologically distinct complication of pregnancy.

*"Cruise"* means a vacation on a cruise ship.

*"Declarations Page"* means the document showing the Insured's level of arrangements and insurance benefits.

*"Deductible"* means the amount of charges that must be incurred by an Insured before benefits become payable. The amount of the deductible is shown in the Schedule for each benefit to which a deductible applies.

*"Departure Date"* means the date on which the Insured is originally scheduled to leave on his/her Trip. This date is specified in the travel documents.

*"Destination"* means any place where the Insured expects to travel to on his/her Trip as shown on the travel documents.

*"Domestic Partner"* means an opposite or a same-sex partner or a civil union partner who is at least 18 years of age and has met all of the following requirements for at least 6 months:
(a) resides with the Insured or Family Member; and
(b) shares financial assets and obligations with the Insured or Family Member.
The Company may require proof of the domestic partner relationship in the form of a signed and completed Affidavit of Domestic Partnership.

*"Eligible Person"* means a person who is a member of an eligible class of persons as described in the Description of Eligible Persons section of the Master Application.

*"Exotic Vehicle"* means antique cars that are over 20 years old or have not been manufactured for 10 or more years or any vehicle with an original manufacturer's suggested retail price greater than $50,000.

*"Experimental or Investigative"* means treatments, devices or prescription medications which are recommended by a Physician, but are not considered by the medical community as a whole to be safe and effective for the condition for which the treatments, devices or prescription medications are being used. This includes any treatments, procedures, facilities, equipments, drugs, drug usage, devices or supplies not recognized as accepted medical practice, and any of those items requiring federal or other governmental agency approval not received at the time services are rendered.

*"Family Member"* means the Insured's, or Traveling Companion's spouse, civil union partner, Domestic Partner, Child, daughter-in-law, son-in-law, brother, sister, mother, father, grandparent, step-grandparent, grandchild, step-grandchild, step-child, step-brother, step-sister, step-parent, parent-in-law, brother-in-law, sister-in-law, aunt, step-aunt, uncle, step-uncle, niece, nephew, legal guardian, Caregiver, foster Child, ward, or legal ward; spouse, civil union partner or Domestic Partner of any of the above. Family Member also includes these relations to

the Insured's or Traveling Companion's spouse, civil union partner or Domestic Partner.

*"Financial Default"* means the total cessation or partial suspension of operations due to insolvency, with or without the filing of a bankruptcy petition by a tour operator, cruise line or airline.

*"Forfeited"* means the Insured's financial Loss of any whole or prorated prepaid, nonrefundable components of a Trip.

*"Hospital"* means a facility that:
(a) is operated according to law for the care and treatment of sick or Injured people;
(b) has organized facilities for diagnosis and surgery on its premises or in facilities available to it on a prearranged basis;
(c) has 24 hour nursing service by registered nurses (R.N.'s); and
(d) is supervised by one or more Physicians available at all times.
A hospital does not include:
(a) a nursing, convalescent or geriatric unit of a hospital when a patient is confined mainly to receive nursing care;
(b) a facility that is, other than incidentally, a clinic, a rest home, nursing home, convalescent home, home health care, or home for the aged; nor does it include any ward, room, wing, or other section of the hospital that is used for such purposes; or
(c) any military or veterans hospital or soldiers home or any hospital contracted for or operated by any national government or government agency for the treatment of members or ex-members of the armed forces for which no charge is normally made.

*"Hotel"* means any establishment used for the purpose of temporary, overnight lodging for which a fee is paid and reservations are required.

*"Inaccessible"* means an Insured cannot reach his/her Destination by the original mode of transportation.

*"Inclement Weather"* means any severe weather condition which delays the scheduled arrival or departure of a Common Carrier or prevents the Insured from reaching his/her Destination when traveling by a rented or owned vehicle.

*"Initial Trip Payment"* means the first payment made to the Insured's Travel Supplier toward the cost of the Insured's Trip.

*"Injury/Injured"* means a bodily injury caused by an accident occurring while the Insured's coverage under the Policy is in force and resulting directly and independently

of disease or bodily infirmity. The injury must be verified by a Physician.

**"Insured"** means an Eligible Person:
(a) for whom any required enrollment form has been completed;
(b) for whom any required plan cost has been paid;
(c) for whom a Trip is scheduled; and
(d) who is covered under the Policy.

**"Loss"** means Injury or damage sustained by the Insured as a consequence of one or more of the events against which the Company has undertaken to compensate the Insured.

**"Medically Necessary"** means that a treatment, service, or supply:
(a) is essential for diagnosis, treatment, or care of the Injury or Sickness for which it is prescribed or performed;
(b) meets generally accepted standards of medical practice;
(c) is ordered by a Physician and performed under his or her care, supervision, or order; and
(d) is not primarily for the convenience of the Insured, Physician, other providers or any other person.

**"Mental, Nervous or Psychological Disorder"** means a mental or nervous health condition including, but not limited to: anxiety, depression, neurosis, phobia, psychosis or any related physical manifestation.

**"Natural Disaster"** means a flood, hurricane, tornado, earthquake, volcanic eruption, fire, wildfire or blizzard that is due to natural causes.

**"Necessary Personal Effects"** means items, such as clothing and toiletry items, which are included in the Insured's Baggage and are required for the Insured's Trip.

**"Normal Pregnancy or Childbirth"** means a pregnancy or childbirth that is free of complications or problems.

**"Physician"** means a licensed practitioner of medical, surgical, dental, services or the healing arts including accredited Christian Science Practitioner, acting within the scope of his/her license. The treating physician cannot be the Insured, a Traveling Companion, a Family Member, a Business Partner or retained by the Policyholder.

**"Primary"** means the Company will pay first but reserves the right to recover from any other insurance carrier with which the Insured may be enrolled.

**"Primary Residence"** means an Insured's fixed, permanent and main home for legal and tax purposes.

**"Reasonable Additional Expenses"** means expenses for meals, taxi fares, essential telephone calls and lodging which are necessarily incurred as the result of a Trip Delay

and which are not provided by the Common Carrier or any other party free of charge.

**"Reasonable and Customary Charges"** means expenses which:
(a) are charged for treatment, supplies, or medical services Medically Necessary to treat the Insured's condition;
(b) do not exceed the usual level of charges for similar treatment, supplies or medical services in the locality where the expenses are incurred; and
(c) do not include charges that would not have been made if no insurance existed. In no event will the Reasonable and Customary Charges exceed the actual amount charged.

**"Rental Return Date"** means the return date listed on the car rental agreement.

**"Return Date"** means the date on which the Insured is scheduled to return to the point where the Trip started or to a different specified Return Destination. This date is specified in the travel documents.

**"Return Destination"** means the place to which the Insured expects to return from his/her Trip as shown in the enrollment form.

**"Schedule"** means the Schedule of Benefits which is shown at the beginning of the Certificate.

**"Sickness"** means an illness or disease diagnosed or treated by a Physician.

**"Strike"** means a stoppage of work which:
(a) is announced, organized, and sanctioned by a labor union; and
(b) interferes with the normal departure and arrival of a Common Carrier.

This includes work slowdowns and sickouts. The Insured's Trip Cancellation coverage must be effective prior to when the strike is foreseeable. A strike is foreseeable on the date labor union members vote to approve a strike.

**"Terrorist Incident"** means an act of violence by any person acting on behalf of or in connection with any organization which is generally recognized as having the intent to overthrow or influence the control of any government, that is deemed terrorism by the United States Government other than civil disorder or riot, that is not an act of war, declared or undeclared, that results in Loss of life or major damage to property.

**"Transportation"** means any land, sea or air conveyance required to transport the Insured during an Emergency Evacuation. Transportation includes, but is not limited to, air ambulances, land ambulances and private motor vehicles.

**"Travel Supplier"** means the tour operator, hotel, rental company, cruise line or airline that provides prepaid travel arrangements for the Insured's Trip.

**"Traveling Companion"** means a person or persons with whom the Insured has coordinated travel arrangements and intends to travel with during the Trip. A group or tour leader is not considered a traveling companion unless the Insured is sharing room accommodations with the group or tour leader.

**"Trip"** means a period of travel away from home to a Destination outside the Insured's City of residence; the purpose of the trip is business or pleasure and is not to obtain health care or treatment of any kind; the trip has defined Departure and Return Dates specified when the Insured applies; the trip does not exceed 364 days; travel is primarily by Common Carrier and only incidentally by private conveyance.

**"Trip Cost"** means the dollar amount of Trip payments or deposits paid by the Insured prior the Insured's Trip Departure Date and shown on any required enrollment form which is subject to cancellation penalties or restrictions. Trip cost will also include the cost of any subsequent prepaid payments or deposits paid by the Insured for the same Trip, after enrollment for coverage under this plan provided the Insured amends the enrollment form to add such subsequent payments or deposits and pays any required additional plan cost prior to the Insured's Departure Date.

**"Unforeseen"** means not anticipated or expected and occurring after the effective date of coverage.

**"Uninhabitable"** means (1) the building structure itself is unstable and there is a risk of collapse; (2) there is exterior or structural damage allowing elemental intrusion, such as rain, wind, hail or flood; (3) immediate safety hazards have yet to be cleared, such as debris or downed electrical lines; (4) the rental property is without electricity, gas, sewer service or water; or (5) the Destination is inaccessible.

**"Unused"** means the Insured's financial Loss of any whole, partial or prorated prepaid, nonrefundable components of a Trip that are not depleted or exhausted.

## Section IV
## EXCLUSIONS AND LIMITATIONS

**GENERAL EXCLUSIONS**
This plan does not cover any loss caused by or resulting from:
(a) intentionally self-inflicted Injury, suicide, or attempted suicide of the Insured, Family Member, Traveling Companion or Business Partner while sane or insane;

(b) Normal Pregnancy or Childbirth, other than Unforeseen Complications of Pregnancy, or elective abortion of the Insured, a Traveling Companion or a Family Member;

(c) participation in professional athletic events, motor sport or motor racing, including training or practice for the same;

(d) mountaineering where ropes or guides are normally used. The ascent or descent of a mountain requiring the use of specialized equipment, including but not limited to pick-axes, anchors, bolts, crampons, carabineers and lead or top-rope anchoring equipment;

(e) war or act of war, whether declared or not, participation in a civil disorder, riot or insurrection;

(f) operating or learning to operate any aircraft, as student, pilot or crew;

(g) air travel on any air-supported device, other than a regularly scheduled airline or air charter company;

(h) commission of or attempt to commit a felony by the Insured;

(i) Mental, Nervous or Psychological Disorder;

(j) if the Insured's tickets do not contain specific travel dates (open tickets);

(k) being under the influence of drugs or narcotics, unless administered upon the advice of a Physician or intoxication above the legal limit as defined and determined by the laws of the state where the Loss or the cause of the Loss was incurred;

(l) any loss that occurs at a time when this coverage is not in effect;

(m) traveling for the purpose of securing medical treatment;

(n) any Trip taken outside the advice of a Physician;

(o) **PRE-EXISTING MEDICAL CONDITION EXCLUSION:** The Company will not pay for any loss or expense incurred as the result of an Injury, Sickness or other condition (excluding any condition from which death ensues) of an Insured, Traveling Companion, Business Partner or Family Member which, within the 180 day period immediately preceding and including the Insured's coverage effective date: (a) first manifested itself, worsened, became acute or had symptoms which would have prompted a reasonable person to seek diagnosis, care or treatment; (b) for which care or treatment was given or recommended by a Physician; (c) required taking prescription drugs or medicines, unless the condition for which the drugs or medicines are taken remains controlled without any change in the required prescription drugs or medicines.

## PRE-EXISTING MEDICAL CONDITION EXCLUSION WAIVER

The Company will waive the pre-existing medical condition exclusion if the following conditions are met:

(1) This plan is purchased within 15 days of Initial Trip Payment;

(2) The amount of coverage purchased equals all prepaid nonrefundable payments or deposits applicable to the Trip at the time of purchase and the costs of any subsequent arrangements added to the same Trip are insured within 15 days of the date of payment or deposit for any subsequent Trip arrangements;

(3) All Insured's are medically able to travel when this plan cost is paid;

(4) The Trip Cost does not exceed $100,000 per person (only applicable to Trip Cancellation/Interruption).

This coverage will be terminated and no benefits will be paid under this Pre-existing Medical Condition Exclusion Waiver coverage if the full costs of all prepaid, nonrefundable Trip arrangements are not insured.

*The following exclusions also apply to Trip Cancellation and Trip Interruption:*

Unless otherwise provided by this plan Benefits will not be provided for any loss resulting from:

(a) travel arrangements canceled by an airline, Cruise line or tour operator, except as provided elsewhere in the plan;

(b) changes in plans by the Insured, a Family Member or Traveling Companion for any reason;

(c) financial circumstances of the Insured, a Family Member or a Traveling Companion;

(d) any government regulation or prohibition;

(e) an event which occurs prior to the Insured's coverage Effective Date;

(f) failure of any tour operator, Common Carrier, person or agency to provide the bargained-for travel arrangements or to refund money due the Insured;

(g) traveling for the purpose of securing medical treatment.

**The following exclusions apply to Baggage/Personal Effects and Baggage Delay:**

Benefits will not be provided for any Loss, or damage to, caused by, or resulting from:

(a) animals, rodents, insects or vermin;

(b) bicycles (except when checked with a Common Carrier);

(c) motor vehicles, aircraft, boats, boat motors, ATV's and other conveyances;

(d) artificial prosthetic devices, false teeth, any type of eyeglasses, sunglasses, contact lenses or hearing aids;

(e) keys, notes, securities, accounts, currency, deeds, food stamps, bills, credit cards or other evidences of debt, or tickets;

(f) money, stamps, stocks and bonds, postal or money orders;

(g) property shipped as freight, or shipped prior to the Departure Date;

(h) contraband, illegal transportation or trade;

(i) items seized by any government, government official or customs official;

(j) defective materials or craftsmanship;

(k) normal wear and tear;

(l) deterioration.

**The following limitations and exclusions apply to Car Rental Collision Coverage:**

Coverage is not provided for any loss to, or due to:

(a) the Insured or his/her Traveling Companion violating the rental agreement;

(b) rentals of trucks, (not including jeeps or SUV's) campers, trailers, off road vehicles, motor bikes, motorcycles, recreational vehicles, or Exotic Vehicles;

(c) any obligation the Insured or his or her Traveling Companion assumes under any agreement except insurance collision Deductible;

(d) failure to report the Loss to the proper local authorities and the rental car company;

(e) damage to any other vehicle, structure, or person as a result of a covered Loss;

(f) participation in contests of speed, motor sport or motor racing including training or practice for the same;

(g) driving under the influence of alcohol;

(h) being under the influence of drugs or intoxicants, unless prescribed by a Physician;

(i) war or act of war, whether declared or not, the Insured's participation in a civil disorder, riot or insurrection.

**The following exclusions also apply to the Accident Sickness Medical Expense Benefit:**

Unless otherwise provided by this plan Benefits will not be provided for the following:

(a) routine physical examinations;

(b) mental health care;

(c) replacement of hearing aids, eye glasses, contact lenses and sunglasses;

(d) routine dental care;

(e) any service provided by the Insured, a Family Member or Traveling Companion;

(f) alcohol or substance abuse or treatment for the same;
(g) Experimental or Investigative treatment procedures;
(h) care or treatment which is not Medically Necessary, except for related reconstructive surgery resulting from trauma, infection or disease;
(i) coverage for Trips less than 100 miles from the Insured's Primary Residence;
(j) traveling for the purpose of securing medical treatment.

*The following exclusions also apply to the Emergency Evacuation Benefit:*
Benefits will not be provided for the following:
(a) coverage for Trips less than 100 miles from the Insured's Primary Residence;
(b) traveling for the purpose of securing medical treatment.

*The following exclusions also apply to Flight Guard:*
Benefits will not be provided for the following:
(a) Sickness or disease;
(b) stroke or cerebrovascular accident or event, cardiovascular accident or event, myocardial infarction or heart attack, coronary thrombosis or aneurysm;
(c) traveling for the purpose of securing medical treatment.

### Section V
### PAYMENT OF CLAIMS

**Claim Procedures: Notice of Claim:** The Insured must call Travel Guard as soon as reasonably possible, and be prepared to describe the Loss, the name of the company that arranged the Trip (i.e., tour operator, Cruise line, or charter operator), the Trip dates, purchase date and the amount that the Insured paid. Travel Guard will fill in the claim form and forward it to the Insured for his or her review and signature. The completed form should be returned to Travel Guard, PO Box 47, Stevens Point, WI 54481 (telephone 1.800.826.1300).
All accident, health, and life claims will be administered by Mercury Claims & Assistance of WI, LLC, in those states where it is licensed.
**Claim Procedures: Proof of Loss:** The claim forms must be sent back to Travel Guard no more than 90 days after a covered Loss occurs or ends, or as soon after that as is reasonably possible. All claims under the Policy must be submitted to Travel Guard no later than one year after the date of Loss or insured occurrence or as soon as reasonably possible. If Travel Guard has not provided claim forms within 15 days after the notice of claim, other proofs of Loss should be sent to Travel Guard by the date claim forms would be due. The proof of Loss should include written proof of the occurrence, type and amount of Loss, the Insured's name, the participating organization

name, and policy number. The Insured must return all unused, nonrefundable tickets.
**Payment of Claims: When Paid:** Claims will be paid as soon as Travel Guard receives complete proof of Loss and verification of age.
**Payment of Claims: To Whom Paid:** Benefits are payable to the Insured who applied for coverage and paid any required plan cost. Any benefits payable due to that Insured's death will be paid to the survivors of the first surviving class of those that follow:
(a) the beneficiary named by that Insured and on file with Travel Guard
(b) to his/her spouse, if living. If no living spouse, then
(c) in equal shares to his/her living children. If there are none, then
(d) in equal shares to his/her living parents. If there are none, then
(e) in equal shares to his/her living brothers and sisters. If there are none, then
(f) to the Insured's estate.
If a benefit is payable to a minor or other person who is incapable of giving a valid release, the Company may pay up to $3,000 to a relative by blood or connection by marriage who has assumed care or custody of the minor or responsibility for the incompetent person's affairs. Any payment the Company makes in good faith fully discharges the Company to the extent of that payment.

Accident Sickness Medical Expense and Emergency Evacuation benefits may be payable directly to the provider. However, the provider: (a) must comply with the statutory provision for direct payment; and (b) must not have been paid from any other sources.

**Trip Cancellation and Trip Interruption Proof of Loss:** The Insured must provide Travel Guard documentation of the cancellation or interruption and proof of the expenses incurred. The Insured must provide proof of payment for the Trip such as canceled check or credit card statements, proof of refunds received, copies of applicable tour operator or Common Carrier cancellation policies, and any other information reasonably required to prove the Loss. Claims involving Loss due to Sickness, Injury, or death require signed patient (or next of kin) authorization to release medical information and an attending Physician's statement. The Insured must provide Travel Guard with all unused air, rail, cruise or other tickets if he/she is claiming the value of those unused tickets.
**Trip Delay Proof of Loss:** The Insured must provide Travel Guard documentation of the delay from the airline,

Cruise line, etc., as to the reason for the delay and proof of the expenses incurred. The Insured must provide Travel Guard with all original receipts, copies of receipts or a list of the expenses incurred that gives the amount paid, what the payment was for, and the date of the payment. Claims involving Loss due to Sickness, Injury or death require signed patient (or next of kin) authorization to release medical information and an attending Physician's statement.
**Baggage and Personal Effects Proof of Loss:** The Insured must: (a) report theft Losses to police or other local authorities as soon as possible; (b) take reasonable steps to protect his/her Baggage from further damage and make necessary and reasonable temporary repairs; (The Company will reimburse the Insured for those expenses. The Company will not pay for further damage if the Insured fails to protect his/her Baggage); (c) allow the Company to examine the damaged Baggage and/or the Company may require the damaged item to be sent in the event of payment; and (d) send sworn proof of Loss as soon as possible from date of Loss, providing amount of Loss, date, time, and cause of Loss, and a complete list of damaged or lost items.
**Baggage Delay Proof of Loss:** The Insured must provide documentation of the delay or misdirection of Baggage by the Common Carrier and receipts for the Necessary Personal Effects purchases.
**Car Rental Collision Coverage Proof of Loss:** The Insured must: take all reasonable, necessary steps to protect the vehicle and prevent further damage to it; report the Loss to the appropriate local authorities and the rental company as soon as possible; obtain all information on any other party involved in a traffic accident, such as name, address, insurance information, and driver's license number; and provide Travel Guard all documentation such as rental agreement, police report, and damage estimate.

**The following provisions apply to Baggage/Personal Effects, Baggage Delay and Car Rental Collision Coverage:**
**Notice of Loss.** If the Insured's property covered under the Policy is lost or damaged, the Insured must:
(a) notify Travel Guard as soon as possible;
(b) take immediate steps to protect, save and/or recover the covered property;
(c) give immediate notice to the carrier or bailee who is or may be liable for the Loss or damage;
(d) notify the police or other authority in the case of robbery or theft within 24 hours.

AIG 000010   22

23

24

**Proof of Loss.** The Insured must furnish Travel Guard with proof of Loss. Proof of Loss includes police or other local authority reports or documentation from the appropriate party responsible for the Loss. It must be filed within 90 days from the date of Loss. Failure to comply with these conditions shall not invalidate any claims under the Policy.

**Settlement of Loss.** Claims for damage and/or destruction shall be paid immediately after proof of the damage and/or destruction is presented to Travel Guard. Claims for lost property will be paid after the lapse of a reasonable time if the property has not been recovered. The Insured must present acceptable proof of Loss and the value.

**Valuation.** The Company will not pay more than the Actual Cash Value of the property at the time of Loss. At no time will payment exceed what it would cost to repair or replace the property with material of like kind and quality.

**Disagreement Over Size of Loss.** If there is a disagreement about the amount of the Loss, either the Insured or the Company can make a written demand for an appraisal. After the demand, the Insured and the Company each select their own competent appraiser. After examining the facts, each of the two appraisers will give an opinion on the amount of the Loss. If they do not agree, they will select an arbitrator. Any figure agreed to by 2 of the 3 (the appraisers and the arbitrator) will be binding. The appraiser selected by the Insured is paid by the Insured. The Company will pay the appraiser it chooses. The Insured will share with the Company the cost for the arbitrator and the appraisal process. Any arbitration shall proceed in accordance with the Arbitration provision in the General Provisions section.

**Benefit to Bailee.** This insurance will in no way inure directly or indirectly to the benefit of any carrier or other bailee.

**Accident Sickness Medical Expense, Emergency Evacuation & Repatriation of Remains and Flight Guard Proof of Loss:** The Insured must provide Travel Guard with: (a) all medical bills and reports for medical expenses claimed; and (b) a signed patient authorization to release medical information to Travel Guard.

**The following provision applies to Trip Cancellation, Trip Interruption, Accident Sickness Medical Expense, Baggage Delay, Baggage and Personal Effects,**

**Emergency Evacuation & Repatriation of Remains and Rental Vehicle Collision Coverage:**

**Subrogation -** To the extent the Company pays for a Loss suffered by an Insured, the Company will take over the rights and remedies the Insured had relating to the Loss. This is known as subrogation. The Insured must help the Company preserve its rights against those responsible for its Loss. This may involve signing any papers and taking any other steps the Company may reasonably require. If the Company takes over an Insured's rights, the Insured must sign an appropriate subrogation form supplied by the Company.

As a condition to receiving the applicable benefits listed above, as they pertain to this Subrogation provision, the Insured agrees, except as may be limited or prohibited by applicable law, to reimburse the Company for any such benefits paid to or on behalf of the Insured, if such benefits are recovered, in any form, from any Third Party or Coverage.

The Company will not pay or be responsible, without its written consent, for any fees or costs associated with the pursuit of a claim, cause of action or right by or on behalf of an Insured or such other person against any Third Party or Coverage.

**Coverage -** as used in this Subrogation section, means no fault motorist coverage, uninsured motorist coverage, underinsured motorist coverage, or any other fund or insurance policy (except coverage provided under the Policy to which this Certificate of Insurance is attached) and any fund or insurance policy providing the Policyholder with coverage for any claims, causes of action or rights the Insured may have against the Policyholder.

**Third Party -** as used in this Subrogation section, means any person, corporation or other entity (except the Insured, the Policyholder and the Company).

## Section VI
## GENERAL PROVISIONS

**Acts of Agents.** No agent or any person or entity has authority to accept service of the required proof of loss or demand arbitration on the Company's behalf nor to alter, modify or waive any of the provisions of the Policy.

**Company's Recovery Rights.** In the event of a payment under the Policy, the Company is entitled to all rights of recovery that the Insured, or the person to whom payment was made, has against another. The Insured must sign and deliver to the Company any legal papers relating to that recovery, do whatever is necessary to help the Company exercise those rights, and do nothing after the

loss to harm the Company's rights. When an Insured recovers under the Policy but also recovers from another policy, the amount recovered from the other policy shall be held in trust for the Company by the Insured and reimbursed to the Company to the extent of the Company's payment.

**Physical Examination and Autopsy.** The Company at its own expense has the right and opportunity to examine the person of any Insured whose Loss is the basis of claim under the Policy when and as often as it may reasonably require during the pendency of the claim and to perform an autopsy in case of death where it is not forbidden by law.

**Beneficiary Designation and Change.** The Insured's beneficiaries are the persons designated by the Insured and on file with Travel Guard or the beneficiaries as shown in the Payment of Claim: To Whom Paid provision.

An Insured over the age of majority and legally competent may change his or her beneficiary designation at any time, without the consent of the designated beneficiaries, unless an irrevocable designation has been made, by providing Travel Guard with a written request for change. When the request is received, whether the Insured is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to the Company on account of any payment made by it prior to receipt of the request.

**Assignment.** An Insured may not assign any of his or her rights, privileges or benefits under the Policy.

**Misstatement of Age.** If premiums for the Insured are based on age and the Insured has misstated his or her age, there will be a fair adjustment of premiums based on his or her true age. If the benefits for which the Insured is insured are based on age and the Insured has misstated his or her age, there will be an adjustment of said benefit based on his or her true age. The Company may require satisfactory proof of age before paying any claim.

**Legal Actions.** No action at law or in equity may be brought to recover on the Policy prior to the expiration of 60 days after written proof of Loss has been furnished in accordance with the requirements of the Policy. No such action may be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

**Arbitration.** THE PROCEDURE IS VOLUNTARY -THAT BOTH PARTIES TO THE CONTRACT MUST MUTUALLY AGREE TO THE ARBITRATION PROCEDURES, AND - THAT AN ARIBTRATION CLAUSE IS NOT A SUBSTITUTE FOR THE INSUREDS RIGHT TO MAINTAIN A LEGAL ACTION IF HE SO DESIRES AND IN NO WAY AFFECTS OR LIMITS A PERSONS ABILITY TO TAKE LEGAL ACTION IN A COURT OF LAW PRIOR TO

AIG 000011

VOLUNTARILY ENTERING INTO AN ARBITRATION PROCEEDINGS, AND -WHETHER THE DECISION OF THE ARBITRATOR IS BINDING ON THE PARTIES IN ACCORDANCE WITH UNIFORM ARBITRATION ACT (710 ILCS 5/1 ET SEQ.).

AN ARBITRATION PROVISION MAY BE BINDING UPON BOTH PARTIES OR NON-BINDING ON THE INSURED, BUT IN ALL INSTANCES MUST BE ENTERED INTO ON A VOLUNTARY BASIS. -ANY ARBITRATION PROVISION CONTAINED IN A CONTRACT OF INSURANCE FOR SALE OR DELIVERY IN THIS STATE SHALL BE SUBJECT TO AN DADMINISTRATED IN ACCORDANCE WITH THE UNIFORM ARBITRATION ACT (710 ILCS 5/1 ET SEQ). (THIS ACT ALLOWS FOR AN APPEALS PROCESS.) -ARBITRATION MUST BE FAIR, IMPARTIAL AND FREE OF ANY CONFLICTS OF INTEREST OR THE APPEARANCE OF A CONFLICT OF INTEREST.

**Concealment or Fraud.** The Company does not provide coverage if the Insured has intentionally concealed or misrepresented any material fact or circumstance relating to the Policy or claim.

**Payment of Premium.** Coverage is not effective unless all premium due has been paid to Travel Guard prior to a date of Loss or insured occurrence.

**Termination of the Policy.** Termination of the Policy will not affect a claim for Loss if coverage was purchased while the Policy was in force.

**Transfer of Coverage.** Coverage under the Policy cannot be transferred by the Insured to anyone else.

**Insurance With Other Insurers:** If there is other valid coverage with another insurer that provides coverage for the same Loss, the Company will pay only the proportion of the Loss that this Company's Limit for that Loss bears to the total limit of all insurance covering that Loss, plus such portion of the premium paid that exceeds the pro-rata portion for the benefits so determined.

## ASSISTANCE SERVICES*

All Assistance Services listed below are **not insurance benefits** and are not provided by the Company. Travel Guard provides assistance through coordination, negotiation, and consultation using an extensive network of worldwide partners. Expenses for goods and services provided by third parties are the responsibility of the traveler.

**Travel Medical Assistance**
- Emergency medical transportation assistance
- Physician/hospital/dental/vision referrals

- Assistance with repatriation of mortal remains
- Return travel arrangements
- Emergency prescription replacement assistance
- Dispatch of doctor or specialist
- Medical evacuation quote
- In-patient and out-patient medical case management
- Qualified liaison for relaying medical information to family members
- Arrangements for visitor to bedside of hospitalized Insured
- Eyeglasses and corrective lens replacement assistance
- Medical payment arrangements
- Medical cost containment/expense recovery and overseas investigation
- Medical bill audits
- Coordinate shipment of medical records
- Assistance with medical equipment rental/replacement

**Worldwide Travel Assistance**
- Lost baggage search; stolen luggage replacement assistance
- Lost passport/travel documents assistance
- ATM locator
- Emergency cash transfer assistance
- Travel information including visa/passport requirements
- Emergency telephone interpretation assistance
- Urgent message relay to family, friends or business associates
- Up-to-the-minute travel delay reports
- Arrangements for long-distance calling cards for worldwide telephoning
- Inoculation information
- Embassy or consulate referral
- Currency conversion or purchase assistance
- Up-to-the-minute information on local medical advisories, epidemics, required immunizations and available preventive measures
- Up-to-the-minute travel supplier strike information
- Legal referrals/bail bond assistance
- Worldwide public holiday information

**LiveTravel® Emergency Assistance**
- Flight rebooking
- Hotel rebooking
- Rental vehicle booking
- Emergency return travel arrangements
- Roadside assistance
- Rental vehicle return assistance
- Guaranteed hotel check-in
- Missed connections coordination

**Concierge Services**
- Restaurant referrals and reservations
- Ground transportation arrangements
- Event ticketing arrangements
- Tee times and course recommendations
- Floral services

* Non-insurance services are provided by Travel Guard.



**24-Hour Emergency Assistance**
Telephone Numbers
USA.........1.800.826.1300
International..........1.715.345.0505
LiveTravel® 24-Hour Assistance..........1.800.826.8597
*Be sure to use the appropriate country and city codes when calling.*
- KEEP THESE NUMBERS WITH YOU WHEN YOU TRAVEL -

PI8838 P1 06/11    Travel Guard    11/7/13
T30337NUFIC-C11IL

Policy ID: 67767517

## Policy Summary Printout

08/16/2017 12:02:20 PM

Printed by:

Policy#: 917729532

Submitted: Internet

### Primary Insured

TARKOV ELI

Home Phone:
Trip Cost: $1,029.00

### Trip Information

| | | | | |
|---|---|---|---|---|
| Departure: | FRONTIER AIRLINES | | Departing: | 03/21/2015 |
| Destination: | | | Returning: | 03/28/2015 |
| Airline: | FRONTIER AIRLINES | | Trip Length: | 8 |
| Car Rental: | | | Effective: | 03/09/2015 |
| TO/Cruise: | NONE | | # Insured: 2 | Total Trip Cost: $2,058.00 |

### Agency Information

ARC #: 000329

Tax ID#: *8881

TRAVEL GUARD

Current Status: Active

3300 BUSINESS PARK DR.STEVENS POINT , WI , 54482

Territory 1: HOUSE ACCOUNT - 0

Phone: 800    -826-4919

Territory 2:

Fax: 715    -341-3997

Consortium: HOUSE ACCOUNTS

### Product Information

Product/Plan: PI8838 Silver - P1  06/2011

Authorization Date: 07/01/2011

Product Group: Retail

Active Date: 07/01/2011

Primary Plan Group: TGEE  - SILVER

Inactive Date: 00/00/0000

Sale Type: TG

Expiration Date: 00/00/0000

### Standard Packages

| Coverages | Benefits | | |
|---|---|---|---|
| ACCIDENT AND SICKNESS MEDICAL EXPENSES | Amount | $15000.00 Per Insured | |
| TRIP DELAY | Amount | $500.00 Per Insured | |
| TRIP INTERRUPTION | % Trip Cost | 100% Per Insured | |
| TRIP CANCELLATION | % Trip Cost | 100% Per Insured | |
| BAGGAGE DELAY | Amount | $200.00 Per Insured | |
| CONCIERGE SERVICES | Amount | -- Per Insured | |
| BAGGAGE AND PERSONAL EFFECTS | Amount | $750.00 Per Insured | |
| TRAVEL MEDICAL ASSISTANCE | Amount | -- Per Insured | |
| WORLD WIDE TRAVEL ASSISTANCE | Amount | -- Per Insured | |
| TRIP INTERRUPTION - RETURN AIR | Amount | $500.00 Per Insured | |
| EMERGENCY EVACUATION AND REPATRIATION OF REM | Amount | $150000.00 Per Insured | |
| LIVETRAVEL EMERGENCY ASSISTANCE | Amount | -- Per Insured | |
| PERSONAL SECURITY ASSISTANCE | Amount | -- Per Insured | |

### Other Insured/Traveler

RIMA TARKOV

Other Insured

Trip Cost: $1,029.00

### Premium Information

| | | | | | | |
|---|---|---|---|---|---|---|
| Standard: | $172.00 | Req. Fees: | $7.00 | Input: | $179.00 | Status:    Paid |
| Extended: | $.00 | Other Fees: | $.00 | Total: | $179.00 | |
| Optional: | $.00 | Tax: | $.00 | Paid: | $179.00 | |
| Minimum: | $.00 | | | Gross/Net: | Gross | IDs sent on: 03/08/2015 |

AIG 000013

Created On:   03/08/2015   , By: Automated

Modified On: 03/12/2015   , By: Bob, 11033



Claims Department
P.O. Box 47
Stevens Point, WI 54481-0047 RECEIVED
Fax: 715.295.1113 or 715.345.1141
www.travelguard.com
APR 2 0 2015

AIG Claims Inc. is a wholly owned subsidiary of AIG and provides claims administration for Travel Guard® travel insurance products.

CLAIMS DEPT
# Claim Form

Claim #: 1897779                                         04/01/2015

| Your Personal Information | Your Trip Information (Optional) |
|---|---|
| | Tour Operator: NONE |
| Name: RIMA TARKOV | Airline: FRONTIER AIRLINES |
| | Car Rental: |
| UNITED STATES OF AMERICA | Booking/Flight#: FRONTIER AIRLINES |
| | Trip Dates: (if applicable) 03/21/2015 - 03/28/2015 |
| | Initial Deposit Date: 1/22/2015 |

**Your Insurance Information**

Policy#: 917729532
Underwriter: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA
Date Purchased: 3/8/2015
Policy Date Effective: 3/9/2015
Number of Insureds: 2
Cost of Insurance: $179.00

Name: RIMA TARKOV

Date of Birth: 2/20/1951

Final Payment Date:
Trip Cost: $2,058.00        Per Person? ☐
Travel Agent:
Travel Agency: TRAVEL GUARD
                    Phone:

AIG 000014

Claim #: 1897779        # Claim Form        04/01/2015

**Request 1 for: TRIP DELAY**

Status of your Claim: OPEN

**Amount Claimed: $200.00**

## Required Documentation

### We cannot process your claim unless you submit the following:

THIRD PARTY LIABILITY-Statement Required
We are looking for additional information regarding the events as they pertain to your loss. We are requesting a statement detailing the circumstances that resulted in your incident to determine if any 3rd party liability exists for your loss.

TRAVEL DELAY REASONABLE ADDITIONAL EXPENSES INCURRED: RECEIPTS FOR ADDITIONAL EXPENSES
We need the original receipts for additional expenses incurred.

ITINERARY OUTLINING TRIP
The printed description of where you were to be on each day of your trip.

PROOF OF TRAVEL
Documentation proving travel (any one item will do); a trip invoice (showing trip payment and travel dates), itinerary, hotel receipt, copy of passport, ticket stub, etc.

PROOF OF REASON
Documentation from the carrier verifying the reason for the cancellation/delay.

COPY OF NEW/REVISED AIRLINETICKET INCURRED DURING THE TRIP
Please provide a copy of the new/revised airline ticket. If traveling by means other than air, please provide proof of the new travel date; such as bus/train ticket, car rental contract, proof of early/late departure from the resort or hotel, etc.

EXPLANATION FROM THE INSURED
A detailed written explanation from the insured about the incident that caused a claim and what the insured is claiming to be reimbursed.

## Details of Your Claim

Date Of Cancellation: 3/28/2015

Non-medical Reasons:
carrier caused



Page 2 of 5



Claims Department
P.O. Box 47
Stevens Point, WI 54481-0047
Fax: 715.295.1113 or 715.345.1141
www.travelguard.com

AIG Claims Inc. is a wholly owned subsidiary of AIG and provides claims
administration for Travel Guard® travel insurance products.

Claim #: 1897779

# Claim Form

04/01/2015

## AUTHORIZATION FOR RELEASE OF INFORMATION

This authorization complies with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rules. I authorize the use and disclosure of information about me as described herein.

**Health Information to be Used or Disclosed:** I authorize disclosure of my medical records and all other records relating to my past, present, or future physical or mental health or condition; health care I receive; the past, present, or future payment for my health care; and any related diagnosis, treatment, or prognosis. This authorization also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs and tobacco, but excludes "psychotherapy notes" as those are defined in HIPAA.

**Other Information to be Used or Disclosed:** I also authorize disclosure of any and all information about travel, travelers, travel providers and property covered by the insurance policy.

**Parties to Whom Disclosure May Be Made:** This information may be disclosed to and used by AIG Claims, Inc.

**Parties Authorized to Disclose Information:** I authorize all of the following persons or entities to disclose health information or travel information or records about me: physicians, health professionals, hospitals, clinics, pharmacy, the Veterans Administration, or other medical or medically related facilities, care providers or evaluators, insurance companies, reinsurers, consumer reporting agencies, insurance support organization, governmental group policyholder, insurance company, association, employer or benefit plan administrator, any travel organizer or agency, airline carrier, rental agency, hotel, motel or similar entity providing lodging on a rental/lease basis or any other person who may have knowledge about this claim, and any other person or organization that has such information to furnish to any of the Companies named above or its representatives, any and all information with respect to any injury, sickness suffered by, the medical history of, or any consultation, prescription or treatment provided to, the person whose death, injury, sickness or loss is the basis of claim and copies of all that person's hospital or medical records, including information relating to mental illness and use of drugs and alcohol, to determine eligibility for benefit payments under the policy.

**Purpose of Health Information:** Health information disclosed pursuant to this Authorization may be used or disclosed to evaluate, process or facilitate any claim for benefits, and for the payment of such claims or the health care operations of the Companies.

**Purpose of Travel Information:** Travel information disclosed pursuant to this Authorization may be used or disclosed to evaluate, process or facilitate recovery of monies due Companies and to substantiate claims.

**Statements of Understanding:** I understand that: (1) I may receive a copy of this Authorization; (2) I have the right to inspect and copy the information in the Companies' possession; (3) this Authorization will be valid for 24 months from the date signed; (4) this Authorization may be revoked by me at any time by writing to the Companies at their administration office; (5) any revocation will not apply to the extent that it was relied or acted upon; (6) I am not required to sign this Authorization, but if I do not sign this Authorization the Companies may not be able to collect sufficient information to process my claim for benefits; and (7) my health information may be disclosed to individuals or entities that are not covered by federal privacy regulations. However, I understand it is the practice of the Companies to keep my information confidential and the Companies are also subject to other federal and state insurance privacy laws. I further understand that a copy of this Authorization shall be considered as valid as the original.

I have read the foregoing and authorize the release of information, by signing below.

_RIMA TARKOV_
Printed Name of Sick or Injured Person

_Rima Tarkov_
Signature of Sick or Injured Person

_02/20/51_
Date of Birth of Sick or Injured Person

Social Security # of Sick or Injured Person

_4/01/15_
Date Signed


AIG 000016

Page 3 of 5



Claims Department
P.O. Box 47
Stevens Point, WI 54481-0047
Fax: 715.295.1113 or 715.345.1141
www.travelguard.com

AIG Claims Inc. is a wholly owned subsidiary of AIG and provides claims
administration for Travel Guard® travel insurance products.

Claim #: 1897779

# Claim Form

04/01/2015

**California:**

**For your protection, California law requires the following to appear in this form:**

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Florida:**

Pursuant to § 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084, Florida Statutes.

**New York:**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Pennsylvania:**

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**All Other States and Provinces:**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

I have read the foregoing and the answers provided are true and complete to the best of my knowledge.

_Gina Taylor_                     _4/01/15_
Signature of Insured or Legal Representative          Date Signed

*All signatures above indicate that I have read and agree to the above statements*



Page 4 of 5

AIG 000017

Outlook.com - tarkovs@hotmail.com

Page 1 of 1

New   Reply     Delete   Archive   Junk     Sweep   Move to   Categ

Search email

## Folders

**Inbox** 72

**Junk** 8

**Drafts** 1

**Sent**

**Deleted**

**Eli**

New folder

# I need a reason for cancelled flight 41 on 3/28/15 from Punta Cana to provide this information to Travel Guard [Incident: 150402-000447]

**Frontier Airlines**   Add to contacts 4/06/15

To: tarkovs@hotmail.com

Recently you contacted us for personal assistance.

Your request and our response is displayed below.

Thank you for allowing us to be of service to you.

Subject
-------------------------------------------------------------
I need a reason for cancelled flight 41 on 3/28/15 from Punta Cana to provide this information to Travel Guard

Discussion Thread
-------------------------------------------------------------
Response Via Email(Christine) - 04/06/2015 04:43 PM
Dear Rima,

Thank you for contacting Frontier Airlines.

Here is the information for the cancelled flight.

Flight 41 PUJ-ORD with 165 total passengers has been cancelled due to ATC (Air Travel Control) issues in PUJ.

If you have additional questions or concerns, please don't hesitate to contact us again.

Sincerely,

Christine
Frontier Airlines - Refund Team

Auto-Response - 04/02/2015 09:20 PM
Thank you for contacting Frontier Airlines. Your refund request will be reviewed. Please expect a response within 7 business days for qualifying refund requests. Please note that most Optional Fees and Services are non-refundable. For

© 2015 Microsoft   Terms   Privacy & cookies   Developers   English (United States)

Outlook.com - tarkovs@hotmail.com

New    Reply    Delete    Archive    Junk    Sweep    Move

Search email

Folders

**Inbox** 72

**Junk** 8

**Drafts** 1

Sent

Deleted

Eli

New folder

# I need a reason for cancelled flight 41 on 3/28/15 from Punta Cana to provide this information to Tra [Incident: 150402-000447]

**Frontier Airlines**    Add to contacts4/06/15
To: tarkovs@hotmail.com

Recently you contacted us for personal assistance.

Your request and our response is displayed below.

Thank you for allowing us to be of service to you.

Subject

-------------------------------------------------------------

I need a reason for cancelled flight 41 on 3/28/15 from Punta Cana
this information to Travel Guard

Discussion Thread

-------------------------------------------------------------

Response Via Email(Christine) - 04/06/2015 04:43 PM
Dear Rima,

Thank you for contacting Frontier Airlines.

Here is the information for the cancelled flight.

Flight 41 PUJ-ORD with          )tal passengers has been cancelled du
(Air Travel Control) issues in PUJ.

If you have additional questions or concerns, please don't hesitate t
again.

Sincerely,

© 2015 Microsoft    Terms    Privacy & cookies    Developers    English (United S

On March 28, 2015 we arrived at the Punta Cana, DR airport at 2pm. After checking in and going through customs, we were ready to board Frontier Airlines Flight #41. It was scheduled to depart at 4:25pm and fly directly to Chicago's O'Hare Airport. To our great disappointment, nothing even close to that happened.

At first we were told that there would be a 2.5 hour delay. This turned out to be completely inaccurate. After many hours and repeated attempts to get an accurate statement from the confused, slow and very unprofessional Frontier gate agents (we were at gate #7), we were finally told that our flight was cancelled.

Shockingly, no reason was given for the flight's cancellation. All we were told was that we cannot spend the night at the airport and that an Apple Vacations rep would find us a hotel in Punta Cana. We were told that the hotel would be 30-40 minutes from the airport, but that there would be no bus provided. Next we had to find our luggage and a taxi and pay the $35 fare out of our own pocket. And of course the hotel as well which was $115 per person.

It's difficult to express our abject dismay by this point. Exhausted, drained and dehydrated, we had no choice but to do as we were told and undertake this long and expensive trip to the hotel and try to get some rest in an expensive room we would not be able to enjoy. It might be ok if our trials ended here, but no such luck.

The Frontier rep told us to be at the airport at 6am on March 29, because flight #2041 would be taking off at 8am. Guess what? This was the wrong information yet again. We were at the airport at 6am just like we were told and proceeded to stand in line for 2.5 hours, because the Frontier counter was closed. Why was it closed? The departure time for the flight was not 8am as we had been told, but 10:45am. Thank god that the bathrooms were open, but that's all. Water, food and everything else was only available to us after check-in and customs.

After all this, our flight was delayed yet again due to there being no crew available to fly it. We finally took off approximately 11:50am and arrived at O'Hare at 3:34pm. The final insult was having to wait for an hour inside our plane because a gate was unavailable. But at least we were finally home safely.

4/01/15
Rina Tarkov



Consorcio de Tarjetas Dominicanas, S. A.

PLAYA OCEAN BAV B V
BAVARO
HOTEL BARCELO DOMINICAN B
600100042107119900000937804795 48
LOTE- 011 AMEX

**VENTA**

FECHA: 29/MAR/15          HORA: 07:10:36 PM

**** **** **** 005

TT.AMEX     RRN 508800110334   MODO:PR D@5

NO REF. 000009

APROBACION                       502060

COMPRA:              RD$ 08,720.51

ITBIS :               RD$ 1,569.69

TOTAL :              RD$ 10,290.20

ACEPTO PAGAR ESTE MONTO SUJETO A LOS
TERMINOS DEL CONTRATO CELEBRADO CON
EL EMISOR DE LA TARJETA

ELI TARKOV
Copia Cliente
RNC 110327734
CARDNET ...

TARKOV/ELI BENJ/MR

PUJ PUNTA CANA

ORD CHICAGO

F9 2041 Y 29MAR 1045

G7    1015  04E  No

1   40        097

ECO

TARKOV/RIMA BER/MS

PUJ PUNTA CANA

ORD CHICAGO

F9 2041 Y 29MAR 1045

G7    1015  04F  No

0   0        104

ECO

AIG 000021

 

## APPLE VACATIONS

**Travel Confirmation**

### Quick Links

**Important Information**
What to know before you go.

**AV-OK Vacation Security**
Important information about your travel protection.

**Latest Security Updates**
Safety and passport regulations you need to know.

**Parking Specials**
Early flight? Sleep in at one of these fine hotels and park free!

**Airline Baggage Policies / Contact Information**
Check on flight times, baggage requirements, and seats.

**Optional Excursions**
Things to do and see in your vacation.

**Apple Vacations / Resort Office Numbers**
Your Apple Vacations connection, at home and away.

**Fair Trade Contract**
The fine print.

Carefully review this document and contact your travel agent with any questions or concerns. Please print a copy to take with you on your vacation. If you have purchased air transportation, you will receive a boarding pass at check-in.

### Your Travel Confirmation Number is: 08 53 232022

**Departure Date:** 03/21/2015
**Duration:** 7 nights
**Booking Status:** Paid In Full
**Your Travel Agency:** Tickets Confirmed INC / 847-908-0606 / helen@ticketsconfirmed.com

### Passenger Information

| Passengers | Adult/Child | Phone # | E-mail Address | PromoCode | Frq Flier # |
|---|---|---|---|---|---|
| MR ELI TARKOV | ADULT | 8477917123 | helen@ticketsconfirmed.com | NA | NA |
| MRS RIMA TARKOV | ADULT | NA | NA | NA | NA |

If necessary, an Apple Representative will contact you at the above e-mail address or phone number.
**Please be sure this information is correct.**

### Flight Information

**Passengers: RIMA TARKOV, ELI TARKOV**

| Date | Flight | Class | Departure | Arrival |
|---|---|---|---|---|
| 03/21/2015 | Frontier Airlines Flight #40 | A | Chicago, O'Hare International, 10:00AM | Punta Cana, Dominican Rep. 03:30PM |

Check In: Frontier Airlines Ticket Counter / Terminal 3. For flight status call 800-432-1359 before leaving for the airport.
(PLEASE NOTE ALL TIMES ARE LOCAL)

**Passengers: RIMA TARKOV, ELI TARKOV**

| Date | Flight | Class | Departure | Arrival |
|---|---|---|---|---|
| 03/28/2015 | Frontier Airlines Flight #41 | A | Punta Cana, Dominican Rep. 04:25PM | Chicago, O'Hare International, IL 08:36PM |

Check In: Departure Terminal. For flight status call 221-5826 before leaving for the airport.
(PLEASE NOTE ALL TIMES ARE LOCAL)



**Parking Specials**

While in resort, please check the hotel notice board, or call the appropriate Apple Vacations/Resort Office number for your flight information the day before your departure. The Apple Vacations/Resort Office numbers can be found in the General Information section of this document.

*Claim #189 777 9*
*4/01/15*

## SIUTRATURAL
### TAXI SERVICE

Sindicato Unido de Transp. Turístico de la
Provincia La Altagracia
TaxiBavaroPuntaCana.com
siutratural@gmail.com
Tels.: 809-221-2741 / 809-552-0617
Telefax: 809-552-0505
Complacer al cliente es nuestro lema

F. No. _____ Fecha: 28 9 15

RNC: 419000461

Factura ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 80656

Cliente: _____

Céd. / RNC: _____ RD$ _____ US$ 35 €

Descripción

Referencia: _____

Desde: _____

Hasta: _____

IMPRESORA LUX • TEL.: 809-554-2780 • RNC: 1-19-01768-2 • Atorización No.: 01945

_Marina_

Firma del Representante    Firma del Taxista    Total a Pagar [    ]

---

## SIUTRATURAL
### TAXI SERVICE

istico de la
agracia
.ntaCana.com
info@siutratural.com
Tels.: 809-221-2741 / 809-552-0617
Telefax: 809-552-0505
Complacer al cliente es nuestro lema

4103

F. No. 176   Fecha: 29, -03 15

RNC: 419000461

Cliente: _____

RD$ _____ US$ 35 €

Descripción: _____

Referencia: _____

Desde: Barceo dominican B

Hasta: aereo Puerto Pinti C

_Osiri_

Firma del Representante    Firma del Taxista    Total a Pagar [ 35 ]

---

**Barceló**

PERMISO DE SALIDA
_DEPARTURE SLIP_

2 PAx

No. Hab. _____ 9428

FECHA: _____ 29/03

Presentar a su Guía antes de subir a la guagua.
Gracias y buen viaje.
_Present to your Rep. before Bourding the bus._
_Thank you and Have a Good Trip._

AIG 000023

Mr & Mrs Eli Tarkov
421 Swan Blvd.
Deerfield, IL 60015

AIG
Claims Department
P.O. Box 47
Stevens Point, WI 54481

5448100474?



CAROL STREAM



UNITED STATES POSTAGE
$000.690
PITNEY BOWES

02 1P
0003279730 APR 17 2015
MAILED FROM ZIP CODE 60062

APR 20 2015

AIG 000024

8/16/2017 12:11:35 PM

Claim #(s): 1897779

PAGE 1 OF 3

<u>COMMENT</u>

## Claim #: 1897779

**Shannon Wallock   4/1/2015 5:44:00 PM**

Set up

Basic Information
Who is calling [Specify name & relation to insured]:    rima insured
Type of claim :    Trip Delay
Reason for claim: on 3/28/15 the insureds flight was cancelled over night the reason is unknown but the insured stated that there
was not bad weather, and then the flight the next day was delayed because of no crew but she did get on 3/29/15
Dollar amount requested: 200
Claimed items [hotel, airfare, etc]:    additional taxi and hotel
Number of people affected:    2
If any fields were left blank, please state reason:
Advised of non-coverage [if applicable]: N/A

E-mail address or Fax number forms sent to [if applicable]:
Cross referenced claim numbers:
Did you receive a copy of your Description of Coverage:  Yes
Please explain how DOC was received ->> E-mail
Miscellaneous information:

Segmentation Determination

Number of fraud indicators?   0

Third Party Liability
Was the cause of loss a direct result of negligence on anyone's part?  Yes
2

Name of negligent party: frontier airlines
Address unknown
Telephone Number unknown
The insurance information for the negligent party  unknown
Negligent party 's policy number unknown
Name of company unknown
Address unknown
Telephone Number unknown
Claim Number with responsible party unknuown
If due to a Missed Flight
What day/time was the scheduled flight? (Departure and Arrival times and location) 3/28/2015
How long where they delayed?  1 day
What was the reason for the delay or cancellation given by the Airline? unknown
Were any accommodations, vouchers, or other compensation offered?  No

Were any accommodations, vouchers, or other compensation Accepted?  No

Did the traveler file a claim with the Airline? No

**Rita Betker   4/17/2015 9:12:00 AM**

Telephone Calls

Rima called with a couple questions on the claim forms, verified needed information

**Lora Elm   4/29/2015 10:26:00 AM**

AIG 000025

8/16/2017 12:11:35 PM

Claim #(s): 1897779

PAGE 2 OF 3

Telephone Calls

Insured called on the status of the claim. Advised pending processing.

**Beth Rzentkowski   4/29/2015 12:10:00 PM**

Correspondence

Rec claim corr
HAVE:
pg. 5 corr from Frontier Airlines indicating flight 41 was cancled due to ATC issues in PUJ.
taxi receipts 03/28/15 $35 + 03/29/15 $35
receipt for hotel $10290.20 RD
Sunday, March 29, 2015
10,290.20 Dominican R. Peso = 230.515 US Dollar

**Beth Rzentkowski   4/29/2015 12:15:00 PM**

Payment

Payment Calculation (Detailed check explanation with itemization -- by coverage):

TRIP DELAY: Payment for additional hotel and taxi expenses incurred 03/28/15 to 03/29/15, $235.00, under the Trip Delay
benefit.  Please note, the maximum limit of coverage under the Trip Delay benefit is $100 per person per day.  Please also note,
the currency conversion was done using the Oanda Currency Converter.
03/28/15 Hotel 10,290.20 Dominican R. Peso = 230.515 US Dollar  + Taxi $35 = $265.52, per day max met, paying $200
03/29/15 Taxi $35, paying $35

Who is cancelling or who incurred the claimed expenses if not all insureds on policy:  both

Name of person being paid (if not insured):  Rima

Is an Attorney involved? Y/N:  N

Are there fraud indicators Y/N?:  N   If Yes, complete a GIS referral and do not pay the claim:

File being sent to Subrogation Y/N:  N

Is a 3rd party responsible for the loss Y/N?      Y, Frontier Airlines

If Yes:  please provide location that identifies the 3rd Party information (i.e. date of memo in Freedom and/or Onbase document
location -- 3rd Party and other insurance information, police report, airline letter indicating delay, etc.) :

Rationale/Comments (if needed):
pg. 5 corr from Frontier Airlines indicating flight 41 was cancled due to ATC issues in PUJ.
**carrier delay is a named peril under the TD benefit.

**Brian Mecom   8/15/2017 10:25:00 AM**

From: Mecom, Brian
Sent: Tuesday, August 15, 2017 10:25 AM
To: TG STP Complaints
Cc: Fuchs, Matthew
Subject: FW: Subpoena of Records

This is a Subpoena of Records for Claim 1897779.   Please let me know what docs were may send and we'll compile.

This will be scanned into the file later today.

Thank you,

Brian Mecom

Claim #(s): 1897779

AIG
Claims Administrative Director
AIG Travel | AIG Property Casualty

3300 Business Park Drive, Stevens Point, WI 54482

T +1 800 826 7791 ext 15585 | O +1 715 345 8582 | Fax +1 715 295 1113

Brian.Mecom@aig.com | www.travelguard.com | www.aig.com

This correspondence is sent by AIG Claims, Inc. as authorized administrator for National Union Fire Insurance Company of Pittsburgh, PA.

IMPORTANT NOTICE:
The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.

**Matthew Fuchs   8/15/2017 2:50:00 PM**

FOR ANALYST USE ONLY

email sent to Brian relating to request for information.  Provided direction on documentation request.

**AIG Claims, Inc.**
P.O. Box 47
Stevens Point, WI 54481

ON BEHALF OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

ASSOCIATED BANK
Wisconsin
79-937/750

DATE
May-01-15

CHECK NO.
6021527

AMOUNT
$235.00

PAY
TO THE
ORDER OF

RIMA TARKOV

Two Hundred Thirty-Five and 00/100 Dollars

AUTHORIZED SIGNATURE(S)

RUB RED IMAGE - DISAPPEARS WITH HEAT

SEE BACK FOR ARTIFICIAL WATERMARK

⑈6021527⑈ ⑆075909372⑆

Security Features Included  Details on back.

AIG 000028

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

THE SECURITY FEATURES INCLUDED WITHIN
THIS CHECK EXCEED INDUSTRY STANDARDS

SECURITY FEATURES:
TONER GRIP
VOID PANTOGRAPH
FLUORESCENT FIBERS
MICROPRINTING
WARNING BORDERS
CHEMICALLY TAMPER RESISTANT PAPER
BLEACH REACTIVE/BROWNSTAIN
WATERMARK - HELD AT AN ANGLE TO VIEW
FOR MORE INFORMATION REGARDING THE SECURITY FEATURES REG. CC

AIG 000029

00532O734



7 Campus Boulevard • Newtown Square, Pennsylvania 19073 • Telephone: 610.359.6500

October 10, 2016

Matthew S. Dowling
Adler Murphy & McQuillen LLP
20 South Clark Street, Sutie 2500
Chicago, IL 60603-9860

RE:     Subpoena for Records   AM&M File: 15AZF282
        ADLER – 53524681 ORDPUJ20151014CP10    TARKOV – 53232022  ORDPUJ20150321CA07

Dear Mr. Dowling:

Apple Vacations is in receipt of the above-referenced subpoena wherein you requested information regarding two groups of individuals, as follows:

1.  Adler: Our records indicate that Leonid Adler, Olena Adler and Nicole Adler purchased a booking to travel from Chicago, Illinois to Punta Cana, Dominican Republic on October 14, 2015 and to return on October 24, 2015.   Our records further indicate that the return flight was delayed 1 hour and 25 minutes due to a system outage.

    Enclosed please find a copy of the booking information, the comments on the booking, and a copy of our flight records showing the delay.

    To date, Apple Vacations has not received any communications from these passengers regarding the flight delay.

2.  Tarkov: We were unable to find any records of Ilya Tarkov having traveled with Apple Vacations. However, Rima Tarkov purchased a booking to travel with a companion from Chicago, Illinois to Punta Cana Dominican Republic on March 21, 2015 and to return on March 28, 2015.  The return flight was delayed 19 hours and 5 minutes due to an ATC radar outage in Punta Cana.  Rima Tarkov wrote to her travel agent, who passed the information to Apple Vacations.   Rima Tarkov received a $75.00 Apple Vacations voucher for future travel.

    Enclosed please find the booking information, the comments on the booking and the correspondence regarding the delay.

I can be reached at the contact information below if you have any questions or need additional information.

Sincerely yours,

*Betsy Boyle*

Betsy Boyle
Senior Manager, Customer Care Department
Apple Vacations
7 Campus Blvd.
Newtown Square, PA.  19073
610-359-6567 (Phone)  610-359-6685 (Fax)
bboyle@applevac.com

EXHIBIT G (2)

www.applevacations.com

## CERTIFICATION OF RECORDS

In response to the subpoena to produce documents issued to APPLE VACATIONS, I hereby declare under penalty of perjury:

(a) That I am a duly authorized Custodian of Records for APPLE VACATIONS, and I have authority to certify such records;

(b) That all records (original or true copy) responsive to the subpoena served on APPLE VACATIONS, have been produced;

(c) That these records were prepared by personnel of this institution in the ordinary course of business; and

(d) That this declaration was executed on ___10/10/16___, 2016.

By: _Betsy Boyle_____
     CUSTODIAN OF RECORDS

_____11_____
No. of Pages Produced

SUBSCRIBED and SWORN
to before me this _10th_ day of
_October_, 2016.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARTHA G. SIMMERS, Notary Public
Newtown Township, Delaware County
My Commission Expires January 24, 2020

_Martha G. Simmers_____
     NOTARY PUBLIC

## NO RECORD STATEMENT

I hereby certify that a thorough and diligent search of our files was made and I find that there are no records responsive to the subpoena for records issued to APPLE VACATIONS.

By: _____
     CUSTODIAN OF RECORDS

_____
Date

SUBSCRIBED and SWORN
to before me this _____ day of
_____, 2016.

_____
Notary Public

10/10/2016

Comments-0053232022

| Date | Time | Created By | Call Center | Comments | Booking Number |
|------|------|-----------|-------------|----------|----------------|
| 01/21/15 | 01:58 PM | APIUSER | Tra | Quote No::- 0195249496 | 0053232022 |
| 01/21/15 | 01:58 PM | APIUSER | | OPTION EXTENDED TO 01/23/2015 | 0053232022 |
| 01/22/15 | 12:14 AM | APIUSER | | Paid through VI $ 250.00 by TARKOV Approval# 02374C | 0053232022 |
| 01/22/15 | 03:41 PM | cearp | | Vacation Certificate # VC0000662691 was entered for $ 400.00 | 0053232022 |
| 01/22/15 | 03:41 PM | cearp | ORD | TA CLD TO ADV PMT OF $400 IN VCS TO BE MAILED IN / W/ HELEN - ORD/MDW | 0053232022 |
| 02/03/15 | 12:07 AM | AJOHNSON | | Paid through Vacation Certific $ 200.00 | 0053232022 |
| 02/03/15 | 12:08 AM | AJOHNSON | | Paid through Vacation Certific $ 200.00 | 0053232022 |
| 02/03/15 | 05:21 PM | 14273556 | | Paid through VI $ 1410.00 by TARKOV Approval# 03250C | 0053232022 |
| 02/03/15 | 05:32 PM | AWOPS | | E-docs sent to Travel Agent on 20150203 to helen@ticketsconfirmed.com | 0053232022 |
| 02/24/15 | 02:07 PM | SNAVIENG | | FSNA2167.TIF has been emailed to helen@ticketsconfirmed.com | 0053232022 |
| 03/02/15 | 03:42 PM | SNAVIENG | | FSNA2170.TIF has been emailed to helen@ticketsconfirmed.com | 0053232022 |
| 03/31/15 | 06:06 AM | DJENKINS | | Commission Payable Posted - $ 83.79 | 0053232022 |
| 05/06/15 | 09:23 AM | KRIGHTNO | | ******CLAIM OPENED BY CUST CARE (EMAIL FROM TA HELEN TO LJENKINS ON 5/5)****** | 0053232022 |
| 05/06/15 | 09:25 AM | KRIGHTNO | | sent email ack to ta helen | 0053232022 |
| 05/11/15 | 08:48 AM | ASLEIGHT | | ***RCVD ADDTL EMAIL FROM TA HELEN - DOCS FOR FLIGHT DELAY - EMAIL IN MAY FILE IF NEED TO REFERENCE** | 0053232022 |
| 05/18/15 | 09:13 AM | JBRISSET | | JBT HAS FILE | 0053232022 |

10/10/2016

Comments:0053232022

| 05/20/15 | 02:24 PM | JBRISSET | PAXS ADV OVERNIGHT FLT DELAY | 0053232022 |
|---|---|---|---|---|
| 05/20/15 | 02:25 PM | JBRISSET | RPL LTR SENT TO TA; ISSUED $75.00 VCS PP | 0053232022 |
| 09/27/16 | 10:38 AM | BBOYLE | Customer Invoice was printed. Gross total of booking was $ 2,078.94 | 0053232022 |

APPLE VACATIONS FLIGHT DELAY INFO F9 41  3/28/2015

| DAY | DATE | AIRLINE | FLT # | DEP/DEST | SCHEDULED DEPT. | PUSH | AIRBORNE | SCHEDULED ARRIVAL | ACTUAL ARRIVAL | REASON | ADDITIONAL INFO | Dep Delay | COMP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sat | 3/28/15 | F9 | 40 | ORD/PUJ | 10:00 AM | 10:00:00 AM see additional info | 10:14 AM | 3:30 PM | 8:33 PM | DIVERTED | DIVERTED TO MIAMI DUE TO ATC RADAR OUTAGE IN PUJ. THEY HAD TO DIVERT FOR FUEL arrived in Miami @ 3:26 pm MIA/PUJ p/b 5:39 p.m. a/b 6:28 pm.  ATA 8:33 p.m. ---------------------------------------------- ---------- Landed in MIA at 1526L; arrived in the gate at 1621L.  They said there was issues getting ahold of customs and once we got into a gate it was just working through the crew legalities.  The operating crew members were illegal to continue after the diversion; luckily we had crew members deadheading in the back – but due to the crew swap we required a new GEN DEC and APIS be generated. | 5:03 | No comp |
| Sat | 3/28/15 | F9 | 41 | PUJ/ORD | 4:25 PM | 11:30 am 3/29/15 | 11:48 am 3/29/15 | 8:36 PM | 2:56 PM 3/29/15 | ROTATION | overnight delay due to F9 40 diversion due to PUJ ATC RADAR Outage crew will time out in PUJ passengers will have to pay for transfers r/t from airport to hotel and the extra night in resort Sunday 3/29/15  F9 2041  PUJ/ORD 10:45 a.m./2:56 p.m. they were further delayed due to FA having issues checking out of her hotel Most paxs stayed at Barcelo Dominican Beach | 19:05 | No comp |



7 Campus Boulevard • Newtown Square, Pennsylvania 19073 • Telephone 610.359.6500 • Fax: 610.359.6650

May 20, 2015

TICKETS CONFIRMED INC
ATTN: Helen Karpovich
830 Buffalo Grove, Ste # 107
Buffalo Grove, IL 60089

RE: Booking: 53232022      ORDPUJ20150321CA07      TARKOV Eli/ Rima

Dear Helen,

Apple Vacations is in receipt of your client's correspondence regarding their recent vacation to Punta Cana. We certainly regret to hear they were inconvenienced by the overnight flight delay and realize that this was not a great way to end their vacation.

As you may be aware, flight delays/ cancellations are an inescapable aspect of air transportation and are beyond our control. Please note, there are multitude of factors beyond any airline's control, which can affect the timeliness of departures. It is never our desire for clients to experience hassle and frustration, however, please note that though the efforts those behind the scene was not visible to your clients , Apple Vacations along with the airline were making all efforts to expedite the flight.

It is for unforeseen reasons such as these we urge our clients the AVOK Trip Protection which would care for the additional expenses they incurred.

While we're unable to proceed with a refund, we would like to offer your clients Vacation Certificates in the amount of $75.00 per person, which are enclosed with this letter.  While the certificates must be applied to a new booking prior to expiration, actual travel may take place after the expiration date.  The original vacation certificates need to be submitted to our Accounting Department to apply toward final payment when you make the new travel arrangements.  The credit will then be applied to the new record. Please be assured Apple Vacations has a very deep concern for serving our clients, and we sincerely regret if we fell short of expectations.

You and your clients are very important to Apple Vacations and we look forward to your clients traveling with Apple Vacations in the future so that we can prove the high quality of service for which we have become known.

Sincerely,
Apple Vacations

Talisa Brissett- Taylor
Customer Care Department
7 Campus Boulevard
Newtown Square, PA 19073
1-800-727-3550
jbrissett@applevac.com



# 0000692007

**Certificate Amount:     $ 75.00 (U.S.)**

| | | |
|---|---|---|
| Date Issued | : | 05/20/2015 |
| Original Booking # | : | 53232022 |
| Passenger Name | : | TARKOV ELI |
| Expiration Date | : | 05/20/2016 |

Apply to Booking #     : _____

**Not Valid on Scheduled Air**

## Vacation Certificate

AE1000



# 0000692008

**Certificate Amount:     $ 75.00 (U.S.)**

| | | |
|---|---|---|
| Date Issued | : | 05/20/2015 |
| Original Booking # | : | 53232022 |
| Passenger Name | : | TARKOV RIMA |
| Expiration Date | : | 05/20/2016 |

Apply to Booking #     : _____

**Not Valid on Scheduled Air**

## Vacation Certificate

AE1000



## Restrictions

This travel certificate is valid toward an Apple Vacation, expires on the date listed and cannot be used after that date. This certificate can only be used by the vacationer named hereon and is not redeemable for cash. The use of this certificate is subject to the terms of the **Apple Vacations** Fair Trade Contract. This certificate is non-refundable and non-transferable and must be applied to new reservation by expiration date shown on front.

This certificate cannot be applied as a deposit on your reservation. Once you have finalized your new travel arrangements through **Apple Vacations**, the certificate must be submitted to our Accounting Department to apply toward final payment. Upon receipt of the original certificate, the credit will then be applied to your reservation. Please be advised that restrictions may apply.

**Kelly M Rightnour**

| | |
|---|---|
| **From:** | Latisha Jenkins |
| **Sent:** | Wednesday, May 06, 2015 8:59 AM |
| **To:** | Helen Karpovich |
| **Cc:** | Customer Care at Apple Vacations |
| **Subject:** | FW: FW: letter about flight delay |
| **Attachments:** | ATT00001.htm; Letter for Mom.rtf |

Good Morning Helen,

I am copying in our customer care department so they can open up a claim and review these clients file.

Once they reach a resolution someone will contact directly.

Warm Regards,

**From:** Helen Karpovich [mailto:helen@ticketsconfirmed.com]
**Sent:** Tuesday, May 05, 2015 5:35 PM
**To:** Latisha Jenkins
**Subject:** Fwd: FW: letter about flight delay

Good evening Latisha,

How are you? Hope everything is fine!

My passengers sent me the update of their Dominican trip at the end of March. Their booking number: 53232022.

Please, let me know.

Thank you in advance.

Please find attached a letter re: Frontier flight cancellation.
Hope it can help to get good reimbursement/voucher from Apple Vacation.

Please advise us if we should add more information on poor customer service from Apple Vacation and horrible experience at the hotel they put us for the night (cockroaches in the room and not fresh food that caused Eli stomach pain and diarrhea.

Have a good weekend and let me know what you think about this letter.

Rima.

1

---

Anna Tarkov
Mobile:
Writer - Podcaster - Raconteur

http://annatarkov.com
http://unconsoleable.com

http://www.linkedin.com/in/annatarkov
http://twitter.com/annatarkov


--
*Helen K.*
*TICKETS CONFIRMED INC.*
*Sr. Travel Specialist*
*p| 847-999-0606*
*c| 847-463-0525*
*e| helen@ticketsconfirmed.com*
*http://ticketsconfirmed.com*

2

On March 28, 2015 we arrived at the Punta Cana, DR airport at 2pm. After checking in and going through customs, we were ready to board Frontier Airlines Flight #41. It was scheduled to depart at 4:25pm and fly directly to Chicago's O'Hare Airport. To our great disappointment, nothing even close to that happened.

At first we were told that there would be a 2.5 hour delay. This turned out to be completely inaccurate. After many hours and repeated attempts to get an accurate statement from the confused, slow and very unprofessional Frontier gate agents (we were at gate #7), we were finally told that our flight was cancelled.

Shockingly, no reason was given for the flight's cancellation. All we were told was that we cannot spend the night at the airport and that an Apple Vacations rep would find us a hotel in Punta Cana. We were told that the hotel would be 30-40 minutes from the airport, but that there would be no bus provided. Next we had to find our luggage and a taxi and pay the $35 fare out of our own pocket. And of course the hotel as well which was $115 per person.

It's difficult to express our abject dismay by this point. Exhausted, drained and dehydrated, we had no choice but to do as we were told and undertake this long and expensive trip to the hotel and try to get some rest in an expensive room we would not be able to enjoy. It might be ok if our trials ended here, but no such luck.

The Frontier rep told us to be at the airport at 6am on March 29, because flight #2041 would be taking off at 8am. Guess what? This was the wrong information yet again. We were at the airport at 6am just like we were told and proceeded to stand in line for 2.5 hours, because the Frontier counter was closed. Why was it closed? The departure time for the flight was not 8am as we had been told, but 10:45am. Thank god that the bathrooms were open, but that's all. Water, food and everything else was only available to us after check-in and customs.

After all this, our flight was delayed yet again due to there being no crew available to fly it. We finally took off approximately 11:50am and arrived at O'Hare at 3:34pm. The final insult was having to wait for an hour inside our plane because a gate was unavailable. But at least we were finally home safely.

| Customer #: | 74233 | Reservation #: | 0053232022 | TICKETS CONFIRMED INC |
|---|---|---|---|---|
| Booking Date: | 01/21/2015 | Booking Status: | PIF | 704 SOUTH MILWAUKEE AVENUE |
| Voucher Date: | // | Deposit Due: | $0.00 | WHEELING IL 60090 |
| Departure Date: | 03/21/2015 | Duration: | 7 | |

### Passenger Price Details

| Pax Id | Title | First Name | Last Name | Age | Base Price | Car | Services | Insurance | Taxes | Fee | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | MR | ELI | TARKOV | 0 | $733.87 | $0.00 | $0.00 | $0.00 | $305.60 | $0.00 | $1,039.47 |
| 2 | MRS | RIMA | TARKOV | 0 | $733.87 | $0.00 | $0.00 | $0.00 | $305.60 | $0.00 | $1,039.47 |

This information for INTERNAL USE ONLY

| Pax Id | First Name | Last Name | Description | | Price | Net Price |
|---|---|---|---|---|---|---|
| 1 | ELI | TARKOV | ORD PUJ CHARTER | | $952.00 | $900.97 |
| | | | PUJ ORD CHARTER | | $87.40 | $87.06 |
| | | | PUNTA CANA D.R - ON YOUR OWN | | $0.07 | $0.07 |
| | | | | Subtotal | $1,039.47 | $988.10 |
| 2 | RIMA | TARKOV | ORD PUJ CHARTER | | $952.00 | $900.97 |
| | | | PUJ ORD CHARTER | | $87.40 | $87.06 |
| | | | PUNTA CANA D.R.- ON YOUR OWN | | $0.07 | $0.07 |
| | | | | Subtotal | $1,039.47 | $988.10 |
| | | | | Total | $2,078.94 | $1,976.20 |

### Commission Details

| | Commissionable Amount | Commission % | Commission |
|---|---|---|---|
| Charter Air | $0.00 | 7.00% | $0.00 |
| Hotel | $0.00 | 0.00% | $0.00 |
| Total | $0.00 | 0.00% | $102.73 |

Page 1 of 2

# APPLE VACATIONS

Invoice

HELEN KARPOVICH
TICKETS CONFIRMED INC
704 SOUTH MILWAUKEE AVENUE
WHEELING
IL 60090
847-999-0606

| | |
|---|---|
| Booking Number | : 0053232022 |
| Booking-date | : 01/21/2015 |
| Date of issue | : 01/23/2015 |
| Departure-Date | : 03/21/2015 |
| Booking status | : PIF |

| | |
|---|---|
| Deposit Date | : 01/23/2015 |
| Deposit Due | : $0.00 |
| Paid to Date | : $2,060.00 |
| Duration | : 7 Nights |

****IMPORTANT-PLEASE VERIFY ALL INFORMATION-IMPORTANT*****

## Passenger Information

| | | Passenger(s) | | Age | Total |
|---|---|---|---|---|---|
| 1 | MR | TARKOV | ELI | 0 | $1,039.47 |
| 2 | MRS | TARKOV | RIMA | 0 | $1,039.47 |

*****PROPER PROOF OF CITIZENSHIP REQUIRED*****

## Your Flights

| Type | Passenger(s) | Flight | Depart | Arrive | Fare Class | Aircraft Type |
|---|---|---|---|---|---|---|
| Departing Flight(s): Non Stop | 01,02 | Frontier Airlines # | 03/21/2015 12:00 AM ORD | 03/21/2015 12:00 AM PUJ | A | Frontier A |
| Returning Flight(s): Non Stop | 01,02 | Frontier Airlines # | 03/28/2015 10:30 AM PUJ | 03/28/2015 1:42 PM ORD | A | Frontier A |

## Payment History

| Payment Date | Payee Name | Amount | Payment Type | Method of Payment |
|---|---|---|---|---|
| 01/22/2015 | ELI TARKOV | $250.00 | Credit Card | |
| 02/03/2015 | | $200.00 | Vacation Certificate | 662691 |
| 02/03/2015 | | $200.00 | Vacation Certificate | 662692 |
| 02/03/2015 | ELI TARKOV | $1,410.00 | Credit Card | |

## Notices

Roundtrip transfers are included for passengers arriving to Punta Cana and La Romana airports, travelling on any charter airline, and staying in either the Punta Cana or LaRomana hotel areas. Reservation must be a charter air and hotel package. All other passengers (air, land, package) arriving in Punta Cana and staying in the LaRomana area (and vice versa) must purchase the roundtrip Punta Cana - LaRomana optional transfer. Transfers are not included for Air only passengers. Transfers are not included for scheduled air passengers (air, land, package) arriving in Punta Cana or La Romana and staying in either Puerto Plata, Santo Domingo, Santiago or Samana. Optional transfers are available for Santo Domingo. Transfers are not available for Puerto Plata or Samana. The U.S. State Department advises that as of January 23, 2007 all U.S. citizens will be required to hold a valid U.S. passport to enter the United States when returning from Canada, Mexico, Central and South America, the Caribbean and Bermuda. The FAA has issued Hazardous Materials Restrictions- Federal law forbids the carriage of hazardous materials aboard aircraft in your luggage or on your person. A violation can result in five years' imprisonment and penalties of $250,000 or more (49 U.S.C. 5124). Hazardous materials include explosives, compressed gases, flammable liquids and solids, oxidizers, poisons, corrosives and radioactive materials. Examples: Paints, lighter fluid, fireworks, tear gases, oxygen bottle sand radio-pharmaceuticals. There are special exceptions for small

quantities (up to 70 ounces total) of medicinal and toilet articles carried in your luggage and certain smoking materials carried on your person. For further information contact your airline representative. Please ensure your passengers are fully aware and understand these restrictions as a violation will result in imprisonment and financial penalties.

This booking is subject to the Terms & Conditions of the Apple Vacations Fair Trade Contract which can be viewed at http://www.applevacations.com/ftc Meals: Only hotels noted as "all inclusive or "Unlimited Luxury" include your meals and beverages . If you did not purchase one of these hotels, please review the meal plan purchased, if any, before you travel

## Price Breakdown

| | |
|---|---|
| Gross Total | $2,078.94 |
| Payments to Date | $2,060.00 |

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ALYONA ADLER and LEONID ADLER, on their own behalf and on behalf of minor child NICOLE ADLER, ILYA TARKOV, RIMMA TARKOV, and all other similarly situated passengers of proposed class, | ) ) ) ) ) ) ) ) | No. 15 CV 3430 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Young B. Kim |
| FRONTIER AIRLINES, | ) ) | July 10, 2017 |
| Defendant. | ) | |

### ORDER

Defendant's motion to compel is granted in part and denied in part. In its motion, Defendant asks the court to compel Plaintiffs Alyona Adler, Leonid Adler, Ilya Tarkov, and Rimma Tarkov (collectively, "Plaintiffs") to: (1) supplement their answers to First Set of Interrogatories, more specifically Interrogatory Nos. 1-6, 9, and 13-15; (2) respond to Defendant's First and Second Set of Requests for Production of Documents and its Second Set of Interrogatories; (3) respond to Defendant's Third Set of Interrogatories; (4) provide signed authorization for the release of certain records; (5) present themselves for their depositions by July 14, 2017; and (6) pay Defendant's attorney's fees associated with the filing of this motion. On June 9, 2017, the court ordered Plaintiffs to file a response to the motion by June 23, 2017. (R. 63.) Then on June 26, 2017, in response to Plaintiffs'

EXHIBIT G (3)

motion, the court granted them an extension until July 7, 2017, to file their response.  (R. 67.)  Despite the fact that Plaintiffs had seven weeks since Defendant filed its motion to compel to file a response, Plaintiffs failed to do so.  For the following reasons, and without the benefit of Plaintiffs' response, the motion to compel is granted in part and denied in part:

## A.      First Set of Interrogatories

Defendant asserts that it is entitled to supplemental answers to Interrogatory Nos. 1-6, 9, and 13-15 because Plaintiffs' answers are not responsive or adequate.  The motion is granted as to Nos. 1-6, 9, and 15, and denied as to Nos. 13 and 14.

| No. | Ruling |
|-----|--------|
| 1 | Defendant argues that Plaintiffs' answers are not adequate because they failed to provide information on their current employers.  The court agrees, but Plaintiffs, as the individuals answering the interrogatories, provide the responsive information in answer to Interrogatory No. 6.  However, Plaintiffs are ordered to provide a signed authorization for the release of employment records so that Defendant may verify their employment and to subpoena records related to their claim of wage loss. |
| 2 | Defendant argues that Plaintiffs' answers are not adequate because they failed to identify individuals who may have knowledge about their claimed damages.  The answers may or may not be adequate depending on whether there are other individuals with knowledge about Plaintiffs' damages besides themselves.  If there are other individuals with knowledge, Plaintiffs must identify them as requested.  If Plaintiffs do not supplement their answers, they will be limited to their own statements to support their damages. |
| 3 | Defendant argues that Plaintiffs' answers are not responsive.  The court agrees.  Although Plaintiffs detailed the categories of their damages, they failed to itemize their losses and expenses and failed to provide any details regarding those expenses and losses. |
| 4 | Defendant argues that Plaintiffs' answers are not responsive.  The court agrees.  Plaintiffs must identify the documents they intend on using to support their financial losses or provide a copy of those documents to Defendant.  If Plaintiffs identify any bank, credit card, or cell phone |

| | records as supporting documentation, they must also provide a signed authorization for the release of those records from the relevant third party. |
|---|---|
| 5 | Defendant argues that Plaintiffs' answers are not responsive. The court agrees that Plaintiffs' answers to No. 3 are only partially responsive to this interrogatory. Here, Defendant asks Plaintiffs to explain how the flight delays caused their financial losses they claim in this matter. For each loss they claim, Plaintiffs must explain the connection between such loss and the flight delays. |
| 6 | Defendant argues that Plaintiffs' answers are incomplete. The court agrees. Plaintiffs are to specify the dates and times they were unable to work as a result of the flight delays. |
| 9 | Defendant argues that Plaintiffs' answers are not responsive. The court agrees but only because Plaintiffs failed to identify any documents in support of their claim of physical injury. Answers to No. 3 are not clear as to whether Plaintiffs are claiming "financial loss associated with physical injury" they may have suffered as a result of the flight delays, but Plaintiffs do say that they incurred expenses for "medications." |
| 13, 14 | Defendant argues that Plaintiffs' answers are not responsive. The court agrees that the answers are not responsive but these interrogatories are duplicative in light of Defendant's Interrogatory Nos. 3-5. |
| 15 | Defendant argues that Plaintiffs' answers are not responsive. The court agrees. While "all other passengers of canceled flight No. 41" may be qualified to testify about the flight delays, they are most likely not qualified to testify about Plaintiffs' damages. Plaintiffs must identify the witnesses who will support their damage claims. |

## B.   First and Second Set of Requests for Production of Documents and Second Set of Interrogatories

Defendant explains that its First Set of Requests for Production of Documents, served on March 16, 2016, and its Second Set of Interrogatories and Requests for production of documents, served on September 16, 2016, still remain unanswered despite its repeated requests for a response. The motion is granted as to these written discovery requests.

## C. Third Set of Interrogatories

The motion is denied as to this set of interrogatories. On March 14, 2016, Defendant served 20 interrogatories to be answered by Plaintiffs. Then on September 16, 2016, Defendant served an additional 5 interrogatories. With this second set of interrogatories, Defendant served the maximum number of interrogatories permitted pursuant to Rule 33(a)(1).

## D. Depositions and Attorney Fees

As to Defendant's request to schedule Plaintiffs' depositions, the motion is granted to the extent that Plaintiffs are ordered to appear for their depositions no later than August 11, 2017. As to Defendant's request for fees, the court agrees with Defendant's explanation that it should not have had to incur additional fees to bring the instant motion. The court finds that Defendant made good faith attempts to secure discovery from Plaintiffs without filing a motion to compel and Plaintiffs failed to demonstrate why an award of attorney's fees is not warranted here. The court further finds that Plaintiffs must pay Defendant up to four hours of attorney's fees Defendant incurred in connection with the filing of the motion to compel, (R. 52.)

ENTER:

Young B. Kim
United States Magistrate Judge